# EXHIBITS TABLE OF CONTENTS

Collective Bargaining Agreement Between the Commonwealth of Pennsylvania and UFCW Council, dated July 1, 2016 through June 30, 2019...........................................................EXHIBIT A

Local 1776's Letter to Mr. Kabler......................................................EXHIBIT B

Mr. Kabler's July 17, 2018 Resignation Letter to Local 1776......................EXHIBIT C

July 25, 2018 Email from PLCB to Mr. Kabler...............................................EXHIBIT D

# EXHIBIT A

# EXHIBIT A

**AGREEMENT**

**BETWEEN**

**COMMONWEALTH OF PENNSYLVANIA**

**AND**

**UNITED FOOD AND COMMERCIAL WORKERS UNION,
PA. WINE AND SPIRITS COUNCIL**

**Effective: July 1, 2016 through June 30, 2019**

# TABLE OF CONTENTS

Page

| | |
|---|---|
| Article 1, Purpose and Intent of the Agreement | 4 |
| Article 2, Union Recognition and Jurisdiction | 4 |
| Article 3, Preservation of Full-Time Status | 5 |
| Article 4, Maintenance of Membership and Dues Checkoff | 5 |
| Article 5, Credit Union | 6 |
| Article 6, Union Activities | 6 |
| Article 7, Grievance and Arbitration Procedure | 7 |
| Article 8, Seniority | 9 |
| Article 9, Furloughs, Hiring, Promotions, Demotions, Rehiring and Transfers | 11 |
| Article 10, Management Rights | 16 |
| Article 11, Salaries and Wages | 16 |
| Article 12, Hours and Overtime | 19 |
| Article 13, Leaves of Absence Without Pay | 24 |
| Article 14, Leaves of Absence With Pay | 27 |
| Article 15, Holidays | 28 |
| Article 16, Personal Leave | 29 |
| Article 17, Vacations | 31 |
| Article 18, Sick Leave | 34 |
| Article 19, Health and Welfare | 37 |
| Article 20, Health Benefits | 39 |
| Article 21, Life Insurance | 48 |
| Article 22, Work-Related Injuries | 49 |
| Article 23, Miscellaneous Working Conditions | 51 |
| Article 24, Union Stewards, Enforcement of Standards and Union Store Emblem | 53 |
| Article 25, Strikes and Lockouts | 54 |
| Article 26, Miscellaneous Provisions | 54 |
| Article 27, Store Closing | 55 |
| Article 28, Equal Employment Opportunity | 55 |
| Article 29, Store Security | 56 |
| Article 30, Preservation of Bargaining Unit Work | 56 |
| Article 31, Political Action Committee Deductions | 56 |
| Article 32, Family Care Leave/Family and Medical Leave Act (FMLA) Leave | 57 |
| Article 33, Leave Donation Program | 63 |
| Article 34, Parental Leave | 66 |

| | |
|---|---|
| Article 35, Term of Agreement | 70 |
| Addendum A, Local Union County Jurisdiction | 71 |
| Addendum B, Military Leave | 72 |
| Addendum C, Sideletter dated November 8, 1993 – Appointment Above Minimum | 76 |
| Addendum D, Sideletter dated August 25, 1978 – Breaks | 77 |
| Addendum E, Sideletter dated August 1, 2002 – Disciplining Probationary Employees | 78 |
| Addendum F, Sideletter dated March 24, 2004 – Retention | 79 |
| Addendum G, Sideletter dated March 24, 2004 – Intermittent Clerks | 80 |
| Addendum H, Sideletter dated March 24, 2004 – Preservation of BU Work | 81 |
| Addendum I, Sideletter dated March 24, 2004 – BU Work (DM Secretaries) | 83 |
| Addendum J, Sideletter dated March 24, 2004 – Requesting Vacation on Hourly Basis | 84 |
| Addendum K, Liquor Store Pay Schedule Effective July 1, 2016 | 85 |
| Addendum L, Liquor Store Pay Schedule Effective October 1, 2016 | 86 |
| Addendum M, Liquor Store Pay Schedule Effective July 1, 2017 | 87 |
| Addendum N, Liquor Store Pay Schedule Effective July 1, 2018 | 88 |

THIS AGREEMENT made and entered by and between the Commonwealth of Pennsylvania, with principal offices and place of business at the Main Capitol Building, Harrisburg, Pennsylvania, (hereinafter referred to as Employer) on sole behalf of the Pennsylvania Liquor Control Board, and United Food and Commercial Workers Union, Pennsylvania Wine and Spirits Council, on behalf of United Food and Commercial Workers Unions, Local 1776 and Local 23, affiliated with United Food and Commercial Workers International Union, with its principal office and place of business at 3031 Walton Road, Suite 201, Plymouth Meeting, PA 19462 (hereinafter referred to as Union).

## W I T N E S E T H:

The parties hereto, intending to be legally bound, hereby agree as follows:

ARTICLE 1
PURPOSE AND INTENT OF THE AGREEMENT

It is the intent and purpose of the parties hereto pursuant to the declaration of public policy contained in Act 195 of 1970 that this Agreement will promote orderly and good faith relationships between the Employer and its employees toward the end that the public at large is served as intended, and establish harmonious relationships between the Union and the Employer by setting forth herein the basic agreement covering rates of pay, hours of work, and terms and conditions of employment to be complied with between the parties hereto.

ARTICLE 2
UNION RECOGNITION AND JURISDICTION

A.     The parties hereto desire to comply with the provisions of the "Public Employe Relations Act," Act of July 23, 1970, #195.  Employer recognizes Union as the sole collective bargaining agent, as authorized by law, for all non-supervisory full-time Liquor Store Clerks 1, Liquor Store Clerks 2, Liquor Store Sales Cashiers, and Liquor Stock Clerks, and Retail Wine Specialists; and Intermittent Liquor Store Clerks and Liquor Store Sales Cashiers (regular part-time employees). Employees hired expressly as vacation replacements from the beginning of the pay period in which May 15 falls to the end of the pay period in which Labor Day falls and employees hired expressly for the increase in holiday business between the beginning of the pay period in which November 1 falls to the end of the pay period in which January 1 falls (seasonal employees) may be represented by the Union but no benefits shall accrue to such employees unless hereinafter specifically provided for in this Agreement.

B.     A regular part-time employee is one who regularly works less than the normal work week established in Article 12, and who is employed by the Commonwealth of Pennsylvania in any of the Employer's liquor store retail establishments, wholesale stores, or PLCB-operated warehouses or sub-warehouses.

C.     All new and rehired employees shall serve a probationary period of 90 working days.  Upon mutual agreement between the Employer and the Union, this probationary period may be extended for an additional 90 working days.  During the course of this probationary period, employees shall accumulate seniority; however, they shall be subject to discharge for any reason whatsoever, without any recourse on the part of the employee or Union.  The probationary period for a regular part-time employee shall not exceed six months duration regardless of the number of days worked.

D.     For purposes of Civil Service Law, the probationary period shall be six months for full-time employees and 975 hours for regular part-time employees.

ARTICLE 3
PRESERVATION OF FULL-TIME STATUS

Before any furloughs are made, the Union shall be notified in writing of the Employer's intent to furlough and the scope and details of the furlough. Upon such notification, the Union shall have the right within five days to require a meeting to discuss such furloughs.

A committee comprised of an equal number of representatives of the Union and the Employer will meet and discuss concerning the feasibility of combining existing part-time positions into full-time positions.

ARTICLE 4
MAINTENANCE OF MEMBERSHIP AND DUES CHECKOFF

A.    Each employee who is or becomes a member of the Union shall maintain such membership for the duration of this Agreement provided that such employee may resign from the employee organization within the 15 days prior to the expiration of this Agreement upon written notice by certified mail, (return receipt requested) to the Employer and the Union.

B.    The Employer agrees to deduct dues and initiation fees, as defined in Article III, Section 301, Paragraph 11 of Act 195. Said deductions shall be made from the wages upon proper written authorization from the employee. The Union shall certify to the Employer the amount of Union dues to be deducted biweekly, and dues at this rate shall be deducted for each biweekly pay period for which the member is paid. Dues shall also be deducted from back pay awards and from pay received to supplement workers' compensation to the extent monies are available after appropriate deductions are made.

C.    The Employer further agrees to deduct from the wages of employees having executed the authorization in Section B of this Article an annual assessment, if any, upon certification of the assessment by the Union to the Employer.

D.    The Employer and the Union hereby agree that all non-members of the Union shall be subject to a fair share fee as provided for in Act 84 of 1988 (S.B. 291) and any amendments thereto. The fair share fee shall be deducted biweekly from all employees in the bargaining unit who are not members of the Union.

Authorization from non-members to deduct fair share fees shall not be required. The amounts to be deducted shall be certified to the Employer by the Union, and the aggregate deductions of all employees shall be remitted together with an itemized statement to the Union by the last day of the succeeding month, after such deductions are made.

E.    The Union shall indemnify and hold the Commonwealth harmless against any and all claims, suits, orders, or judgments brought or issued against the Commonwealth as a result of any action taken or not taken by the Commonwealth under the provisions of this Article.

F.      The above authorization shall be irrevocable during the term of this Agreement.

G.      The Employer shall furnish each new employee with a copy of this Agreement together with an authorization for dues payroll deduction, provided the Union has furnished the Employer with sufficient copies of the Agreement containing the authorization for dues payroll deduction.

H.      Upon written request of the Union, the Employer shall, on a monthly basis, provide a statewide list of all employees who have been hired including their work locations and most recent date of hire. The Union shall be given the opportunity to speak to newly hired bargaining unit members during new employee orientation.

## ARTICLE 5
## CREDIT UNION

A.      The Employer agrees to make payroll deductions available to employees who wish to participate in either one of the credit unions as designated in Section B below.

B.      The Union shall designate to the Employer, in addition to the Pennsylvania State Employees Credit Union, a single depository credit union duly chartered under State or Federal statutes in which employees may participate through payroll deductions.

C.      The Employer shall remit the deductions of employees together with an itemized statement to the applicable credit unions designated under Section B above within 30 days following the end of the calendar month in which deductions were made.

D.      The Union shall supply the appropriate authorization forms to the Employer.

E.      The Union shall indemnify and hold the Commonwealth harmless against any and all claims, suits, orders or judgments brought or issued against the Commonwealth as a result of any action taken or not taken by the Commonwealth under the provisions of this Article.

## ARTICLE 6
## UNION ACTIVITIES

A.      There shall be no discrimination against any employee because of Union membership or activities.  There shall be no discrimination against any employee because of race, color, religious creed, sex, age, national origin, ancestry, marital status, political affiliation, AIDS or HIV status, sexual orientation or gender identity or expression.  Bona fide Union officials may enter the Employer's establishments to satisfy themselves that this Agreement is being observed.

B.      It is further agreed that complaints and grievances will be discussed with officials of the Employer and that such matters will not be discussed by the Union with store employees during hours of work, except where an alleged violation of this Agreement is in question.

C.    The Union may post all official notices in any of the Employer's establishments relative to the affairs of the Union.

## ARTICLE 7
## GRIEVANCE AND ARBITRATION PROCEDURE

A.    A Civil Service employee may file his/her grievance under either the Civil Service appeal procedure or the contract grievance procedure.  If an appeal is filed under the Civil Service appeal procedure, then the contract grievance procedure shall cease and shall not be permitted to be reinstituted.  If an appeal is filed under the Civil Service appeal procedure, the employee shall not be entitled to institute proceedings under the contract grievance procedure, all rights to so do being waived by the exercise of an option by the employee to utilize the Civil Service procedure.

B.    All grievances or disputes arising during the term of this Agreement concerning the interpretation or application of the provisions of this Agreement shall be handled by the following procedure.

C.    Any time limits herein may be extended by mutual agreement between the Employer and the Union.

D.    Grievances which can be adjusted only at a given level of management may be initially presented at the appropriate step of the Grievance Procedure.  (This provision shall not be construed to permit the presentation of grievances at a step other than the proper step of the Grievance Procedure.)

**Step One:**    Within seven days of the alleged grievance, the employee and/or the Union representative will present the grievance to the appropriate Regional Manager.  The Regional Manager shall investigate the grievance and shall reply to the employee and Union within seven days.

**Step Two:**    If the disposition at the first step is deemed unfavorable, within seven days, the local Union chief executive or his representative shall appeal in writing to the Human Resource Director of the Pennsylvania Liquor Control Board.  The Human Resource Director or his representative will meet with the appropriate local Union chief executive officer or his representative within seven days of receipt of the appeal in an attempt to resolve the grievance.  The Human Resource Director or his representative shall then reply to the Union within seven days, in writing.

**Step Three:**    If the disposition at the second step is unfavorable, within seven days, the executive officer of the Wine and Spirits Council or his representative shall appeal in writing to the Bureau of Labor Relations, Office of Administration.  The Bureau of Labor Relations, Office of Administration shall review the grievance and shall reply to the Union within 12 days of receipt of the appeal, in writing.

**Step Four:**    If the disposition at the third step is unfavorable, within seven days, the executive officer of the Union shall notify the Employer (Bureau of Labor Relations, Office of Administration), of the Union's intent to submit the grievance to arbitration.  The arbitrator will be selected mutually within seven days.  In the event no agreement can be reached as to the selection of the arbitrator, either party may request the American Arbitration Association to submit a list of seven possible arbitrators.

The parties shall communicate within five working days of the receipt of said list for the purpose of selecting the arbitrator by alternately striking one name from the list until one name remains.  The Employer shall strike the first name.

The cost of arbitration shall be shared equally by the parties.  Where one of the parties to this Agreement requests a postponement of a previously scheduled arbitration meeting which results in a postponement charge, the postponing party shall pay such charge unless such postponement results in a settlement of the grievance in which event the postponement charge shall be divided equally between the parties.  A postponement charge resulting from a joint postponement request shall be shared equally by the parties.

The arbitrator may not add to, delete from or alter any of the provisions of this Agreement.

The decision of the arbitrator shall be final and binding in all cases submitted to him except where the decision would require an enactment of legislation in which case it shall be binding only if such legislation is enacted. The Arbitrator shall be requested to issue his decision within 30 days after the hearing or receipt of the transcript of the hearing.

A reasonable number of witnesses, when required, shall be permitted to participate in this grievance and arbitration procedure.

The United Food and Commercial Workers-Commonwealth Expedited Arbitration Procedure shall continue in effect during the term of this Agreement.

A Union representative, if an employee of the Employer, upon request to his immediate supervisor, shall be granted reasonable time during working hours, if required, to process grievances in accordance with this Agreement without loss of pay or leave time.

E.    The Employer shall not demote, suspend, discharge, or take any disciplinary action against an employee without just cause.  An employee may appeal a demotion, suspension or discharge beginning at the second step of the grievance procedure, within seven days of its occurrence.  The Union shall be notified within five days by the Employer of any demotion, suspension or discharge.

Any action instituted under this Section shall be implemented within a reasonable period of time after the event giving rise to such disciplinary action or knowledge thereof.

The provisions of this Section shall not be applicable during the contractual probationary period in Article 2, Section C.

F.      The Employer and the Union agree to continue the alternative forms of discipline in lieu of suspension actions program in accordance with the side letter dated August 10, 1999.

G.      The Employer will attempt to discipline employees in such a way so as not to embarrass the employee before the public or other employees.  This section will also apply to instances when an employee is escorted off of the Employer's premises. It must be kept in mind, however, that where insubordination or flouting of authority by an employee in public and/or in the presence of other employees occurs, the Employer will not be restricted by the operation of this Section.


ARTICLE 8
SENIORITY

A.      Seniority for the purpose of this contract shall be defined as the length of continuous service with the Employer (PLCB) in the job classifications in the bargaining unit.

1.      Continuous service shall be calculated from the most recent date of appointment (hire).

2.      An employee's continuous service record shall be broken for the following reasons:

a.      Voluntary resignation
b.      Discharge or separation for just cause
c.      Retirement
d.      AWOL for five working days
e.      Failure to report within five working days of recall from furlough
f.      Failure to report upon expiration of leave
g.      Acceptance of other employment while on leave of absence (excluding leave of absence granted to work for the Union)
h.      Promotion out of the bargaining unit after July 1, 1973.

However, if an employee returns to work in any capacity within two years after such break in service under a. through g. above he shall be entitled to credit for seniority purposes, the time accrued up to the time the break in service occurred, but shall not be entitled to any credit for the time represented by such break in service.

Under Subsection h. above, if an employee returns to the bargaining unit within any period of time, he shall be entitled to credit for seniority purposes, the time accrued up to the time the promotion occurred, but shall not be entitled to any credit for the time represented by such break in service.

An employee who returns to employment at the time of or prior to the expiration of military leave, shall be given such status in employment as would have been enjoyed if employment had been continuous from the time of entrance into the armed forces.

9

B.      Seniority credit for each employee is maintained as a total number of days.  Full-time employees will accrue seniority in accordance with the following procedure: The number of regular hours paid each biweekly pay period plus the number of hours of military leave without pay, leave without pay for illness and union business in accordance with Article 13, leave without pay for work-related injuries in accordance with Article 22, family care leave without pay in accordance with Article 32, Section A, parental leave without pay in accordance with Article 34, Section A, and Family and Medical Leave Act (FMLA) leave under Article 32, Section I will be accumulated. This total number of hours will be divided by 7.5 and rounded up to the next higher day.  The result will be added to the employee's accumulated total.

Regular part-time employees will accrue full seniority credit for each pay period (10 days) provided they work at least eight hours in the pay period.  Effective August 15, 2004, regular part-time employees who are on military leave without pay for a combined total of at least eight hours in the pay period will also accrue full seniority credit for that pay period (10 days).

C.      Seniority lists, by county, shall be established by classification and shall include the store number of each full-time employee.

Seniority lists shall be prepared and furnished to the individual Union local upon its request, but not more than twice in any calendar year.

D.      At the beginning of each month, the Employer will provide the Union with a list of employees who, during the preceding month, were hired, promoted, separated or on leave without pay for more than one month.

E.      Employees who served in the Armed Forces of the United States during periods of war in which the United States was, or is, engaged as listed below shall be responsible for providing proof of military service to their human resource office within 60 days of their first day of work or 60 days after discharge or release from active duty during a current period of war in order to receive seniority credit in accordance with the Veterans' Preference Act, 51 Pa. C.S. 7101.  Failure to provide the required proof of service during the time period shall bar the employee or Union from claiming credit for such service at a later date.

Applicable periods are as follows:

1.  World War II - December 7, 1941 - September 2, 1945
2.  Korea - June 25, 1950 - July 27, 1953
3.  Vietnam - August 5, 1964 - January 28, 1973
4.  Persian Gulf – August 2, 1990 – August 31, 1991
5.  War on Terrorism, September 11, 2001 to date determined by the Adjutant General (Department of Military and Veterans Affairs) pursuant to 51 Pa.C.S. 7101.

10

## ARTICLE 9
## FURLOUGHS, HIRING, PROMOTIONS,
## DEMOTIONS, REHIRING AND TRANSFERS

A.      Should the Employer determine that furloughs are necessary in a classification in a county, all employees occupying part-time positions in the county shall be furloughed before any employee occupying a full-time position, except for a furlough arising from the elimination of a position.

When the Employer determines that a full-time position is to be eliminated in a county, at the Employer's option, the preceding paragraph shall be applicable or the least senior full-time Liquor Store Clerk 1 in that particular county shall be offered a choice of a full-time itinerant position in the county or the nearest full-time vacant position outside the county.  If the employee refuses both positions, the employee shall be immediately furloughed and the bumping provisions set forth below shall not be applicable.

Furloughs shall be made by classification in the inverse order of seniority by county in the manner outlined below:

A full-time employee in the Liquor Store Clerk 1 classification who is affected by furlough shall bump the least senior regular part-time employee in the Intermittent Liquor Store Clerk classification.  If such a bump is not available, the employee shall be furloughed.

An employee in the Liquor Store Clerk 2 classification who is affected by furlough shall bump within the county, into the full-time Liquor Store Clerk 1 classification provided the employee has more seniority than the employee with the least seniority in that classification.  If such a bump is not available, the affected employee shall bump the least senior regular part-time employee in the Intermittent Liquor Store Clerk classification.  If such a bump is not available, the employee shall be furloughed.

An employee in the Liquor Stock Clerk classification who is affected by furlough shall bump within the county, into the full-time Liquor Store Clerk 1 classification provided the employee has more seniority than the employee with the least seniority in that classification.  If such a bump is not available, the affected employee shall bump the least senior regular part-time employee in the Intermittent Liquor Store Clerk classification.  If such a bump is not available, the employee shall be furloughed.

An employee in the Retail Wine Specialist classification who is affected by furlough shall bump down into a classification previously held within the bargaining unit within a county, provided the employee has more seniority than the employee with the least seniority in that classification.  If such a bump is not available, the affected employee shall bump into the full-time Liquor Store Clerk 1 classification provided the employee has more seniority than the employee with the least seniority in that classification.  If such a bump is not available, the affected employee shall bump the least senior regular part-time employee in the Intermittent Liquor Store Clerk classification.  If such a bump is not available, the employee shall be furloughed.

11

An employee who declines a bump as outlined above shall be furloughed.

1.    Work location is defined as the geographic limits of each county.

2.    The Employer shall establish a preference list for those persons who have been furloughed under the above provisions of this Section in the inverse order of such furlough. This list shall remain in effect for two years and shall be used in the order of seniority to fill vacancies in a classification from which the persons on the preference list may have been furloughed.

In the event a person refuses an offer of a position under this Section, he shall be dropped from the list. During the period that employees are on a recall list, they shall keep the Employer informed of any changes in address. The Employer shall not be held liable if an employee is not offered recall because of failure to notify the Employer of a change of address. An employee who is not offered recall because of failure to notify the Employer of a change of address and who subsequently informs the Employer of his current address shall be restored to the recall list and shall be offered the next opportunity for recall for which the employee is eligible.

3.    Permanent employees who are reached for furlough shall be given preferred consideration on a seniority basis to fill vacancies in other counties within the Local Union's jurisdiction providing that such employees give timely notice of their interest in such vacancies.

An employee who fails to report within five working days of recall shall forfeit all recall rights and shall be terminated.

B.    Hiring and promotions shall be governed by appropriate Civil Service Law.

C.    Intermittent Liquor Store Clerks within a county may provide written notice, to the Regional Manager of their desire to be reassigned to a Liquor Store Clerk 1 position within the county after they have successfully completed thirteen pay periods. Any such written request shall be submitted electronically by use of e-mail. These requests for reassignment from Intermittent Liquor Store Clerks to Liquor Store Clerks 1 shall not preclude the use of the Liquor Store Clerk 1 certification list of eligibles nor require the Employer to fill a vacant Liquor Store Clerk 1 position, which it does not intend to fill. However, when the Employer decides to fill a Liquor Store Clerk 1 position by the reassignment of current Intermittent Liquor Store Clerks within the county, the selection shall be based upon seniority, provided the employee has not been suspended or demoted within the previous twelve months, or has not received a letter of reprimand within the previous six months. In cases where employees' seniority standing is equal, the employee with the earliest date of hire will be reassigned. Should employees whose seniority standing is equal also have identical dates of hire, seniority order shall be established by a method of equal chance agreed upon between the parties. Employees selected by this reassignment process will be required to serve a thirty working day probationary period. Failure to successfully complete the probationary period will result in employees being returned to their

12

former Intermittent Liquor Store Clerk position, without any recourse on the part of the employee or Union.

      D.     The term demotion means the movement of an employee to a classification having a lower maximum salary. Demotions may be made to avoid furloughing employees and, as necessary, to remove an employee who cannot satisfactorily perform the duties of the position. In the event a demotion is a result of a reduction in work force, the employee involved shall have the right to elect the demotion or furlough.

      E.     Employer will give one week notice, except in an emergency caused by an Act of God, to the Union and the employee of any intended furlough or reduction in status of a full-time employee. For regular part-time employees, except in an emergency caused by an Act of God, exclusion from the weekly work schedule will be considered proper notice to the employee.

      F.     Full-time Liquor Store Clerks 1 who wish to transfer to vacant Liquor Store Clerk 1 positions in other stores shall submit a voluntary transfer request form to the Regional Manager indicating their preferred stores. Employees should list all stores they prefer, including those outside of their current county. Only employees who have submitted a request prior to the filling of a vacancy will be considered. When a Liquor Store Clerk 1 vacancy occurs, preference will be given to the employee having the greatest seniority within the county in which the vacancy exists, provided that the employee is qualified for the position. If the most senior employee is not qualified for the position in question, preference will go to the employee with the next greatest seniority, etc. If a vacancy cannot be filled by a full-time employee within the county in which the vacancy exists, full-time employees involuntarily transferred out of the county will be considered. If the vacancy cannot be filled by a full-time employee involuntarily transferred out of the county, full-time employees in other counties who were previously regular part-time in the county in which the vacancy exists will be considered. If the vacancy cannot be filled by a full time employee in another county who was previously regular part-time in the county in which the vacancy exists, the employer may fill the position in accordance with Section C above. If the Employer is unable to fill the position in accordance with Section C, full-time employees within the applicable union local will be considered. If no such employees have the position on their request form, any remaining full-time employees shall be considered for the vacancy.

      Bids for vacancies as described above shall be submitted electronically by use of e-mail.

      Where the Employer finds it necessary to temporarily transfer a regular part-time employee to another store to work a schedule similar to the one the employee would have worked in his regular store, regular part-time employees in the store will be offered those hours in order of seniority where practicable. If all regular part-time employees refuse, the least senior qualified regular part-time employee will be transferred.

      The Union recognizes that certain stores represent significant problems in operational efficiency as reflected in the inventory losses experienced and that control of these losses may be achieved through a complete restaffing of the store. When management decides to exercise this control option, the parties shall meet in an attempt to agree on the method of selection of personnel to restaff the store and the new location of the employees transferred from the store. Seniority

preference will be granted where vacancies exist.   Employees who are transferred shall not bid back into the store for a period of one year from the date of their transfer.

The assignment and retention of staff to premium collection stores will not be based on seniority but on individual ability to serve in this type store.  The parties shall meet in an attempt to agree on the selection and retention of individual employees to be assigned to these stores.

In effecting the permanent transfer of a Liquor Store Clerk 2 or Retail Wine Specialist between stores within a county, the Employer shall consider seniority in conjunction with ability and operational efficiency considerations.  An employee shall not be eligible for voluntary transfer to another store if he has been in his present store for less than six months.

Liquor Store Clerks 2 or Retail Wine Specialists desiring to transfer to another store may submit a list of five preferred stores to the appropriate Regional Manager between July 1 and July 31 and between January 1 and January 31 of each year.  Any such written request shall be submitted electronically by use of e-mail.  Requests must be received no later than July 31 and January 31, respectively.  Prior to filling a vacancy, preference requests will be reviewed and considered.  All requests will be purged at the end of each six month period when new requests are submitted.

G.     When a full-time employee is temporarily transferred from one store to another, other than within city limits, the Employer will pay the current mileage allowance established by Commonwealth Travel Expense Regulations for each mile in excess of the number of miles which the employee normally travels from his residence to his permanent work location.  Within city limits, the Employer will pay the current mileage allowance for travel in excess of l0 miles beyond that traveled to the store of regular assignment. The mileage allowance shall be the General Services Administration rate.  If the General Services Administration of the Federal Government increases or decreases the mileage allowance for employees under its jurisdiction, the mileage allowance for employees under this Agreement will be increased or decreased on the effective date of the General Services Administration change.

H.     1.     An Intermittent Liquor Store Clerk (regular part-time) or Liquor Store Clerk 1 temporarily assigned to a higher rated job classification in the Liquor Store Clerk 2 or Liquor Store Assistant Manager 1, 2, or 3 classification will be paid at a rate equal to the rate the employee would receive if the employee were promoted to the Liquor Store Clerk 2 classification for all hours worked up to 40 per week.  Employees will receive time and one-half of the higher rate for hours worked in excess of 40.

2.     An Intermittent Liquor Store Clerk (regular part-time) or Liquor Store Clerk 1 temporarily assigned to a higher rated job classification in a non-exempt Liquor Store General Manager classification will be paid at a rate equal to the rate the employee would receive if the employee were promoted to the Liquor Store General Manager classification for all hours worked up to 40 per week.  Employees will receive time and one-half of the higher rate for hours worked in excess of 40.

14

3.      An Intermittent Liquor Store Clerk (regular part-time) or Liquor Store Clerk 1 temporarily assigned to a higher rated job classification in an exempt Liquor Store General Manager classification will be paid at a rate equal to the rate the employee would receive if the employee were promoted to the Liquor Store General Manager classification for all hours worked up to 40 per week.  Employees will receive time and one-half of the higher rate for those hours worked in excess of 40 for the first 10 consecutive working days of the temporary assignment.   Beginning with the 11th consecutive day worked in temporary assignment, employees will be compensated for hours worked in excess of 40 at straight time.

4.      A Liquor Store Clerk 2 temporarily assigned to a higher rated job classification will be paid their regular rate for the first 10 consecutive working days of the temporary assignment.    Beginning with the 11th consecutive day worked in temporary assignment, if the higher rated job classification is exempt, the employee will be paid at a rate equal to the rate the employee would receive if the employee were promoted to the Liquor Store General Manager classification for all hours worked.  If the higher rated job classification is non-exempt, the employee will be paid at the higher rate for hours worked up to 40 and time and one-half of the higher rate for hours worked over 40.

5.      An employee temporarily assigned to the Retail Wine Specialist classification will be paid at a rate equal to the rate the employee would receive if the employee were promoted to the Retail Wine Specialist classification for all hours worked in that position. Employees will receive time and one-half of the higher rate for hours worked in excess of 40 in a work week.

It is understood that employees must obtain central office approval prior to beginning a temporary assignment in the Retail Wine Specialist classification to ensure that the employee meets the necessary requirements of that classification.   It is further understood that the Employer is not required to temporarily assign an employee to cover every hour that a Retail Wine Specialist is off the schedule where such an assignment is not operationally necessary or feasible.  However, the Employer agrees that it will not withhold temporary assignments in the Retail Wine Specialist classification for arbitrary or capricious reasons.  The Union retains the right to grieve instances which may be at variance with this principle in accordance with Article 7 (Grievance and Arbitration Procedure).

6      Payment for work in a higher classification during a calendar quarter shall be made no later than one calendar month following the end of each quarter.

7.      For purposes of this Section, an exempt Liquor Store General Manager is one who supervises the equivalent of two full-time employees.

8.      If the Employer fills a Liquor Store Clerk 2 position through temporary assignment for a period of five or more consecutive work days, the assignment will be offered first to a qualified Liquor Store Clerk 1 who has notified the District Manager in writing of an interest in accepting temporary assignment.  If there is no qualified Liquor Store Clerk 1 available, the temporary assignment will be given to a qualified Intermittent Liquor Store Clerk. Availability lists from which assignments will be made will be maintained by supervisory district.

I.      Employees who are promoted within the bargaining unit shall serve a 90 working day promotional probationary period.  Upon mutual agreement between the Employer and the Union, this probationary period may be extended for an additional 90 working days.  The provisions of Section E of Article 7 shall not be applicable if an employee is demoted or returned to their former classification within that time for failure to successfully complete the probationary period.  In such case the employee shall have the right to return to his former classification during this period.

J.      Where an employee has resigned for medical reasons only, the employee may request reinstatement upon presentation of medical verification.  The Employer, upon proper evaluation of the employee's condition and prior work history will determine whether the employee will be reinstated.  However, where such requests for reinstatement are refused by the Employer, the Union may, if it considers an injustice has been done, submit such matter to the grievance procedure for resolution.

ARTICLE 10
MANAGEMENT RIGHTS

It is understood and agreed that the Employer at its sound discretion, possesses the right, in accordance with applicable laws, to manage all operations including the direction of the working force and the right to plan, direct, and control the operation of all equipment and other property of the Employer except as modified by the Agreement.

ARTICLE 11
SALARIES AND WAGES

A.      Effective July 1, 2016, employees will be placed on the July 1, 2016 Liquor Store Pay Schedule in Addendum K at the step equivalent to the hourly rate they were receiving as of June 30, 2016.

B.      Effective October 1, 2016, each employee who is in an active pay status shall receive a general pay increase of two and three-quarters percent (2.75%).  This increase is reflected in the Liquor Store Pay Schedule in Appendix L.

16

C.      Effective July 1, 2017, each employee who is in an active pay status shall receive a general pay increase of two percent (2.0%).  This increase is reflected in the Liquor Store Pay Schedule in Appendix M.

D.      Effective July 1, 2018, each employee who is in an active pay status shall receive a general pay increase of two and one-half percent (2.50%).  This increase is reflected in the Liquor Store Pay Schedule in Appendix N.

E.      1.      Employees in an active pay status and who are below the maximum pay scale level shall be eligible to move to the next pay scale level effective the beginning of the first full pay period in April 2018, provided they have been employed continuously by the Commonwealth since April 30, 2017.  Full-time employees who are at Pay Scale Level Q and who have been employed continuously by the Commonwealth since April 30, 2017 shall receive the annual amount of a 2.25% increase in the form of a one-time cash payment rounded to the nearest dollar. Intermittent Liquor Store Clerks who are at Pay Scale Level Q and have been employed continuously by the Commonwealth since April 30, 2017 shall receive a pro rata share of the one-time cash payment of 2.25% based on the number of hours worked in the prior fiscal year.

2.      Employees in an active pay status and who are below the maximum pay scale level shall be eligible to move to the next pay scale level effective the beginning of the first full pay period in April 2019, provided they have been employed continuously by the Commonwealth since April 30, 2018.  Full-time employees who are at Pay Scale Level Q and who have been employed continuously by the Commonwealth since April 30, 2018 shall receive the annual amount of a 2.25% increase in the form of a one-time cash payment rounded to the nearest dollar. Intermittent Liquor Store Clerks who are at Pay Scale Level Q and have been employed continuously by the Commonwealth since April 30, 2018 shall receive a pro rata share of the one-time cash payment of 2.25% based on the number of hours worked in the prior fiscal year.

F.      1.      When a Liquor Store Clerk 1, Intermittent Liquor Store Clerk or Liquor Stock Clerk is promoted to a Liquor Store Clerk 2, the employee will be placed at the same step in the Liquor Store Clerk 2 pay scale group.

2.      When employee placement between a Liquor Store Clerk 1, Intermittent Liquor Store Clerk, Liquor Store Stock Clerk or Liquor Store Clerk 2 classification and a Retail Wine Specialist classification occurs, affected employees will be placed in accordance with the following matrix:

|  LSC1, ILSC, LSSC, or LSC2 | Retail Wine Specialist |
|---|---|
| A | A |
| B | A |
| C | A |
| D | A |
| E | A |
| F | B |
| G | C |
| H | D |

17

```
I -------------------------------------- E
J---------------------------------------F
K --------------------------------------- G
L---------------------------------------H
M -------------------------------------- I
N---------------------------------------J
O --------------------------------------- K
P---------------------------------------L
Q --------------------------------------- M
```

G.    The Employer will be able to appoint above the minimum rate.

H.    The cash payments provided for in this Article shall not be added to the employee's base rate.  The cash payments will be subject to dues and fair share fee deductions where applicable.

I.    An employee in an inactive pay status shall, upon return to active status, be entitled to the general pay increases and step increases outlined in Sections B, C, D and E, where applicable.

J.    Employees who have resigned or retired for reasons other than a work-related injury and are reinstated within one year or are furloughed and subsequently rehired by the Employer shall be rehired at the same step and the same pay scale group they held at the time they left service.  Employees who have resigned or retired as a result of a work-related injury and are reinstated within two years shall be rehired at the same step and the same pay scale group they held at the time they left service.

K.    Seasonal employees hired expressly as vacation replacements from the beginning of the pay period in which May 15 falls to the end of the pay period in which Labor Day falls each year and/or for the increase in holiday business between the beginning of the pay period in which November 1 falls to the end of the pay period in which January 1 falls will be paid at the hourly rate of $11.34.

Such employees will not receive the general pay increases or the step increases as outlined in Sections B, C, D and E.

L.    Salaries and wages shall be paid biweekly.  In the event pay day is a holiday, employees shall be paid on the preceding day.

M.    All employees are required to sign-up for direct deposit of paychecks and travel expense reimbursement.

ARTICLE 12
HOURS AND OVERTIME

A.   Work Week

1.   The basic straight time work week for a full-time employee hired prior to July 1, 2003 shall consist of 37 ½ hours to be worked in five days within a calendar week, excluding Sundays.  The basic straight time work week for a full-time employee hired on or after July 1, 2003 shall consist of 37 ½ hours to be worked in five days within a calendar week, including Sunday, except for the week in which Easter Sunday falls.

2.   The basic straight time work week for a full-time employee in a Sub-Warehouse shall consist of 37 ½ hours to be worked in five days within a calendar week, excluding Saturday and Sunday.

3.   a.   Regular part-time employees shall work a minimum of 13 hours weekly, if available for work at the times scheduled, but not more than 32 hours.  The minimum and maximum hours shall include all hours worked on Sunday.

b.   All regular part-time employees hired before July 1, 2012 will be required to indicate on a form provided by the PLCB whether they are available to work a minimum of twenty (20) hours per week.   Regular part-time employees choosing this option will be required to maintain full availability and work in any store in the supervisory district or county (whichever is smaller). In counties with three (3) or fewer stores, the requirement will be the supervisory district. The assignment of stores and shifts will not be done in a capricious or arbitrary manner.

c.   Once the 13 or 20 hour minimums, as appropriate, have been met, additional hours will be assigned as follows:

(1)   All regular part-time employees will be given the opportunity to work additional hours up to 32 per week by seniority within their store, based on operational needs.

(2)   Regular part-time employees will be required to indicate on a form provided by the PLCB whether they are available to work any additional hours outside their store.  For those regular part-time employees who have indicated their availability for additional hours, a list will be created by supervisory district or county (whichever is smaller.)  This list, in seniority order, will be used where additional hours are available for assignment up to 32 hours per week outside their store.

(3)   If a regular part-time employee is not regularly available when scheduled, they will be removed from the availability list.  Removal from the list can be grieved through the contract grievance procedure.  Regular part-time employees who are removed from the

19

availability list may request to be placed back on the list after six months if their availability changes.  An employee who is removed involuntarily from the list twice will not be placed back on the list.

d.    No employee will be eligible to receive a mileage allowance for travel under this Section.

B.    Work Day

1.    The basic work day for full-time employees will consist of not less than five nor more than eight hours, exclusive of lunch.  Regular part-time employees shall be scheduled for not less than four hours per day.

2.    The scheduling of shifts within a store shall be done on a fair and equitable basis as to individual employees within that store.

3.    The basic work day for Sub-Warehouses will consist of seven and one-half hours, exclusive of lunch.

4.    There shall be no split shifts worked by an employee.  A split shift is defined as two or more separate and distinct work periods within the same day.

5.    There shall be a minimum of eight (8) hours off between scheduled shifts.

C.    Work Schedules

1.    Work schedules for Liquor Store Clerks 1 and regular part-time employees will be posted in ink no later than 3:00 p.m. on the Friday falling nine (9) days prior to the week for which the schedule is effective.  The Employer will not be able to change schedules to avoid overtime, but will be permitted to change the schedules in case of emergency.  A monthly planning calendar will be posted for employees to indicate scheduling requests.

2.    Work schedules for Liquor Store Clerks 2 will be posted in ink no later than 3:00 p.m. on the Friday falling nine (9) days prior to the week for which the schedule is effective.  In the event an employee is required to work in excess of eight hours on a given day, his work schedule may be adjusted to avoid having the employee work in excess of 37 ½ hours within the work week.  However, the employee's work schedule will be adjusted only one time to accommodate this situation.  A monthly planning calendar will be posted for employees to indicate scheduling requests.

3.    Work schedules for Sub-Warehouse employees will be posted in the work location in a conspicuous place no later than l:00 p.m. on the Friday falling nine (9) days prior to the week in which the schedule is effective.  The Employer will be entitled to change work schedules in case of emergency but not in order to avoid overtime.

20

4.      Work schedules for Retail Wine Specialist will be posted in ink no later than 3:00 p.m. on the Friday falling nine (9) days prior to the week for which the schedule is effective. In the event an employee is required to work in excess of eight hours on a given day, his work schedule may be adjusted to avoid having the employee work in excess of 37 ½ hours within the work week.   However, the employee's work schedule will be adjusted only one time to accommodate this situation.  A monthly planning calendar will be posted for employees to indicated scheduling requests.

D.      Days Off

1.      Each Liquor Store Clerk 1 will have two days off per week.  For employees hired prior to July 1, 2003, one of those days shall be Sunday.  The other day will be Monday through Saturday at management's discretion, consistent with operational considerations.  For employees hired on or after July 1, 2003, the two days off shall be any two days at management's discretion, consistent with operational considerations. Employees shall have one Monday and one Saturday off per month during each of the months from January through October.   If during a particular month a holiday should fall on a Monday or a Saturday, that will be considered as the employee's guaranteed Monday or Saturday for that month.

In addition, if an employee is absent for any reason on a Saturday during a given month, he shall not be entitled to any other Saturday off during that month.  However, if an employee receives more than one Saturday off during a month (except for the prime summer vacation guarantee as provided in Article 17, Section E, or an extended illness), his right to a Saturday off during the ensuing months shall be forfeited on the basis of one month for each Saturday off in excess of one.

The guaranteed Monday and Saturday off does not apply for the months of November and December.

2.      Each Liquor Store Clerk 2 will have two days off per week. For employees hired prior to July 1, 2003, one of those days shall be Sunday.  The other day will be determined by the Employer.  For employees hired on or after July 1, 2003, both days off shall be determined by the Employer.  Each employee will be guaranteed two Mondays off per month, excluding the month of December.  Where practicable and operationally feasible, Regional Managers will permit employees to be granted a Saturday off.

3.      Each Retail Wine Specialist will have two days off per week, as determined by the Employer.  Where the Employer determines that it is operationally feasible to do so, employees in the Retail Wine Specialist classification will be scheduled off for two Mondays every month

4.      The granting of days off shall be done on a fair and equitable basis as to individual employees.t

5.      If the store is closed on a holiday, in-lieu of holiday pay, a full-time employee who works five days that week will be granted a replacement holiday within eight

weeks following the date of the holiday, provided the employee is entitled to that holiday under Article 15, Section A.  If the store is open on a holiday, a full-time employee who is scheduled off on the holiday and works five days that week will be granted a replacement holiday within eight weeks following the date of the holiday, provided the employee is entitled to that holiday under Article 15, Section A.  The replacement holiday will be selected by mutual agreement between the store manager and the employee.  In the event mutual agreement is not reached, the District Manager and the appropriate Union representative will endeavor to resolve the problem. If it is not operationally feasible to grant another day off, employees will be compensated at their regular rate of pay in lieu of the day off.

      E.    <u>Overtime</u>

      1.    Overtime is defined as work required by the Employer, in excess of eight hours in any work day (excluding Liquor Store Clerk 2 and Retail Wine Specialist), as hours worked in excess of 40 hours per week or as hours worked on the sixth day of the work week (excluding Sundays), when required by the Employer to work, exclusive of any lunch period. Overtime pay shall be at the rate of one and one-half times the employee's regular hourly rate of pay.

      2.    For hours worked on Sunday, the following premium pay shall be applicable:

      Employees hired prior to July 1, 2003 shall be paid at the rate of one and one-half times the employee's regular hourly rate of pay.

      Employees hired on or after July 1, 2003, but prior to July 1, 2012, shall be paid $3.00 per hour in addition to their regular hourly rate of pay.

      Employees hired on or after July 1, 2012 but prior to October 11, 2016 shall be paid $1.00 per hour in addition to their regular hourly rate.

      Employees hired on or after October 11, 2016 shall not be eligible for premium pay under this subsection, and shall receive their regular hourly rate of pay for all hours worked.

      3.    Overtime hours worked by an employee in the Liquor Store Assistant Manager or General Manager class series shall be paid in accordance with Section H of Article 9.

      4.    By mutual agreement between the Employer and employee involved, compensatory time at the appropriate rate may be granted in lieu of overtime pay.  If agreement cannot be reached, the employee will be paid.  Compensatory time is to be granted within a 120 calendar day period succeeding the date on which the overtime is worked.  If a written request is received within 45 days after the date on which overtime is worked, the compensatory time off shall, subject to management's responsibility to maintain efficient operations, be scheduled and granted as requested by the employee.  If the Employer does not schedule the compensatory time in accordance with the employee's request, or at some other time, prior to the completion of the 120 calendar day period succeeding the date on which the overtime is worked, the

employee shall be compensated at the appropriate rate of pay in lieu of paid time off.

5. For work performed before 7:00 a.m. and after 10:00 p.m. or one hour after the store closing, whichever is later, employees shall receive, in addition to their regular hourly rate, 10% (20% for Liquor Store Clerk 2) of their regular hourly rate for each hour worked. The additional 10% (20% for Liquor Store Clerk 2) shall not be considered part of the employee's regular straight time hourly rate for the purpose of calculating overtime pay.

6. The following items will be regarded as hours worked for the purpose of computing overtime pay under Section E.1. of this Article:

a. Hours worked.

b. Holidays - Except for holiday payment to eligible regular part-time employees in accordance with Article 15, Holidays, Section F.

c. Annual Leave - Except for annual leave payment to regular part-time employees in accordance with Article 17, Vacations, Sections H and I.

d. Compensatory leave; to be included in the period of occurrence for the purpose of computing overtime.

7. Payment for overtime will be made thirty days after the end of the pay period in which the overtime is worked.

8. There shall be no pyramiding of overtime (i.e., payment of overtime on overtime).

F. Except as provided in Article 29, meal periods will be scheduled as close to the middle of the work shift as possible and will be 30 minutes in length. However, a Liquor Store Clerk 2 or a Retail Wine Specialist may elect not to be scheduled for a meal period if requested in writing by the employee and approved in writing by the District Manager. Requests to vary temporarily from the approved option will be handled on an individual basis.

G. An employee who is called to the liquor store whenever the store is closed shall be paid at the appropriate rate for the hours worked or a minimum of three hours' pay at the employee's regular straight time hourly rate, whichever is greater; provided however, there shall be no duplication of pay for any part of the minimum hours which occurs during the employee's scheduled shift. Employees receiving call time shall be credited for beginning work when they arrive at the store.

H. Effective as soon as practically and legally possible, the Commonwealth will adopt a tax-qualified Leave Payout Plan. All employees who attain age 55 before or during the calendar year they separate from service after adoption of the Leave Payout Plan shall have the leave payouts otherwise payable for accumulated and unused Annual Leave, Personal Leave,

23

Compensatory Leave, Holiday Leave and Sick Leave, up to the maximum allowable by law, deposited in an account in the employee's name, provided however that if the total amount of leave payout is $5000 or less, this amount shall be paid to the employee in cash. Amounts in excess of the maximum allowable amount will be paid to the employee in cash.

    I.      <u>Sunday Sales - Staffing</u>

        1.      Sunday work will be assigned on a rotational basis to all employees hired on or after July 1, 2003 who are assigned in a store that is open on Sunday. Part-time employees in the district or county, whichever is smaller, hired on or after July 1, 2003 not currently assigned to a store that is open on Sunday can be added to a Sunday rotation, if necessary.

        2.      All Liquor Store Clerks 1, Liquor Store Clerks 2, and regular part-time employees hired before July 1, 2003 who volunteer to work Sundays, will be included in a Sunday scheduling rotation in either their store, if open, or a store of their choice within their district that is open on Sunday.

        3.      No travel expenses will be paid for travel on Sunday.

    J.      A statewide committee comprised of an equal number of representatives from both the Union and Management shall be established to discuss ways to improve employees' work/life balance. The subjects to be explored by this committee shall include, but are not limited to, flexible scheduling, advanced notice on scheduling, fixed schedules, rotating schedules, scheduling by seniority and the scheduling of days off.

ARTICLE 13
<u>LEAVES OF ABSENCE WITHOUT PAY</u>

    A.      Any employee who is elected or appointed as a representative of the Union in any activity necessitating absence shall be granted a leave without pay upon adequate advance notice thereof to the Employer in writing for a period not to exceed his term of office.

    Such leaves of absence shall be renewed and extended for additional periods of office terms.

    B.      Employees with more than one year of service shall be entitled to written leaves of absence for any reasons mutually acceptable to the Union and Employer, for a period not to exceed one year. This request shall be made by the employee in writing and shall be confirmed by the Employer in writing with a copy to the Union.

    By written mutual agreement between the Employer and employee, such leaves may be extended.

    C.    1.      Upon the expiration of a leave of absence of six months or less, the employee shall have a right to return to a position in the same or equivalent classification, subject to the furlough and recall provisions of Article 9. Upon the expiration of a leave of absence of more than

24

six months, except as provided in Article 22, Section F, the employee shall have a right to return to a vacant position, which the Employer intends to fill, in the same or equivalent classification, subject to the furlough and recall provisions of Article 9.

       2.      Effective with the beginning of the 2017 leave calendar year, upon the expiration of any approved leave of absence without pay, except as provided in Article 22, Section F and in Article 32, Section K, the employee is entitled to return to a position in the same or equivalent classification, subject to the furlough and recall provisions of Article 9.

       D.    1.      After completing one year of service, permanent full-time and regular part-time employees shall be granted, upon written request, up to six months of sick leave without pay with benefits, on a rolling twelve month year basis, provided the employee has at least 1250 hours of actual work time (900 hours for part-time employees) within the twelve months preceding the commencement of the leave. If the illness or disability is due to a serious health condition as defined by the Family and Medical Leave Act, leave shall be granted for less than two consecutive weeks. The request, which shall be submitted in advance of the leave if circumstances permit, shall include proof of illness or disability in the form of a doctor's certificate which shall state a prognosis and expected date of return. If requested and properly documented as medically necessary, leave under this Section shall be approved on an intermittent or reduced-time basis during the first twelve weeks of absence per rolling twelve month year. After twelve weeks of absence, whether taken intermittently, on a reduced-time basis, or continuously, subsequent leaves in the rolling twelve month year shall not be approved for periods of less than two consecutive weeks. For eligible permanent part-time employees, both the six month and 12 week entitlements provided by this Subsection will be pro-rated based on the employee's percentage of full-time regular hours worked.

       2.      Employees shall be required to use all accrued paid sick leave upon commencement of sick leave without pay. Such sick leave used will run concurrently with and reduce the six month entitlement to leave without pay with benefits. Employees shall not be required to use annual, personal, compensatory or holiday leave upon the commencement of sick leave without pay; however, if annual, personal, or holiday leave is used, it also will run concurrently with and reduce such entitlement.

       3.      It is understood by the parties that Subsection D.2. applies except that employees may choose to retain up to ten days of accrued sick leave. The choice to retain or not retain sick leave cannot be made retroactively, and saved days will be measured based on accrued sick leave available at the commencement of the absence. Saved days may be used by employees at any time during the first 12 weeks of the six month entitlement to leave without pay with benefits. Such sick leave used will run concurrently with and reduce the six month entitlement to leave without pay with benefits. Days saved and requested for intermittent or reduced-time absences for periods less than two consecutive weeks after the first 12 weeks of the six month entitlement to leave without pay with benefits will be reviewed for approval under the provisions of Article 18. Such use will not be counted against the six month entitlement to leave without pay with benefits.

4.      Intermittent or reduced-time sick leave without pay may be approved for absences after the first 12 weeks of the six month leave entitlement to leave without pay with benefits when due to a catastrophic illness or injury of the employee that poses a direct threat to life or to the vital function of major bodily systems or organs, and would cause the employee to take leave without pay or terminate employment. All accrued and anticipated leave must be used before granting leave without pay under this Subsection.  Such leave without pay used will run concurrently with and reduce the six month entitlement to leave without pay with benefits.

5.      One aggregate six month entitlement of leave without pay with benefits will be provided for sick leave without pay used under this Section, parental leave without pay used under Article 34, Section A.1., and family care leave without pay used under Article 32, Section A.  Leave used under these Articles as well as military exigency leave used under Section H below, will be deducted from the six month entitlement and run concurrently.

6.      After the employee has used an aggregate of six months of leave without pay with benefits under this Section, Article 34, Section A.1., and/or Article 32 Section A, and/or military exigency leave under Section H below, the Employer is not required to grant subsequent leave without pay with benefits until such time that the employee again becomes eligible for some portion of the six month entitlement under the rolling twelve month year, provided that the employee has 1250 hours of actual work time (900 hours for part-time employees) within the twelve month period preceding commencement of the leave.

7.      The continuation of benefits under this Section is subject to the employee's payment of any required employee contribution under Article 20, Section C.

8.      This Section shall not apply to a work-related injury.

E.      Upon request of the employee, an extension of up to an additional six months of leave without pay shall be granted provided the employee provides proof of continuing illness or disability in the form of a doctor's certificate which shall state a prognosis and expected date of return.  The extension shall be without benefits and shall be contiguous to the termination of the initial six months of leave without pay with benefits. It shall not be used on an intermittent or reduced-time basis. Upon certification from the employee's doctor that the employee is able to return to work, the employee shall have a right to return to a vacant position, which the Employer intends to fill, in the same or equivalent classification, subject to the furlough and recall provisions of Article 9.

This Section shall not apply to a work-related injury.

F.      It is understood by both parties that the provisions of Sections D and E are consistent with the Family and Medical Leave Act of 1993, 29 USC Sections 2601 et seq.

G.      State-paid coverage for life insurance and state payments toward coverage for health benefits as provided in Articles 20 and 21 and contributions to the Health and Welfare Fund in accordance with Article 19 will continue for the period of time the employee is on sick leave without pay with benefits under Section D of this Article.

H.    After completing one year of service, employees shall be eligible to use unpaid military exigency or military caregiver leave.  Military exigency absence provides 12 weeks of leave within a rolling calendar year.  Military caregiver absence provides 26 weeks of leave within a single 12 month period.  Both military exigency leave and military caregiver leave may be used intermittently or on a reduced time basis.

I.    Effective with the beginning of the 2017 leave calendar year, Sections D through H of this Article will expire, and be replaced by the Provisions of Article 32, Sections I through P.

## ARTICLE 14
## LEAVES OF ABSENCE WITH PAY

A.    Employees who have not volunteered for jury duty and are called for jury duty or are not a party in a civil or criminal court proceeding but are subpoenaed as a witness to attend such a court proceeding, shall be granted leave with pay while attending court.  Evidence of such duty in the form of a subpoena or other written notification shall be presented to the employee's immediate supervisor as far in advance as practicable.

B.    The Employer shall grant up to 40 hours leave with pay during each year of this Agreement to all Shop Stewards in order that they may attend Local Stewards' meetings and/or the annual Shop Stewards' conference in the event the Union participates in such meetings and/or conference.  The Union agrees to avoid requests for such leave on Friday, Saturday or an inventory day whenever possible.  Requests for such leave must be submitted at least one week in advance.

C.    All requests for leave under this Article must be submitted in writing to the employee's immediate supervisor and shall be answered in writing promptly.  Requests for emergency type leaves shall be answered before the end of the shift on which the request is made.  Except for such emergency type leaves, the time when leave is taken is within the discretion of the Employer.

Requests for any type of leave to which an employee is entitled under this Agreement and which is not to exceed one month shall be answered by the Employer within five days. If the requested leave is in excess of one month, the request shall be answered within 10 days.

D.    For the purpose of this Article, the calendar year shall be defined as beginning with the employee's first full pay period commencing on or after January 1 and continuing through the end of the employee's pay period that includes December 31.

<u>ARTICLE 15</u>
<u>HOLIDAYS</u>

A.      The following days shall be recognized as holidays for all employees:

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King, Jr.'s Birthday | Veterans' Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Christmas Day |

In addition to the above-listed holidays, President's Day and Columbus Day shall also be recognized as holidays for employees hired prior to October 11, 2016.

Monday shall be recognized as a holiday for all holidays occurring on a Sunday.

B.      A full-time employee shall be paid for any holiday listed in Section A of this Article, provided he was in an active pay status the last half of his scheduled work day immediately prior and the first half of his scheduled work day immediately subsequent to the holiday.

If the store is closed on a holiday, in-lieu of holiday pay, full-time employees who work five days that holiday week will be granted a replacement holiday in accordance with Article 12, Section D.5.  If the store is open on a holiday, a full-time employee who is scheduled off on the holiday and works five days that week will be granted a replacement holiday in accordance with Article 12, Section D.5.

C.      If a holiday is observed while a full-time employee is on any paid leave status, he will receive his holiday pay and the day will not be charged against such paid leave.

D.      If an employee works on a holiday for which they are eligible under Section A of this Article, he shall be compensated at one and one-half times his regular rate of pay for all hours worked on said holiday.  In addition:

1.      Full-time employees hired prior to October 11, 2016 shall, at the discretion of the Employer, receive either compensatory time off for all hours worked up to a full shift (7.5 hours) or be paid at their regular rate of pay in lieu of such compensatory time.

2.      (a)      Full-time employees hired on or after October 11, 2016 shall not be eligible for compensatory time or the payment in lieu of compensatory time, as provided for in Section D.1. for hours worked on Martin Luther King, Jr.'s Birthday, Memorial Day, Independence Day and Veteran's Day.

(b)      In the event that a full-time employee hired on or after October 11, 2016 works on New Year's Day, Labor Day, Thanksgiving Day, or Christmas Day, they shall, at the discretion of the Employer, receive either compensatory time off for all hours worked up to a full shift or be paid at their regular rate of pay in-lieu of such compensatory time.

E.      For the purpose of computing overtime, all holiday hours unworked for which an employee is compensated shall be regarded as hours worked, except for holiday hours paid to regular part-time employees in accordance with Section F of this Article.  However, there shall be no pyramiding of overtime and holiday work time.

F.      Regular part-time employees who are paid for 1450 hours or more during a fiscal year shall be granted four (4) hours holiday pay for each of the holidays for which they are eligible under Section A above in the next fiscal year.  Regular part-time employees who are paid for between 650 and 999 hours during a fiscal year shall be granted four hours holiday pay for New Year's Day, Memorial Day, Labor Day and Christmas Day during the next fiscal year.  Regular part-time employees who are paid for between 1000 and 1449 hours during a fiscal year shall be granted four hours holiday pay for New Year's Day, Presidents' Day (if eligible under Section A), Memorial Day, Labor Day, Veterans' Day and Christmas Day during the next fiscal year.

Regular part-time employees must work at least one day during the pay period in which the holiday falls, to qualify for the holiday payment outlined above.

Regular part-time employees will not receive benefits under this Section until they have completed two years of service.

G.      Effective as soon as practically and legally possible, the Commonwealth will adopt a tax-qualified Leave Payout Plan.  All employees who attain age 55 before or during the calendar year they separate from service after adoption of the Leave Payout Plan shall have the leave payouts otherwise payable for accumulated and unused Annual Leave, Personal Leave, Compensatory Leave, Holiday Leave and Sick Leave, up to the maximum allowable by law, deposited in an account in the employee's name, provided however that if the total amount of leave payout is $5000 or less, this amount shall be paid to the employee in cash.  Amounts in excess of the maximum allowable amount will be paid to the employee in cash.

## ARTICLE 16
## PERSONAL LEAVE

A.      Each full-time employee will be eligible for paid personal leave days as follows:

1.      Two paid personal leave days in the first one-half calendar year and one paid personal leave day in the second half calendar year will be earned in the employee's first calendar year of employment provided the employee has 300 hours in an active pay status in each one-half calendar year.

2.      Two paid personal leave days in the first one-half calendar year and two paid personal leave days in the second half calendar year will be earned in the employee's second calendar year of employment provided the employee has 300 hours in an active pay status in each one-half calendar year.

3.      Three paid personal leave days in the first one-half calendar year and two paid personal leave days in the second half calendar year will be earned in the employee's third and subsequent years of employment provided the employee has 300 hours in an active pay status in each one-half calendar year.

4.      Leave service credit earned during all periods of Commonwealth employment will be used to determine whether, for purposes of this Section, an employee is in the first calendar year of employment, the second calendar year of employment or the third and subsequent years of employment.

B.      Personal leave shall be scheduled by mutual agreement of the employee and the Employer. Every effort shall be made to accommodate employees in case of emergencies. Full-time employees will be permitted to request and be scheduled for personal leave on an hourly basis where operationally feasible.

C.      Full-time employees may anticipate personal leave to which they may become entitled during the calendar year. Employees will be permitted to carry over personal leave into the first seven (7) pay periods of the next calendar year. Any days carried over in accordance with this Section which are not scheduled and used during the first seven (7) pay periods of the next calendar year will be lost.

D.      For purposes of this Article, the calendar year shall be defined as beginning with the employee's first full pay period commencing on or after January 1 and continuing through the end of the employee's pay period that includes December 31. For the purpose of this Article, the half calendar years shall be defined as beginning with the employee's first full pay period commencing on or after January 1 through June 30 and July 1 through the end of the pay period that includes December 31.

E.      Effective as soon as practically and legally possible, the Commonwealth will adopt a tax-qualified Leave Payout Plan. All employees who attain age 55 before or during the calendar year they separate from service after adoption of the Leave Payout Plan shall have the leave payouts otherwise payable for accumulated and unused Annual Leave, Personal Leave, Compensatory Leave, Holiday Leave and Sick Leave, up to the maximum allowable by law, deposited in an account in the employee's name, provided however that if the total amount of leave payout is $5000 or less, this amount shall be paid to the employee in cash. Amounts in excess of the maximum allowable amount will be paid to the employee in cash.

F.      Effective with the beginning of the 2017 leave calendar year, personal leave will be incorporated into annual leave and Article 16 shall expire.

## ARTICLE 17
## VACATIONS

    A.   1.   Employees shall be eligible for annual leave after 30 calendar days of service with the Employer in accordance with the following schedule:

| Leave Service Credit (includes all periods of Commonwealth Service where Leave Service Credit is earned) | Maximum Annual Leave Entitlement Per Year |
|---|---|
| Up to 3 Years: Annual Leave will be earned at the rate of 2.70% of all Regular Hours Paid | 52.5 Hours (7 days) |
| Over 3 Years to 15 Years Inclusive: Annual Leave will be earned at the rate of 5.77% of all Regular Hours Paid | 112.5 Hours (15 days) |
| Over 15 Years: Annual Leave will be earned at the rate of 7.70% of all Regular Hours Paid | 150 Hours (20 days) |

    2.   Employees hired before July 1, 2012 with over 25 years of Commonwealth service are eligible to earn annual leave in accordance with the following schedule.

| | |
|---|---|
| Over 25 Years: Annual Leave will be earned at the rate of 10% of all Regular Hours Paid | 195 Hours (26 days) |

3.      Effective with the beginning of the 2017 leave calendar year, full-time employees shall be eligible for annual leave after 30 calendar days of service with the Employer in accordance with the following schedule:

| Leave Service Credit (includes all periods of Commonwealth Service where Leave Service Credit is earned) | Maximum Annual Leave Entitlement Per Year |
|---|---|
| Up to 3 Years: Annual Leave will be earned at the rate of 4.24% of all Regular Hours Paid | 82.5 Hours (11 days) |
| Over 3 Years to 15 Years Inclusive: Annual Leave will be earned at the rate of 7.70% of all Regular Hours Paid | 150 Hours (20 days) |
| Over 15 Years: Annual Leave will be earned at the rate of 9.62% of all Regular Hours Paid | 187.5 Hours (25 days) |

4.      Effective with the beginning of the 2017 leave calendar year, employees hired before July 1, 2012 with over 25 years of Commonwealth service are eligible to earn annual leave in accordance with the following schedule:

| | |
|---|---|
| Over 25 Years: Annual Leave will be earned at the rate of 11.93% of all Regular Hours Paid | 232.5 Hours (31 days) |

Regular Hours Paid as used in this Article include all hours paid except overtime, call time and full-time out-service training.

Employees shall be credited with a year of service for each 26 pay periods completed in an active pay status, provided they were paid a minimum of one hour in each pay period.

B.     Vacations shall be granted on a seniority basis to employees at the time requested subject to management's responsibility to maintain efficient operations.  Requests for vacation periods shall not be unreasonably denied.

C.     If a holiday occurs during the calendar week in which vacation is taken by an employee, the holiday shall not be charged to annual leave.

D.     Any employee separated from the service of the Employer for any reason shall be compensated in a lump sum for the unused vacation he has accumulated up to the time of separation.

Effective as soon as practically and legally possible, the Commonwealth will adopt a tax-qualified Leave Payout Plan.  All employees who attain age 55 before or during the calendar year they separate from service after adoption of the Leave Payout Plan shall have the leave payouts otherwise payable for accumulated and unused Annual Leave, Personal Leave, Compensatory Leave, Holiday Leave and Sick Leave, up to the maximum allowable by law, deposited in an account in the employee's name, provided however that if the total amount of leave payout is $5000 or less, this amount shall be paid to the employee in cash.  Amounts in excess of the maximum allowable amount will be paid to the employee in cash.

E.     Full-time employees who are entitled to two weeks shall be permitted to take them consecutively during the prime summer months (June 15-Labor Day).

F.     Unused vacation leave shall be carried over from one calendar year to the next provided that in no case shall the amount thus carried over exceed 45 days (337.5 hours).  However, employees will be permitted to carry over vacation leave in excess of the forty-five day limit into the first seven (7) pay periods of the next calendar year.  Any vacation days carried over in accordance with this Section which are not scheduled and used during the first seven (7) pay periods of the next calendar year will be converted to sick leave subject to the 300 day limitation contained in Article 18, Section B.  Scheduling of those days carried over shall be in accordance with Section B above.

G.     Full-time employees who have one or more years of service since their last date of hire may anticipate annual leave to which they become entitled during the then current calendar year unless the Employer has reason to believe that the employee has been abusing his leave privileges.  Full-time employees with less than one year of service since their last day of hire may not anticipate annual leave.

H.     1.     Effective with the beginning of the 2017 leave calendar year, regular part-time employees who have two or more years of service will earn annual leave in accordance with the following schedule:

| | |
|---|---|
| **Up to 3 Years:** | 2.70% of all Regular Hours Paid |
| **Over 3 Years to 15 Years Inclusive:** | 5.77% of all Regular Hours Paid |
| **Over 15 Years:** | 7.70% of all Regular Hours Paid |

2.      Effective with the beginning of the 2017 leave calendar year, regular part-time employees hired before July 1, 2012 with over 25 years of Commonwealth service are eligible to earn annual leave in accordance with the following schedule:

**Over 25 Years:**                    10%

3.      Present practices related to the usage of and payment of annual leave for regular part-time employees shall continue in effect.  Annual leave hours paid to regular part-time employees shall not be counted as hours worked for the purpose of computing overtime.

I.      Regular part-time employees who have two or more years of service as of June 30, will be paid an additional annual leave payout based upon the number of regular hours paid during the previous fiscal year in accordance with the following schedule:

| Regular hours paid | Annual leave |
| --- | --- |
| 650 to 999 | 4 hours |
| 1000 to 1449 | 8 hours |
| 1450 or more | 12 hours |

Such employees will receive a cash payment, as soon as practicable after July 1 of the applicable year, for the number of hours indicated above at their rate of pay in effect at the time the payment is processed.

The cash payments provided for in this Section shall not be added to the employee's base rate.  They will require neither employee nor Employer retirement contributions, nor will these payments be considered compensation for the calculation of retirement benefits.  The cash payments will be subject to dues and fair share fee deductions where applicable.

J.      None of the provisions of this Article shall be applicable to regular part-time employees until they have completed two years of service.

K.      For the purpose of this Article, the calendar year shall be defined as beginning with the first full pay period commencing on or after January 1 and continuing through the end of the pay period that includes December 31.

<u>ARTICLE 18</u>
<u>SICK LEAVE</u>

A.      1.      Employees shall be eligible to use sick leave after 30 calendar days of service with the Employer.

2.    Employees shall earn sick leave in accordance with the following schedule:

**Maximum Sick Leave**
**Entitlement Per Year**

Sick Leave will be          37.5 Hr. Workweek: 82.5 Hrs. (11 days)
earned at the rate of
4.24% of all Regular
Hours Paid

3.    Regular Hours Paid as used in this Article include all hours paid except overtime, call time and full-time out-service training.

B.    Employees may accumulate sick leave up to a maximum of 300 days (2250 hours).

C.    A doctor's certificate is required for an absence from work due to sickness for three or more consecutive days.  For absences of less than three days, a doctor's certificate may be required where in the opinion of the Employer, the employee has been abusing his sick leave privileges.

D.    Employees may not use more than five days of sick leave in any calendar year, where sickness in the immediate family requires the employee's absence from work.  Immediate family is defined as husband, wife, domestic partner, parent, child, foster child or step-child of the employee or child of the employee's domestic partner.  The Employer may require proof of such family sickness.

E.    Where a family member's serious health condition requires the employee's absence from work beyond 20 days (150 hours) in a calendar year, employees with at least one year of service may use accrued sick leave, in addition to that provided by Section D above.

1.    Employees who meet the eligibility criteria in 2. through 5. below may use accrued sick leave in accordance with the following schedule:

| **Leave Service Credit** | **Sick Family Allowance** |
|---|---|
| Over 1 year to 3 years | Up to 52.5 additional hours (7 days) |
| Over 3 years to 15 years | Up to 112.5 additional hours (15 days) |
| Over 15 years to 25 years | Up to 150 additional hours (20 days) |
| Over 25 years | Up to 195 additional hours (26 days) |

2.    During the initial 20 days (150 hours) of absence, paid annual and personal leave and/or unpaid leave shall be used and may include leave provided under Section D. above. The additional sick family leave allowance must be used prospectively, and may not be retroactively charged for any of the initial 20 days (150 hours).  A separate 20 day (150 hour) requirement must be met for each different serious health condition and/or family member and for each calendar year, even if not all of the additional days were used during the previous calendar year.

35

3.     The initial 20 days (150 hours) of absence may be accumulated and the additional leave may be used on an intermittent basis.

4.     Proof of the family member's serious health condition as defined by the Family and Medical Leave Act must be provided on the Commonwealth's Serious Health Condition Certification form.  Proof may be required for each absence during the 20 day (150 hour) period and subsequent additional sick family leave period.

5.     Family member for the purposes of this Section is defined as the following persons: husband, wife, domestic partner, child, step-child, foster child or parent of the employee or the child of the employee's domestic partner or any other person qualifying as a dependent under IRS eligibility criteria.

F.     Employees may use up to five days of sick leave for the death of a spouse, domestic partner, parent, step-parent, child or step-child, or the child of the employee's domestic partner and up to three days of such leave may be used for the death of a foster child, brother, step-brother, sister, step-sister, grandparent, step-grandparent, grandchild, step-grandchild, son- or daughter-in-law, brother- or sister-in-law, parent-in-law, grandparent-in-law, aunt, uncle, or any relative residing in the employee's household or the following relatives of the employee's domestic partner: parent, brother, sister, grandparent or grandchild.

G.     1.     Employees who retire shall be paid for their accumulated unused sick leave in accordance with the schedule below if they retire under the conditions set forth in Subsections a. through d.:

| Days Available at Retirement | Percentage Buy-Out | Maximum Days |
|---|---|---|
| 0 - 100 | 30% | 30 |
| 101 - 200 | 40% | 80 |
| 201 - 300 | 50% | 150 |
| over 300 (in last year of employment) | 100% of days over 300 | 11 |

a.     Superannuation retirement with at least five years of credited service in the State and/or Public School Retirement Systems,

b.     Disability retirement,

c.     Other retirement with at least 25 years of credited service in the State and/or Public School Retirement Systems, or

d.     After 7 years of service, death prior to retirement or separation of service except as provided in Section H.

2.     Such payments shall not be made for part days of accumulated sick leave.

36

3.      No payments under this Section shall be construed to add to the credited service of the retiring member or to the retirement covered compensation of the member.

4.      Effective as soon as practically and legally possible, the Commonwealth will adopt a tax-qualified Leave Payout Plan.  All employees who attain age 55 before or during the calendar year they separate from service after adoption of the Leave Payout Plan shall have the leave payouts otherwise payable for accumulated and unused Annual Leave, Personal Leave, Compensatory Leave, Holiday Leave and Sick Leave, up to the maximum allowable by law, deposited in an account in the employee's name, provided however that if the total amount of leave payout is $5000 or less, this amount shall be paid to the employee in cash.  Amounts in excess of the maximum allowable amount will be paid to the employee in cash.

H.      When an employee dies as a result of a work-related accident, the Commonwealth will pay 100% of the employee's unused sick leave.   Such payments shall not be made for part days of accumulated sick leave.

I.      Full-time employees who have one or more years of service since their last date of hire may anticipate sick leave to which they become entitled during the then current calendar year unless the Employer has reason to believe that the employee has been abusing his leave privileges. Full-time employees with less than one year of service since their last date of hire may not anticipate sick leave.

J.      None of the provisions of this Article shall be applicable to regular part-time employees until they have completed two years of service.

K.      For the purpose of this Article, the calendar year shall be defined as beginning with the employee's first full pay period commencing on or after January 1 and continuing through the end of the employee's pay period that includes December 31.

L.      For the purpose of this Article, domestic partner shall be defined as a same sex domestic partner who meets the eligibility criteria established by the Commonwealth.

<u>ARTICLE 19</u>
<u>HEALTH AND WELFARE</u>

A.      This Article will be applicable only to those employees in Local 1776 and former Local 72 who were in this bargaining unit on August 30, 2002 and to those employees in Local 23 who were in this bargaining unit on March, 30, 2001.  No contributions will be made for employees hired on or after August 31, 2002 and March 31, 2001, respectively.

B.      The Employer shall contribute to the following jointly administered Taft-Hartley Health and Welfare Funds as designated by the Union.  The contribution period for regular part-time employees who work 978 hours or more in the prior fiscal year will begin in September and will continue through August.  For the purpose of this Article, the following items will be

regarded as hours worked: regular hours worked, holiday pay under Article 15, Section F, paid sick leave and injury leave without pay.   The monthly contribution rates shall be as follows:

<u>UFCW Local 1776 and Participating Employers Health and Welfare Fund</u>

Full-time employees and regular part-time employees who worked 978 hours or more in the prior fiscal year:

      July 1, 2015 – June 30, 2019         $81.29

Regular part-time employees who worked less than 978 hours in the prior fiscal year:

      July 1, 2015 – June 30, 2019         $253.53

<u>UFCW Local 1776 Central PA and Regional Health and Welfare Fund</u>

Full-time employees and regular part-time employees who worked 978 hours or more in the prior fiscal year:

      July 1, 2015 – June 30, 2019         $62.78

Regular part-time employees who worked less than 978 hours in the prior fiscal year:

      July 1, 2015 – June 30, 2019         $197.88

<u>UFCW Local 23 and Employers Health Fund</u>

Full-time employees and regular part-time employees who worked 978 hours or more in the prior fiscal year:

      July 1, 2015 – June 30, 2019         $15.86

Regular part-time employees who worked less than 978 hours in the prior fiscal year:

      July 1, 2015 – June 30, 2019         $211.22

<u>UFCW Health and Welfare Fund of Northeastern PA (Includes employees formerly covered by Local 72)</u>

Regular part-time employees who worked less than 978 hours in the prior fiscal year:

      July 1, 2015 – June 30, 2019         $154.71

The parties have not reached agreement on the effect of a merger of local unions should one occur during the life of this agreement.

C.      The Union shall indemnify and hold the Commonwealth harmless against any and all claims, suits, orders or judgments brought or issued against the Commonwealth as a result of any action taken or not taken by the Commonwealth under the provisions of this Article.

D.      None of provisions of this Article shall be applicable to regular part-time employees until they have completed four months (eight pay periods) of service.

E.      The Employer shall continue to make full contributions to the Funds for employees who are granted sick leave without pay, parental leave without pay, or family care leave without pay for up to six months and for employees who are granted injury leave (paid and unpaid) for up to twelve months or, if only paid leave is used, beyond 12 months until the paid leave is exhausted.

F.      The Employer shall make aggregate payments of contributions together with an itemized statement to the Funds within 30 days from the end of the month in which the monthly contributions were collected.

## ARTICLE 20
## HEALTH BENEFITS

A.      Pennsylvania Employees Benefit Trust Fund

1.      A jointly administered, multi-union, health and welfare Fund has been established under the provisions of an Agreement and Declaration of Trust executed by and between Council 13, American Federation of State, County and Municipal Employees and the Employer.

This jointly administered Fund is known as the Pennsylvania Employees Benefit Trust Fund (hereinafter Fund or PEBTF).  The Fund shall conform to all existing and future Federal and Commonwealth statutes applicable to and controlling such Health and Welfare Fund.

Said Agreement and Declaration of Trust shall provide for equal representation on the Board of Trustees appointed by the Unions and the Employer.  In addition, the Agreement and Declaration of Trust will allow the Fund to provide benefits to management level and retired employees, as well as employees represented by other unions and other employers in the Commonwealth of Pennsylvania.

2.      The Board of Trustees of the Fund shall determine in their discretion and within the terms of this Agreement and the Agreement and Declaration of Trust the extent and level of medical plan benefits, supplemental benefits and other benefits to be extended by the Fund.

3.    a.    The Employer shall contribute to the Fund the amounts indicated below on behalf of each permanent full-time employee eligible for benefits and covered by this Agreement effective the first full pay period in July for the fiscal years specified below:

| July 2016 – June 2017 | $455 biweekly per employee |
| July 2017 – June 2018 | $473 biweekly per employee |
| July 2018 – June 2019 | $486 biweekly per employee |

The contributions for regular part-time employees who work 978 hours or more in the prior fiscal year and who elect coverage will be 50% of the above referenced rates. Required employee contributions for coverage are set forth in Section C below. The coverage period will begin January 1 and end on December 31. For the purpose of this Section, the following items will be regarded as hours worked: regular hours worked, holiday pay under Article 15, Section F, paid sick leave and injury leave without pay.

b.    Regular part-time employees who become full-time during a fiscal year will receive the same benefits as full-time employees effective on the date they become full-time. Full-time employees who become regular part-time employees during a fiscal year will receive benefits in accordance with the number of hours worked in the prior fiscal year effective on the date they become part-time.

4.    The Fund shall maintain a reserve sufficient to pay on a cash basis the three (3) next succeeding months of projected claims and expenses. Reserve is calculated as the ending fund balance, meaning the net amount of funds on hand as of the close of any given month. Fund revenues are to be adjusted to reflect the relevant cash amounts that should have been or are to be received or collected by the Fund under the agreement. Fund expenses are to be adjusted for any expense which should have been paid for the period. At each bimonthly meeting of the Board of Trustees, the Fund's actuary will present their financial projection to the Finance Committee including a report that will show the projected reserve level at the end of the succeeding 24 months, or through the end of the current agreement if this latter period is less than 24 months.

The report will concisely state the assumptions and factors used in making these projections.

The report will be available to all trustees of the Fund. If the average amount of the projected reserve for any future quarter (e.g. July-September) is less than a three (3) month reserve as defined above, the actions below will be triggered:

a.    The first day of the quarter during which the average reserve would be less than three (3) months will be considered the "target date" for additional funding;

b.    At least six (6) months prior to the target date, the Fund's actuary will review the projection and confirm that a funding adjustment is needed and the amount of

40

such adjustment.  If the need for a funding adjustment occurs in the first nine (9) months, this subparagraph shall not apply;

    c. Should the Commonwealth not dispute the finding by the Fund's actuary that an adjustment is necessary the Commonwealth will implement the funding adjustment at least ten (10) calendar days prior to the target date.

    d. If either the Chairman of the Board, Secretary of the Board, any four (4) management or any four (4) union Trustees of the Board dispute the findings of Fund's actuary, the Chairman and the Secretary of the Board of Trustees will select a neutral actuary within five (5) business days to resolve the dispute and will forward their respective positions and any supporting documentation to the neutral actuary within five (5) business days of such selection.  The neutral actuary may communicate and ask questions of the Fund's actuary provided, however, if such communications occur, the Finance Committee will have access to the discussions.

    e. The neutral actuary shall render a decision within 30 calendar days of the receipt of said positions/documentation, which decision will be final and binding on the parties and must be implemented within 10 (ten) business days of its receipt by the parties.

    f. The adjustment must be sufficiently large so as to restore the size of the reserve to a minimum of three months within 30 days following the target date.

    g. Once the reserve exceeds the three (3) month equivalent, the contribution rate shall be reduced to the amount provided under this Section unless the parties agree that a new rate is necessary to maintain a three (3) month reserve.

    h. It is understood and agreed to by the parties that the process outlined above is designed to ensure adequate funding for the PEBTF and not intended to place the financial status of the Fund in jeopardy.

    5. The Employer shall make aggregate payments of Employer contributions together with an itemized statement to the Fund within one month from the end of the month in which the biweekly contributions were collected.

    6. All benefits extended by the Fund must be designed to be excludable from the "regular rate" definition of the Fair Labor Standards Act, unless hereinafter required by Federal law to be included.

    7. No dispute over eligibility for benefits or over a claim for any benefits extended by the Fund shall be subject to the grievance procedure established in any collective bargaining agreement.

    8. It is expressly agreed and understood that the Employer does not accept, nor is the Employer to be charged with hereby, any responsibility in any manner connected with the

determination of liability to any employee claiming under any of the benefits extended by the Fund. It is expressly agreed that the Employer's liability, in any and every event, with respect to benefits extended by the Fund shall be limited to the contributions indicated under Subsections 3 and 4 above.

B.      The provisions of Sections C through G shall be modified to the extent the medical plan benefits, supplemental benefits and other benefits as determined and extended by the Fund and/or the Retired Employees Health Program are modified for current and/or future employees and annuitants as provided for in Section A (employees) and/or Section F (annuitants) of this Article, respectively.

C.      The Fund shall continue to provide each permanent, full-time active employee medical plan benefits, supplemental benefits and other benefits as determined and extended by the Fund. In addition, it shall provide dependency coverage where the dependents of the employee qualify. The Fund shall provide part-time employees who qualify under Section A.3. above with medical plan benefits, supplemental benefits and other benefits as determined and extended by the Fund. In addition, the Fund shall provide dependency coverage where the dependents of the employee qualify. Such employees shall contribute an amount determined by the Fund's trustees toward the cost of coverage. However, part-time employees in Local 1776, Local 27 and former Local 72 hired prior to August 31, 2002 and part-time employees in Local 23 hired prior to March 31, 2001 will not pay employee contributions for single coverage, except as provided in Subsections 1., 2., and 3. below. Enrollment and continued coverage in Fund benefits is further subject to the following conditions:

1.      Subject to the provisions of Section C.2., employees will contribute a percentage of their biweekly gross base salary toward the cost of coverage as provided below:

|                       |       |
| --------------------- | ----- |
| July 2016 – June 2017 | 2.0%  |
| July 2017 – June 2018 | 2.25% |
| July 2018 – June 2019 | 2.50% |

Employee contributions shall be effective the first full pay period in July of the periods specified above. Biweekly gross base salary as used throughout this Article excludes premium or supplemental payments such as overtime, shift differentials, higher class pay, etc.

2.      An employee will be assessed a surcharge if the employee and his/her qualifying dependents, as determined by the Trustees, do not participate in the Get Healthy Program as established from time-to-time by the Fund. In accordance with Section A.2., the Fund shall be solely responsible for establishing all requirements and conditions of the Get Healthy Program, including rules and policies for the requirements and making determinations whether an employee will be assessed the surcharge for not fulfilling the Get Healthy Program requirements.

(a)     Effective July 2016 through December 2016, the surcharge shall be three percent (3%) of the employee's biweekly gross base salary, which is in addition to the contribution set forth in Section C.1. above. Biweekly gross base salary as used throughout this Article excludes premium or

supplemental payments such as overtime, shift differentials, higher class pay, etc.

(b)     Effective January 2017, the surcharge, which is in addition to the contribution set forth in Section C.1. above, is an amount equal to 30% of biweekly premium for self-only coverage under the PEBTF least expensive plan (as defined by EEOC Regulations) as determined by the Fund Trustees.

In the event that the EEOC wellness regulations issued in May 2016 are withdrawn, redrafted, or declared invalid, at any time after January 1, 2017, and provided that it is legally permitted under then existing laws and regulations to do so, the employee contribution, effective as soon as practicable after the withdrawal, redrafting or declaration of invalidity, shall revert to 5% of the employee's biweekly gross base salary if the employee and his/her qualifying dependents do not participate in the Get Healthy Program.

3.      The parties agreed to an evaluation process with respect to the reserve levels of the Fund to determine if an employee contribution is necessary.  Under this process, if the Fund's actuary certifies that a three (3) month reserve of projected claims and expenses has been achieved and will be maintained for at least six (6) months, the Trustees will evaluate whether employee cost sharing for employees hired before August 1, 2003, can be reduced or eliminated, provided that at no time shall any such reduction or elimination of cost sharing result in the reserve being reduced below the three (3) months of total projected claims and expenses.  Should the Trustees, after evaluating the employee cost sharing, decide that contributions by employees hired before August 1, 2003 will be reduced or eliminated, the reserve will be reviewed on a six (6) month basis by the Fund's actuary. If the actuary certifies that the amount of the reserve has dropped below the three (3) month level, such contributions will resume immediately at the levels established in this Agreement, without any action on the part of the parties or the PEBTF Board of Trustees. This Subsection shall be read and administered in a manner consistent with Section A.4. of this Article.

4.      (a)     For the first six (6) months of employment, the employee will be offered single coverage in the least costly medical plan offered and available in his/her area, with no supplemental benefits.  The employee may opt to purchase medical coverage for the employee's qualifying dependents in the same medical plan as the employee, and/or may opt to purchase a more costly plan in the area by paying the difference in cost between the least costly and the more costly plan, in addition to the employee contribution required under Section C.1.

(b)     After completing six (6) months of employment, the employee and his/her qualifying dependents will be eligible for coverage under the Fund's supplemental benefits, and the employee will be permitted to cover his/her qualifying dependents under the least costly medical plan at no additional cost.  If a more costly medical plan is selected, the employee will be required to pay the cost difference between the least costly and

43

more costly plan, in addition to the employee contribution required under Section C.1.

(c)    Nothing herein shall be construed to limit the authority of the Board of Trustees to modify or adopt these or other eligibility rules.

5.    Only employees who elect to enroll for PEBTF coverage, including those who enroll only for supplemental benefits, are subject to the employee contributions in this Article.  An employee who is only enrolled as a spouse of another PEBTF covered employee is not subject to any required employee contributions.

6.    Employee contributions under this Article will be paid to the Fund on a biweekly basis as soon as is practicable using the Employer's standard methods for transferring money.  The parties intend that these contributions will be submitted in a more accelerated manner than the Employer contributions.  Any employee contributions made pursuant to this Article will be made on a pre-tax basis.

D.    1.    Full-time employees and eligible part-time employees who are granted leave without pay in accordance with Articles 13, 22, 32 or 34 may continue to receive benefits as described in those articles and as determined and extended by the Fund.  Those employees who are granted leave without pay for any reason other than leave without pay in accordance with the articles specified above for longer than the applicable period specified above or individuals placed on suspension for longer than one full pay period will be permitted to continue coverage on a direct pay basis at a rate to be determined by the Fund, but no greater than the COBRA rate.

2.    The Employer shall continue to make full contributions to the Fund for full-time employees for the period of time they are entitled to benefits under Section D.1. and 50% contributions, as applicable, for eligible part-time employees for the period of time for which they are entitled to benefits under Section D.1.

3.    The continuation of benefits under this Section is subject to the employee's payment of any required employee contribution under Section C.

E.    Spousal Eligibility

1.    For employees hired on or after August 1, 2003:  If the spouse of an employee is covered by any PEBTF health care plan, and he/she is eligible for coverage under another employer's plan(s), the spouse shall be required to enroll in each such plan, which shall be the spouse's primary coverage, as a condition of the spouse's eligibility for coverage by the PEBTF plan(s), without regard to whether the spouse's plan requires cost sharing or to whether the spouse's employer offers an incentive to the spouse not to enroll.

2.    For employees hired before August 1, 2003:  Effective October 1, 2003, if the spouse of an employee covered by any PEBTF health plan also is eligible for coverage under another employer's plan(s), the spouse shall be required to enroll in each such plan, provided that the plan in question does not require an employee contribution by the spouse or

44

the spouse's employer does not offer an incentive to the spouse not to enroll.  Once covered by another employer's plan, that plan will be the spouse's primary coverage, and the PEBTF plan will be secondary.

       3.      Nothing herein shall be construed to limit the authority of the Board of Trustees to modify or adopt these or other spousal eligibility rules.

      F.   1.      The Employer shall allow each individual who was eligible as an active full-time employee under the Fund's health benefits plan to elect coverage upon retirement under the Retired Employees Health Program (hereinafter REHP).  In addition, dependency coverage shall be allowed where the dependents of the annuitant qualify under such Program.

       2.      Employees who retire on or after July 1, 2007, and who elect REHP coverage, shall be eligible for the medical and prescription benefits in effect for active employees, provided that the Employer will modify the REHP plan of benefits from time-to-time to conform to the medical and prescription benefits in effect for the active employees. Annuitants who are eligible for Medicare will participate in Medicare medical and prescription plans, and those annuitants who are eligible to enroll in Medicare Part B will not receive benefits through the Retired Employees Health Program for benefits which are provided by Medicare Part B. It is understood that the REHP plan of benefits may be amended or modified by the Employer from time-to-time.

       3.      Employees who retire on or after July 1, 2007, and elect REHP coverage shall be required to contribute to the cost of coverage.  The annual retiree contribution rate shall be a percentage of the employee's final annual gross salary at the time of retirement from State service equal to the active employee contribution rate in effect on the date of retirement and will be payable monthly at the rate of one-twelfth of the annual retiree contribution rate.

The REHP is developed and administered in a cost effective and beneficial manner by the Fund, subject only to the prior approval of the Office of Administration and in accordance with the terms and conditions of the REHP Participation Agreement between the Employer and the Fund.

The annual retiree contribution rate during the term of this agreement for employees who retire on or after July 1, 2011 shall be three (3) percent of the employee's final average salary at the time of retirement, as determined by the methodology utilized by the State Employees' Retirement System to calculate pension benefits, and will be payable monthly at the rate of one-twelfth of the annual retiree contribution rate.  The methodology utilized by the State Employees' Retirement System to calculate pension benefits will also be applied to determine the annual retiree contribution rate for employees who retired on or after July 1, 2007 through June 30, 2011 in those situations where said methodology results in a lower retiree contribution rate than results from the use of final gross annual salary; in situations where use of final gross annual salary yields a lower contribution rate for such former employees, it shall continue to be used.  Further, the annual retiree contribution rate for all present and future Medicare eligible retirees who have a contribution rate of three (3) percent will be reduced to one-and-one-half (1.5) percent of the appropriate base (final gross annual salary or final average salary) when a retiree becomes eligible for Medicare coverage, and will be payable monthly at the rate of one-twelfth of the

annual retiree contribution rate.

4.    The Employer shall continue to pay the cost of coverage, subject to the required retiree contribution rates, for annuitants who retire under a., b., c., d. or e. below and who have elected REHP coverage.

a.    Superannuation retirement with at least 15 years of credited service (20 years of credited service if retired on or after July 1, 2008) in the State and/or Public School Retirement Systems, except that

(1)    an employee who leaves State employment prior to superannuation age and subsequently retires at or after superannuation age must have 25 years of credited service in the State and/or Public School Retirement Systems,

(2)    an employee who is furloughed prior to superannuation age and subsequently retires at or after superannuation age during the recall period must have 15 or more years of credited service (20 or  more years of credited service if retired on or after July 1, 2008) in the State and/or Public School Retirement Systems,

(3)    an employee who leaves State employment prior to superannuation age and is subsequently rehired and then retires at or after superannuation age must have 15 or more years of credited service (20 or more years of credited service if retired on or after July 1, 2008) in the State and/or Public School Retirement Systems with at least three years of credited service from the most recent date of reemployment. However, if the departure from State employment was due to furlough and the employee returns during the recall period, this three year requirement will not apply.  If the employee had qualified, other than through disability retirement, for Employer paid coverage in the REHP prior to the most recent rehire period, this three year requirement will not apply.

(4)    an employee who leaves State employment subsequent to superannuation age and is subsequently rehired and then retires must have 15 or more years of credited service (20 or more years of credited service if retired on or after July 1, 2008) in the State and/or Public School Retirement Systems with at least three years of credited service from the most recent date of reemployment. However, if the departure from State employment was due to furlough and the employee returns during the recall period, this three year requirement will not apply.  If the employee had qualified, other than through disability retirement, for Employer paid coverage in the REHP prior to the most recent rehire period, this three year requirement will not apply.

46

b.    Disability retirement, which requires at least five years of credited service in the State and/or Public School Retirement Systems, except that, if an employee had previously qualified based on an approved disability retirement, then returns and retires under a normal or early retirement, he or she must retire at or after superannuation age with 15 or more years of credited service (20 or more years of credited service if retired on or after July 1, 2008) in the State and/or Public School Retirement Systems or 25 years of credited service in the State and/or Public School Retirement Systems or

c.    Other retirement with at least 25 years of credited service in the State and/or Public School Retirement Systems, except that an employee who leaves State employment, is subsequently rehired and retires must have at least 25 years of credited service in the State and/or Public School Retirement Systems with at least three years of credited service from the most recent date of reemployment.  However, if the departure from State employment was due to furlough and the employee returns during the recall period, this three year requirement will not apply.  If the employee had qualified, other than through disability retirement, for Employer paid coverage in the REHP prior to the most recent rehire period, this three year requirement will not apply.

d.    All employees who had at least 15 years of credited service as of June 30, 2008, or who had 13 years of credited service and were within one year of superannuation age as of June 30, 2008, whether it had been purchased as of that date or was eligible to be purchased as of that date, shall be eligible to elect REHP coverage upon reaching superannuation age with 15 years of credited service rather than 20.  The three-year rehire rule will not apply to such employees.

e.    For purposes of eligibility for REHP coverage under this Section, credited service earned on or after July 1, 2007, will be limited to service as a Commonwealth employee which otherwise counts as credited service under the State and/or Public School Retirement, TIAA-CREF or other approved retirement systems' rules in effect from time to time. Employees hired on or after July 1, 2007 who have earned credited service under the State and/or Public School  Retirement, TIAA-CREF or other approved retirement systems' rules with another employer will not have that service counted for purposes of eligibility for REHP coverage, unless they were employed by the Commonwealth prior to July 1, 2007.  If it is determined by the State and/or Public School Retirement Systems that a Commonwealth employee is eligible for additional credited service for military service, such credited service will be included in the determination of eligibility for REHP coverage.    The phrase "Commonwealth employee" shall be limited to service earned through an

47

employing agency eligible to participate in the Commonwealth's Life Insurance Program.

G.    When an employee dies as a result of a work-related accident, the Fund shall continue to provide medical plan benefits and supplemental benefits, as determined and extended by the Fund, to the spouse and eligible dependents of the employee until the spouse remarries or becomes eligible for coverage under another employer's health plan.  Annual certification of non-coverage will be required.

The medical plan benefits and supplemental benefits will be converted to the REHP at the time when the employee would have reached superannuation age.

H.    The parties will evaluate the health plans offered under the Fund, and take action as necessary, in order to ensure that a tax and/or penalty is not assessed against the Commonwealth pursuant to the Affordable Health Care Act as a result of the impact upon employees of any such plans.


## ARTICLE 21
## LIFE INSURANCE

A.    The Employer shall continue to pay the entire cost of insurance coverage for eligible employees as set forth in the currently existing life insurance plan as modified by Section B.  The amount of the life insurance coverage shall be equivalent to the employee's annual salary (nearest $1,000) as of January 1 each year but not to exceed $40,000. The adjustment to the proper amount shall be accomplished effective on January l of each year.

An employee who attains age 70 while insured will have the amount of his insurance reduced to 65% effective the date he turns age 70.  The amount of insurance will be reduced to 50% on the date the insured individual reaches age 75.

B.    1.    Full-time employees who are granted leave without pay in accordance with Article 13, 22, 32 and 34 will continue to receive 100% State-paid coverage under the current life insurance plan as described in those articles.  When the entitlements to benefits end under those articles, employees may continue in the life insurance program by paying the entire premium. Coverage may continue for up to a total of one year, including both leave with benefits and leave without benefits.

2.    Full-time employees who are placed on suspension or who are granted leave without pay for any reason other than leave without pay in accordance with the articles specified in 1. above for longer than 91 calendar days may remain in the program for up to one year by paying the entire premium.

C.    The Employer shall provide each employee who is covered under the currently existing life insurance plan with fully paid accidental death benefits for work-related accidental deaths.  The amount of coverage will be $25,000.

ARTICLE 22
WORK-RELATED INJURIES

A.    1.    An employee who sustains a work-related injury during the period of this Agreement as a result of which he/she is disabled, if so determined by a decision issued under the operation of the Workers' Compensation Program, shall be entitled to use accumulated sick, annual, or personal leave or injury leave without pay.  While using accumulated leave, the employee will be paid a supplement to workers' compensation of full pay reduced by an amount that yields a net pay, including workers' compensation and social security disability benefits, that is equal to the employee's net pay immediately prior to the injury.  Net pay prior to the injury is defined as gross base pay minus federal, state and local withholding, unemployment compensation tax, social security and retirement contributions.  One full day of accumulated leave (7.5 hours) will be charged for each day the supplement is paid.  Accumulated leave and injury leave without pay may be used for an aggregate of nine (9) months (274 calendar days) or for the duration of the disability, whichever is the lesser, except that, if only accumulated leave is used, it may be used beyond nine (9) months (274 calendar days) until exhausted or until the disability ceases, whichever occurs sooner. In no case will the aggregate of nine (9) months (274 calendar days) extend beyond three years from the date the injury occurred.  If no leave is available under this Section, the provisions of Section J. may apply.

The employee election to use or not use accumulated leave under this Section cannot be changed more than once.

2.    State-paid coverage for life insurance and state payments toward coverage for health benefits as provided in Articles 20 and 21 and contributions to the Health and Welfare Fund in accordance with Article 19 will continue for the period of time that the employee is on leave under Sections A.1. and J and for the first 13 weeks (91 calendar days) after leave under Section A.1. expires if the employee remains disabled.

B.    An employee who works a reduced number of hours (part-time) due to partial disability may use leave in accordance with Section A.1.  Pay for accumulated leave used will be calculated in accordance with Section A.1., based on the net amount of lost earnings.

C.    Retirement credited service for the period of time that the employee is using leave under this Article shall be determined in accordance with the State Employees' Retirement Code.

D.    At the expiration of the leave under Section A.1., if an employee continues to receive workers' compensation, the employee will be placed on leave without pay in accordance with Section F.

E.    An employee is required to refund to the Employer the amount of any overpayment. In no case shall an employee be entitled to full pay and workers' compensation and/or social security for the same period.  The Employer shall recover any amount in excess of the paid supplement to workers' compensation as described in Section A.1.  Failure to apply for or report social security or other applicable disability benefits to the Employer will result in the termination of the leave under Section A.1.

49

F.      An employee has the right to return to a position in the same or equivalent classification held before being disabled, for a period of up to three years from the date the injury occurred provided the employee is fully capable of performing the duties of that position, subject to the furlough provisions of Article 9, Furloughs, Hiring, Promotions, Demotions, Rehiring and Transfers.  This guarantee expires if the disability ceases prior to the expiration of the three year period and the employee does not return to work immediately or if the employee retires or otherwise terminates employment.  During the period of time between the end of the leave under Section A.1. or Section J where applicable, and the end of the guarantee in this Section, the employee will be on leave without pay.

During the three-year period, employees who are not fully capable of performing the duties of their position shall have, upon request, a right to return to an available position in a lower classification to which there are no seniority claims and which the agency intends to fill, provided the employee meets the minimum requirements and qualifications essential to the work of the classification and the employee is fully capable of performing the duties of the position. If an employee returns to a position in a lower classification, the employee will be demoted in accordance with the Commonwealth's Personnel Rules, but shall maintain the right to return to a position in the same or equivalent classification held before being disabled, for a period of up to three years from the date the injury occurred, provided the employee is fully capable of performing the duties of that position, subject to the furlough provisions of Article 9, Furloughs, Hiring, Promotions, Demotions, Rehiring and Transfers.

Disabled employees receiving workers' compensation will be notified 90 days prior to the expiration of the three year period.  The notification will include information concerning the employee's right to apply for disability retirement, if eligible.  If the employee does not receive 90 days' notice, the employee's right to return will not be extended.  However, the leave without pay will be extended for 90 days from the date of notification to enable the employee, if eligible, to apply for disability retirement.

G.      The compensation for disability retirement arising out of work-related injuries shall be in accordance with the State Employees' Retirement Code.

H.      The Commonwealth agrees to the use of modified duty where the employee is able to work only in a limited capacity and the prognosis for the injury indicates that the employee will be able to resume all of the duties of the employee's classification in a reasonable period of time.  The Employer may terminate a modified duty assignment when it becomes apparent that the employee will not be able to resume the full duties of the employee's classification within a reasonable period of time.

Under the modified duty concept, the employee will be retained without loss of pay or status.  The Employer may assign the employee duties outside their classification and bargaining unit.  To facilitate the implementation of modified duty assignments, schedule and assignment changes may be implemented as soon as practicable.  If the employee is unable to resume all of the duties of the employee's classification within a reasonable period of time, the Employer may demote or laterally reclassify the employee to an appropriate classification, taking into account

50

the duties and responsibilities the employee is capable of performing and subject to the protections afforded by Federal and State Statutes.

I.      An employee who sustains a work-related injury, during the period of this Agreement, if so determined by a decision issued under the operation of the Workers' Compensation Program, may use sick, annual, or personal leave for the purpose of continued medical treatment of the work-related injury in accordance with Articles 16, 17, and 18.  If no paid leave is available, an employee may use leave without pay.  Each absence shall not exceed the minimum amount of time necessary to obtain the medical treatment.  Employees shall make reasonable efforts to schedule medical appointments during non-work hours or at times that will minimize absence from work.  Verification of the length of the medical appointment may be required.  This Section is not applicable to any absence for which workers' compensation is payable.  When workers' compensation is payable, the provisions of Section A.1. shall apply.

J.      An employee who is disabled due to a recurrence of a work-related injury after three years from the date the injury occurred, or before three years if the leave entitlement in Section A.1. has been depleted, shall be entitled to use accumulated leave and injury leave without pay while disabled for a period of up to 12 weeks.  To be eligible to use injury leave without pay, the employee must have been at work at least 1250 hours within the previous 12 months.  The 12 week period will be reduced by any other leave used within the previous 12 months that was designated as leave under the provisions of the Family and Medical Leave Act.  If only accumulated leave is used, it may be used beyond 12 weeks until exhausted or until the disability ceases, whichever occurs sooner. While using accumulated leave, the leave will be charged and paid in accordance with Section A.1.

K.      It is understood by both parties that the provisions of this Article are consistent with the Family and Medical Leave Act of 1993, USC Sections 2601 et seq. and that leave granted in accordance with Sections A.1. and J. shall be designated as leave under the provisions of the Act.

L.      It is understood by both parties that the provisions of this Article are consistent with the Americans with Disabilities Act.

M.      Should the Patient Protection and Affordable Care Act of 2010, 42 USC, § 18001 *et seq.* or its regulations be modified or interpreted to not provide an additional 91 calendar days of benefits, as described in Section A.2. of this Article, it is agreed that the health and life insurance entitlements outlined in this Article will not be diminished.

ARTICLE 23
MISCELLANEOUS WORKING CONDITIONS

A.      1.      Employer agrees to furnish bib-style aprons to be worn by employees when performing required maintenance and janitorial type duties for which normal street wear is not appropriate.

51

2.    The Employer and the Union agree to meet and discuss regarding any changes to current dress codes or attire policies.

B.    Any employee handling cash shall be held responsible for any shortage (cash or cash equivalent) provided:

1.    The employee is given his own register till.

2.    The employee must be given the opportunity to count his own cash at the beginning and close of his shift, and given the register readings that are taken at the beginning and close of his shift.

3.    Only the employee is empowered to ring up on the cash drawer for which the employee is responsible.

4.    The employee is provided with a means of locking the cash drawer when the register is unattended.

C.    All time during which an employee is required by the Employer to be on duty or present on Employer's premises shall be considered hours worked and will be properly recorded on time sheets.

D.    In cases regarding alleged theft of cash or merchandise, local union representatives shall be afforded the opportunity to be present when a bargaining unit member is accused of involvement.

E.    No employee shall be held financially responsible for unexplained losses or breakage to Employer's inventory.  Employees in sub warehouses shall not be held responsible for accidental losses due to damaged equipment.   The Employer shall not hold any employee responsible for losses resulting from robberies unless the employee is implicated therein or unless the employee's actions are in violation of established cash handling procedures and/or established store procedures.

Nothing herein shall be construed to require employees to jeopardize their own safety or the safety of other employees.

F.    A signature on any form shall not constitute an admission against any employee's interest in connection with disciplinary action.  Disciplinary action must be for just cause.

G.    Meetings between representatives of the Union and the Employer will be held at the agency and/or appropriate local level to discuss problems of mutual concern dealing with the implementation of this Agreement or other labor-management problems that may arise.  A meeting may be scheduled if either party submits a proper agenda for discussion and the parties agree as to the need for a meeting and the appropriate individuals to attend.  When these individuals are Commonwealth employees who are required to attend the meeting during working hours, they shall be granted time off with pay.

H.      In the event the Public Employe Relations Act is amended during the term of this Agreement, the parties agree to negotiate concerning the Amendments to determine whether or not this Agreement should be amended to incorporate changes permitted by the amendments to the Act. It is clearly understood that the provisions of Article 25, Strikes and Lockouts shall remain in full force and effect during the time that this Agreement is reopened for negotiations under this Section.

I.      Employees shall be eligible for Military Leave as provided by Title 38, U. S. Code and the Personnel Rules, Sections 8.71, 8.72 and 8.131-8.138 as set forth in Addendum B.

J.      A statewide safety committee comprised of three (3) employee representatives and three (3) representatives of the Employer shall be established to meet at the request of the Union, for the purpose of discussing issues affecting the safety of employees.

K.      A statewide committee comprised of one representative each from the Office of Administration, the Liquor Control Board and the Union shall be established to discuss pay problems or employees' pay checks.  This committee will meet at the request of either the Liquor Control Board or the Union.

L.      Policies concerning tobacco use at the work site, including prohibitions against tobacco use, may be established by the Commonwealth after meet and discuss with the Union. The Commonwealth shall ensure that tobacco use policies are applied uniformly to all employees at the work site.


ARTICLE 24
UNION STEWARDS, ENFORCEMENT OF
STANDARDS AND UNION STORE EMBLEM

A.      The Union will use its best efforts to secure as stewards a high caliber of employee. The Union will furnish the Employer a complete list of stewards, and will notify the Employer of any changes.

B.      Union stewards will have superseniority for purposes of furlough, transfer, and vacation selection under this Agreement.  The steward will not be transferred without agreement of the local union.

C.      The Union, through advice, instruction and example will attempt to maintain the highest standard of work.

D.      The Union will furnish to the Employer at least one official Union emblem for each of the Employer's stores and/or sub-warehouses to be displayed in the customer area or in a predominant place in the warehouse.  Such emblem shall remain the property of and shall be surrendered to the Union on demand.

E.      Each member of the Union covered under this Agreement shall be entitled to wear prominently upon his person an official Union button designating his affiliation with his union.  The button shall not be detrimental to the labor management relationship nor of a political or controversial nature.

F.      The stewards and/or other individuals covered hereby shall not be presumed to be agents of the Union for the purpose of calling strikes or slowdowns.

G.      The term "Steward" and advantages derived thereof shall apply to Field Stewards, Shop Stewards and Executive Board members of each participating local Union covered under this Collective Bargaining Agreement up to a statewide maximum of 75 people.

H.      The Employer shall not discriminate against a Steward or any other member because of his or her Union membership.


## ARTICLE 25
## STRIKES AND LOCKOUTS

A.      During the term of this Agreement, the grievance and arbitration procedures of this Agreement shall be the means of resolving any dispute or claim raised by an employee or the Union over the application or administration of this Agreement; and administrative and judicial remedies shall be the means of resolving any other dispute or claim raised by an employee or the Union. Accordingly, there shall not be any strike, slowdown, suspension of work, limitation on or curtailment of production; and there shall be no lockout of employees over a labor dispute with the Union.

B.      Both the Employer and the Union recognize the serious detriment to operations and employment which would result from a violation of the no-strike provisions of this Agreement, and accordingly, there shall be cooperation between the parties to end any such activity and then to determine the cause of it.


## ARTICLE 26
## MISCELLANEOUS PROVISIONS

A.      In the event that any provisions of this Agreement are found to be inconsistent with existing statutes or ordinances, the provisions of such statutes or ordinances shall prevail, and if any provision herein shall be found to be invalid and unenforceable by a court or other authority having jurisdiction, then such provision shall be considered void, but all other valid provisions shall remain in full force and effect.

B.      The Commonwealth and the Union acknowledge that this Agreement represents the results of collective negotiations between said parties conducted under and in accordance with the provisions of the Public Employe Relations Act and constitutes the entire Agreement between the parties for the duration of the life of said Agreement.

C.      In the event that any provision of this Agreement requires legislative action to become effective, including but not limited to the amendment of existing statutes, the adoption of new legislation, or the granting of appropriations, it shall become effective only if such legislative action is taken.  The parties, however, mutually agree to make recommendations to the Legislature which may be necessary to give force and effect to the provisions of this Agreement.

D.      A statewide joint committee will meet during the term of this Agreement to discuss expansion of child care facilities.

ARTICLE 27
STORE CLOSING

A.       The Employer shall give the Union twenty (20) working days' notice in advance in writing in the event it intends to close permanently or dispose of any store, except for the permanent closing of a store that is to be replaced by a new store or the permanent closing of a store due to fire or natural disaster.

The parties agree to meet after the notice has been given to discuss the effect of the store closing on employees.

B.      This Agreement shall be binding upon the parties hereto and the heirs, executors, administrators, successors and assigns of each.

C.      This Agreement shall be binding upon any person, firm or corporation, whether it is a successor to the Employer or not, and whether or not it conducts its business under the same name or a different name (whether through purchase of assets or stock, or otherwise) if it is operating essentially or substantially the same business or a part or subdivision thereof, directly or indirectly, in whole or in part, using the same or similar premises and/or working force.

D.      It is understood and agreed that the Commonwealth shall, in the event of the disposition of all or part of the State Store operations as defined in any fashion in this clause, advise prospective buyers that this contract is binding in its entirety upon them for the duration of its term.

ARTICLE 28
EQUAL EMPLOYMENT OPPORTUNITY

If any provision of this Agreement is in conflict with Federal Executive Orders 11246 and 11375, as amended, and the Civil Rights Act of 1964, and all laws and rules relating to the Commonwealth's Equal Employment Opportunity program, the provisions of such orders, laws and rules shall prevail.

55

ARTICLE 29
STORE SECURITY

A.    The Employer agrees to provide such security (including the employment of armed guards) as may be necessary to minimize the exposure of employees to bodily harm in stores where armed robbery and violence are presently or in the future become a continuing problem.  The provisions of this Article shall be implemented as soon as practicable.  It is understood that disputes under this Section shall go directly to final binding arbitration.

B.    In stores where security concerns are present, the Employer may choose not to schedule employees for a meal period as provided in Article 12.  Where this option is exercised, it will apply to all employees in the store.

ARTICLE 30
PRESERVATION OF BARGAINING UNIT WORK

A.    Managerial and supervisory employees will not be assigned to perform bargaining unit work so as to cause the layoff, downgrading, or prevention of the return to work of an available competent employee.  This Article will not be construed to prevent managerial and supervisory employees from performing bargaining unit work for the purpose of assisting in emergency situations or lending an occasional hand.  This Article shall not apply to any store or situation where operational requirements demand that there be a co-mingling of Liquor Store Assistant Manager and Liquor Store Clerk duties in order to operate and provide adequate services to the public.

B.    Definition of Bargaining Unit Work:  The following definition specifically excludes all matters set forth in the "Management Rights Article" of this Agreement.

All work and services connected with or incidental to the handling or selling of merchandise offered for sale to the public in the Employer's retail or wholesale establishments covered by this Agreement.

The parties agree in concept that vendors should not perform bargaining unit work.

ARTICLE 31
POLITICAL ACTION COMMITTEE DEDUCTIONS

A.    The Employer agrees to deduct from the paycheck of employees covered by this Agreement voluntary contributions to the Union's Political Action Committee.  The Employer shall make such deductions only in accordance with the written authorization of respective employees which shall specify the amount and frequency of the deductions.

56

B.      The Employer shall transmit the monies deducted in accordance with this Article to the Union's Political Action Committee in accordance with the procedures agreed to by the Employer and the Union.

C.      The Union shall reimburse the Employer for the Employer's actual cost for the expenses incurred in administering this Article.

D.      The Union shall indemnify and hold the Commonwealth harmless against any and all claims, suits, orders, or judgments brought or issued against the Employer as a result of the action taken or not taken by the Employer under the provisions of this Article.


## ARTICLE 32
## FAMILY CARE LEAVE/FAMILY AND MEDICAL LEAVE ACT (FMLA) LEAVE

A.      After completing one year of service, permanent full-time and regular part-time employees shall be granted, upon written request, up to six months of family care leave without pay with benefits, on a rolling twelve month year basis, for the purpose of attending to the medical needs of a spouse, domestic partner, parent, son or daughter or other person qualifying as a dependent who has a serious health condition, as defined by the Family and Medical Leave Act., provided they have at least 1250 hours of actual work time (900 hours for part time employees) within the twelve months preceding the commencement of the leave. Leave under this Section shall be approved on an intermittent or reduced-time basis during the first twelve weeks of absence per rolling twelve month year.  After twelve weeks of absence, whether taken intermittently, on a reduced-time basis, or continuously, subsequent leaves in the rolling twelve month year shall not be approved for periods less than two consecutive weeks. For eligible permanent part time employees, both the six month and 12 week entitlements provided by this Subsection will be pro-rated based on the employee's percentage of full-time regular hours worked.

The request, which shall be submitted at least two weeks in advance if circumstances permit, must include documentation supporting the need for family care leave.

One aggregate six month entitlement of leave without pay with benefits will be provided for family care leave without pay used under this Section, sick leave without pay used under Article 13, Section D.1., and parental leave without pay used under Article 34, Section A.1. Leave used under these Articles as well as military exigency leave used under Article 13, Section H, will be deducted from the six month entitlement and run concurrently.

After the employee has used an aggregate of six months of leave without pay with benefits under this Section, Article 13, Section D.1., military exigency leave used under Article 13, Section I, and/or Article 34, Section A.1., the Employer is not required to grant subsequent leave without pay with benefits until such time that the employee again becomes eligible for some portion of the six month entitlement under the rolling twelve month year, provided that the employee has at least 1250 hours of actual work time within the twelve month period preceding commencement of the leave (900 hours for part-time employees).

57

The continuation of benefits under this Section is subject to the employee's payment of any required employee contribution under Article 20, Section C.

B.      State-paid coverage for life insurance and state payments toward coverage for health benefits as provided in Articles 20 and 21 and contributions to the Health and Welfare Fund in accordance with Article 19 will continue for the period of time the employee is on family care leave without pay with benefits under Section A of this Article.

C.      Upon request of the employee, an extension of up to an additional six months of leave without pay shall be granted provided the employee provides proof of the family member's continuing illness or disability.  The extension shall be without benefits and shall be contiguous to the termination of the initial six months of leave without pay with benefits.  It shall not be used on an intermittent or reduced-time basis.

D.      1.      If eligible for paid sick leave, an employee shall be required to use all applicable paid sick family and additional sick family leave upon commencement of family care leave without pay.   Such sick leave used will run concurrently with and reduce the six month entitlement to leave without pay with benefits.  Employees shall not be required to use annual, personal, compensatory or holiday leave upon commencement of leave without pay; however, if annual, personal, compensatory or holiday leave is used, it also will run concurrently with and reduce such entitlement.

2.      It is understood by the parties that Subsection D. 1. applies except that employees may choose to retain up to ten days of accrued sick leave to be used as sick family and/or additional sick family, in accordance with Article 18 Sections D and E.  The choice to retain or not retain sick leave cannot be made retroactively, and saved days will be measured based on accrued sick leave available at the commencement of the absence. Saved days may be used by employees for absences appropriate for the use of such leave at any time during the first 12 weeks of the six month entitlement to leave without pay with benefits; such sick leave used will run concurrently with and reduce the six month entitlement to leave without pay with benefits.  Days saved and requested for intermittent or reduced-time absences for periods less than two consecutive weeks after the first 12 weeks of the six month entitlement to leave without pay with benefits will be reviewed for approval under the provisions of Article 18; such use will not be counted against the six month entitlement to leave without pay with benefits.

E.      An employee shall have the right to return to the same position in the same classification held before going on family care leave, or to an equivalent position with regard to pay and skill for absences under Section A of this Article.  After commencing the extension period under Section C of this Article and upon receipt of a written request to return to work, the employee shall have a right to return to a vacant position, which the Employer intends to fill, in the same or equivalent classification, subject to the furlough and recall provisions of Article 9.

F.      For the purpose of this Article, parent shall be defined as the biological, adoptive, step or foster parent of the employee or an individual who stood in loco parentis to an employee when the employee was a son or daughter.

For the purpose of this Article, son or daughter shall be defined as a biological, adopted, or foster child, a step-child, a legal ward, ~~or~~ a child of a person standing in loco parentis, or a biological or adopted child of the employee's domestic partner who is

      1.    under 18 years of age; or

      2.    18 years of age or older and incapable of self-care because of a mental or physical disability.

For the purpose of this Article, domestic partner shall be defined as a same sex domestic partner who meets the eligibility criteria established by the Commonwealth.

    G.    It is understood by both parties that the provisions of this Article are consistent with the Family and Medical Leave Act of 1993, 29 USC Sections 2601 et seq.

    H.    Effective with the beginning of the 2017 leave calendar year, Sections A through G of this Article shall expire and be replaced by the provisions of Sections I through P of this Article.

    I.    General

      1.    After completing one year of service, permanent full-time and regular part-time employees shall be granted up to 12 weeks of FMLA leave with benefits, on a rolling twelve month year basis, provided the employee has at least 1250 hours of actual work time within the twelve months preceding the commencement of the leave. Leave under this Section may be approved on an intermittent, reduced-time, or full-time basis. Eligible permanent part-time employees shall be granted the 12 week entitlement provided by this Subsection if the employee has at least 900 hours of actual work time within the twelve months preceding the commencement of the leave; the entitlement will be pro-rated based on the employee's percentage of full-time regular hours worked.

      2.    FMLA leave shall be granted for the following reasons:

    (a)    when the illness or disability is due to an employee's serious health condition;

    (b)    when attending to the medical needs of a spouse, domestic partner, parent, son or daughter or other person qualifying as a dependent who has a serious health condition;

    (c)    when becoming parents through childbirth or formal adoption or placement of a child with an employee for foster care;

    (d)    when a qualifying exigency event related to a family member who is a military service member occurs; or,

59

(e)     when an employee attends to the serious injury or illness of a covered service member or veteran who is a family member.

If the leave is for a military caregiver under (e) above, 26 weeks of leave within a single 12 month period is provided and other FMLA leave used does not reduce this entitlement. For FMLA leave due to reasons (a), (b), (c), or (d) above, one aggregate 12 week entitlement is provided.

3.    Upon request of a permanent employee, an extension of up to an additional nine months of leave without pay shall be granted for the following reasons:

(a)     employee sickness upon receipt of proof of continuing illness or disability;

(b)     family care reasons upon receipt of proof of continuing illness or disability of the family member and need to care for the family member;

(c)     parental reasons.

The extension shall be with benefits for the first 13 weeks (91 calendar days) and shall be without benefits for the remainder of the extension. Such extensions shall be contiguous to the termination of the 12 week entitlement. It shall not be used on an intermittent or reduced-time basis, except as provided under Section I.6.

4.    Upon request, up to 13 weeks (91 calendar days) of leave without pay with benefits may be granted to a permanent employee with less than one year of employment, provided the absence is at least two consecutive weeks in duration; however, only one occasion within a twelve month rolling year may be approved.

5.    This Article shall not apply to a compensable work-related injury. For non-compensable workers' compensation claims, Subsection I.1. of this Article applies. When the employee does not meet eligibility requirements for leave under Subsection I.1. of this Article, up to 13 weeks (91 calendar days) of leave without pay with benefits may be granted.

6.    Intermittent or reduced-time FMLA leave may be approved for absences after the 12 week entitlement when due to a catastrophic illness or injury of a permanent employee that poses a direct threat to life or to the vital function of major bodily systems or organs, and would cause the employee to take leave without pay or terminate employment. All accrued and anticipated leave must be used before granting leave without pay under this Subsection. Such leave without pay used will run concurrently with and reduce the entitlement.

J.    Granting Leave

1.    An employee shall submit written notification to their immediate supervisor stating the anticipated duration of the leave at least two weeks in advance if circumstances permit, in accordance with the following:

(a)     For an employee with a serious health condition, proof of illness or disability in the form of a doctor's certificate which shall state a prognosis and expected date of return is required.

(b)     For an employee caring for family members, documentation supporting the need for care is required.

(c)     For an employee who becomes a parent, documentation is required and FMLA leave shall begin whenever the employee requests on or after the birth, adoption or foster care placement; however, it may be used prior to the date of custody or placement when required for adoption or placement to proceed, and no FMLA leave shall be granted beyond one year from the date of birth, of assuming custody of an adopted child or of placement of a foster child.

2.     In no case shall an employee be required to commence FMLA leave sooner than he/she requests, unless the employee can no longer satisfactorily perform the duties of their position.

K.     Re-employment

1.     A permanent full-time or regular part-time employee shall have the right to return to the same position in the same classification, or to an equivalent position with regard to pay and skill, as the position he/she held before going on leave as described in Section I.1. and the first 14 weeks of leave as described under Section I.3.

2.     Upon the expiration of the re-employment rights under Subsection 1 or Subsection 3, and upon written request to return to work, a permanent employee shall be offered a position, which the Employer intends to fill, in the same or equivalent classification, and to which there are no seniority claims.  If such a position is not available, the employee shall be offered, during the remainder of the extension period, any position in the same classification, in a lower classification in the same classification series, or a position previously held, to which there are no seniority claims and which the agency intends to fill.  If the employee refuses an offer of a position in the same classification, the employee's rights under this Section shall terminate.  If the employee accepts a position in a lower classification or a position previously held, the employee will be offered a position in the same classification if there is a vacancy in that classification during the remainder of the entitlement in the seniority unit, provided there are no seniority claims to the position, and the agency intends to fill the position.

In those instances in which a seniority unit includes several work sites, it is understood that an employee's right to reemployment as set forth in this section will be to a position at the work site in which the employee was assigned to work prior to the FMLA leave for absences under Section I.1., providing that a position in the employee's classification continues to exist at the work site and further provided that the employee is not subject to a transfer or furlough as provided for in Article 9.

61

3.      Employees who use 26 weeks or more of paid leave (12 weeks of leave under Section I.1. and the first 14 weeks of leave under Section I.3.) and who return to work before or upon the exhaustion of the paid leave will have the same return rights as described in Subsection I.1.  Return rights after paid leave is exhausted, if the absence is more than 26 weeks (12 weeks of leave under Section I.1. and the first 14 weeks of leave under Section I.3.) are in accordance with Subsection 2.

L.      Seniority Rights

Upon return from FMLA leave, a permanent employee shall retain all seniority and pension rights that had accrued up to the time of leave.  Seniority shall continue to accrue during FMLA leave under Section I.1., and during the extension period under Section I.3.

M.      Annual, Sick, Compensatory and Holiday Leave

1.      An employee using FMLA leave for military exigencies or military caregiving, must use all applicable, accrued paid leave types upon commencement of FMLA leave.  For all other FMLA leave, an employee shall be required to use all applicable accrued paid sick leave (sick family or additional sick family for family care reasons) as certified by a health care provider upon commencement of FMLA leave, except as provided in Subsection 2 below.  An employee shall not be required to use annual, compensatory or holiday leave upon the commencement of FMLA leave, except as provided in Subsection 2 below. If any paid leave is used, it will run concurrently with and reduce the entitlements under Sections I.1. and I.3. of this Article.  Unused leave shall be carried over until return.  An employee shall not earn annual, and sick leave while on leave without pay.  Holidays will be earned based on Article 15, Holidays.

2.      An employee may choose to retain up to ten days of accrued sick leave. The choice to retain or not retain sick leave cannot be made retroactively, and saved days will be measured based on accrued sick leave available at the commencement of the absence.  Saved days may be used during the 12 week entitlement as certified by a physician; such sick leave used will run concurrently with and reduce the entitlement. Days saved and requested for intermittent or reduced-time absences for periods less than two consecutive weeks after the first 12 week entitlement will be reviewed for approval under the provisions of Article 18; such use will not be counted against the FMLA entitlement.

3.      An employee who has accrued more than 12 weeks of paid leave is not limited to 12 weeks of FMLA leave.  Leave in excess of 12 weeks will run concurrently with and reduce the entitlement under Section I.3. of this Article.

N.      Benefits

1.      State-paid coverage for life insurance and state payments toward coverage for health benefits as provided in Articles 20 and 21 and, as applicable, Health and Welfare Fund payments as provided in Article 19, will continue during FMLA leave under Section I.1. and for the benefit-eligible period of leave under Section I.3. of this Article.

2.    The continuation of benefits under this Article is subject to the employee's payment of any required employee contribution under Article 20, Section C.

O.    Definitions

1.    For the purpose of this Article, parent shall be defined as the biological, adoptive, step or foster parent of the employee or an individual who stood in loco parentis to an employee when the employee was a son or daughter.

2.    For the purpose of this Article, son or daughter shall be defined as a biological, adopted, or foster child, a step-child, a legal ward, a child of a person standing in loco parentis, or a biological or adopted child of the employee's domestic partner who is:

(a)    under 18 years of age; or
(b)    18 years of age or older and incapable of self-care because of a mental or physical disability.

3.    For the purpose of this Article, domestic partner shall be defined as a same sex domestic partner who meets the eligibility criteria established by the Commonwealth.

P.    Guidelines

1.    Guidelines established by the Secretary of Administration regarding FMLA leave are published through the Directives Management System (Reference Management Directive 530.30).

2.    It is understood by both parties that the provisions of this Article are consistent with the Pennsylvania Human Relations Act, 43 P.S. Sections 951, et seq., and the Family and Medical Leave Act of 1993, 29 U.S.C. Sections 2601, et seq.

3.    Should the Patient Protection and Affordable Care Act of 2010, 42 USC § 18001 *et seq.*, or its regulations be modified or interpreted to not provide an additional 91 calendar days of benefits as described in Section I of this Article, it is agreed that the health and life insurance entitlements outlined in this Article will not be diminished.

ARTICLE 33
LEAVE DONATION PROGRAM

A.    Permanent employees may donate annual and personal leave to a designated permanent employee in the employee's agency who has used all accrued and anticipated paid leave for the current leave calendar year.    The leave is to be used for the recipient's own catastrophic or severe injury or illness or for the catastrophic injury or severe injury or illness of a family member.    The leave also may be used as bereavement leave if the employee's family member dies and the employee has no accrued or anticipated sick leave available, subject to the limitations of Article 18, Section F.

63

B.    Recipients

1.    Recipients must be permanent employees in bargaining units that have agreed to participate in this program.

2.    Family member is defined as a husband, wife, domestic partner, child, step-child, foster child, child of a domestic partner, parent of the employee or any other person qualifying as a dependent under IRS eligibility criteria or the child of the employee's domestic partner.

3.    A catastrophic illness or injury that poses a direct threat to life or to the vital function of major bodily systems or organs, and would cause the employee to take leave without pay or terminate employment, must be documented on a Family and Medical Leave Act Serious Health Condition Certification form.  Donated leave may not be used for work-related injuries or illnesses, minor illnesses, injuries, or impairments, sporadic, short-term recurrences of chronic, non-life threatening conditions, short-term absences due to contagious diseases, or short-term recurring medical or therapeutic treatments, except for conditions such as those listed above.

4.    A severe illness or injury must also be documented on a Medical Condition Certification to Receive Leave Donations Form.

5.    The absence due to the catastrophic or severe illness or injury of the employee or catastrophic illness or injury of a family member must be for more than 20 workdays in the current leave calendar year.  The 20-workday absence may be accumulated on an intermittent basis if properly documented as related to the same catastrophic or severe illness or injury.  Annual, personal, sick (for employee's own serious health condition), sick family (for the serious health condition of a family member), holiday, compensatory, or unpaid leave may be used during the accumulation period.  A separate accumulation period must be met for each catastrophic or severe illness or injury and for each leave calendar year in which donated leave is used.  Donated leave may not be applied to the required 20-workday accumulation period.

6.    All accrued leave must be used as follows before any donation may be received:

a.    For an employee's own catastrophic or severe injury or illness, all accrued annual, sick, personal, holiday, and compensatory leave and all anticipated annual and sick leave for the current leave calendar year must be used.

b.    For the catastrophic or severe injury or illness of a family member, all accrued annual, personal, holiday, and compensatory leave and all anticipated annual leave for the current leave calendar year must be used.  All five days of sick family leave and any additional sick family leave for which the employee is eligible must be used.

64

7.      Up to 12 weeks of donated leave per leave calendar year may be received for all conditions of the employee and family members cumulatively, but donations may not be received in more than two consecutive leave calendar years. Donated leave is added to the recipient's sick leave balance on a biweekly basis. Recipients do not repay the donor for donated leave. Leave usage is monitored closely to ensure that donated leave is used only for absences related to the catastrophic or severe illness or injury.

8.      The recipient's entitlement to leave under the Family and Medical Leave Act will be reduced by donated leave that is used. Entitlements to sick leave without pay (for an employee's own illness) or family care leave without pay (for a family member's illness) will also be reduced.

9.      Donated leave may be used on an intermittent basis. However, each absence may be required to be medically documented as due to the same catastrophic or severe illness or injury.

10.     An employee is not eligible to receive donations of leave if, during the previous six months, the employee has been placed on a written leave restriction, or has received a written reprimand or suspension related to attendance.

11.     Donated leave that remains unused once the employee is released by the physician for full-time work, when the family member's condition no longer requires the employee's absence, or at the end of the leave calendar year, must be returned to the donors in inverse order of donation. However, if at the end of the year, the absence is expected to continue beyond the greater of 20 workdays or the amount of annual and sick leave that could be earned and used in the following leave calendar year, donated leave may be carried into the next year.

C.     Donors

1.      A donor may voluntarily donate annual and personal leave to an employee within the donor's agency who meets the requirements of the Leave Donation Program. Donations may be made to multiple employees, as long as the minimum donation is made to each employee.

2.      Donations must be made in increments of one day (7.5 hours), but not more than five days can be donated to any one employee in the same leave calendar year. The donor's annual leave balance after donation cannot be less than the equivalent of five workdays of leave (37 ½ hours). Anticipated personal leave may not be donated.

3.      The donation is effected by the completion and submission of a Request to Donate Leave to the agency Human Resource Office. Leave is deducted from the donor's annual and/or personal leave balance at the time of donation and transferred to the recipient in order by the date and time the Request to Donate Leave form is received.

4.      Unused donations are returned to the donor if: the recipient or family member recovers, dies, or separates before the donor's leave is used; or if the recipient does not use the leave by the end of the leave calendar year, and is expected to either return to work within 20

65

workdays or to have sufficient anticipated leave available in the new year to cover the absence. In accordance with Section 1 above, an employee whose family member dies and who does not have accrued or anticipated sick leave available, may use donated leave as bereavement leave, subject to the limitations in Article 18, Section F.

D.    The provisions of this Article are not grievable under Article 7 of this Agreement.

E.    Notwithstanding the requirement in Sections A and C of this Article that annual and personal leave donations be from a permanent employee in the employee's agency, in the event that an employee does not receive sufficient donations from employees within the employee's own agency, the employee needing the donations will be permitted to seek donations from permanent employees in other agencies under the Governor's jurisdiction within a reasonable geographic distance through the requesting employee's designated local Human Resource contact. An exception to the reasonable geographic distance limitation will be allowed for relatives of the employee who wish to make donations.

F.    For the purpose of this Article, domestic partner shall be defined as a same sex domestic partner who meets the eligibility criteria established by the Commonwealth.

## ARTICLE 34
## PARENTAL LEAVE

A.    General

1.    After completing one year of service, all permanent full-time and regular part-time employees who become parents through childbirth or formal adoption or placement of a child with an employee for foster care shall be granted up to six months of parental leave without pay with benefits upon request, on a rolling twelve month year basis, provided the employee has at least 1250 hours of actual work time (900 hours for part-time employees) within the twelve months preceding the commencement of the leave. Leave under this Section may be approved on an intermittent or reduced-time basis during the first twelve weeks of absence. After twelve weeks of absence, whether taken intermittently, on a reduced-time basis, or continuously, subsequent leaves may be approved on a reduced-time basis; subsequent leaves taken intermittently or continuously in the rolling twelve month year shall not be approved for periods less than two consecutive weeks. For eligible permanent part time employees, both the six month and 12 week entitlements provided by this Subsection will be pro-rated based on the employee's percentage of full-time regular hours worked.

2.    One aggregate six month entitlement of leave without pay with benefits will be provided for parental leave without pay used under Section A.1, sick leave without pay used under Article 13, Section D.1., and family care leave without pay used under Article 32, Section A. Leave used under these Articles, as well as military exigency leave used under Article 13 Section I, will be deducted from the six month entitlement and run concurrently.

66

3.    After the employee has used an aggregate of six months of leave without pay with benefits under this Section, Article 13, Section D.1., and/or Article 32, Section A, and/or military exigency leave used under Article 13 Section I, the Employer is not required to grant subsequent leave without pay with benefits until such time that the employee again becomes eligible for some portion of the six month entitlement under the rolling twelve month year, provided that the employee has at least 1250 hours of actual work time within the twelve month period preceding commencement of the leave (900 hours for part-time employees).

4.    Upon request of the employee, an extension of up to an additional six months of leave without pay shall be granted.  The extension shall be without benefits and shall be contiguous to the termination of the initial six months of leave without pay with benefits.  It, shall not be used on an intermittent or reduced-time basis.

5.    The continuation of benefits under this Section is subject to the employee's payment of any required employee contribution under Article 20, Section C.

B.    Granting Leave

1.    An employee shall submit written notification to the immediate supervisor stating the anticipated duration of the leave at least two weeks in advance if circumstances permit. Parental leave shall begin whenever employees request on or after the birth, adoption or foster care placement.  However, it may be used prior to the date of custody or placement when required for adoption or placement to proceed.  No parental leave shall be granted beyond one year from the date of birth, of assuming custody of an adopted child or of placement of a foster child.

2.    In no case shall an employee be required to leave prior to parental leave unless she can no longer satisfactorily perform the duties of her position.

C.    Re-employment

During the first six months of absence under Section A..1 of this Article, an employee shall have the right to return to the same position in the same classification held before going on parental leave, or to an equivalent position with regard to pay and skill.

During any extension period, under Section A.4. of this Article, the employee, upon written request to return to work, shall have a right to return to a vacant position, which the Employer intends to fill, in the same or equivalent classification, subject to the furlough and recall provisions of Article 9.

D.    Seniority Rights

1.    Upon return from parental leave, an employee shall retain all seniority and pension rights that had accrued up to the time of leave.  Seniority shall continue to accrue during parental leave in accordance with Article 8, Section B.

67

2.    Employees who utilized unpaid parental/childbirth leave prior to July 1, 1993 may apply to have seniority credit reinstated for the unpaid parental/childbirth leave utilized. Upon notification by the Employer, employees shall have sixty (60) days to apply for seniority credit for their use of unpaid parental/childbirth leave prior to July 1, 1993. Upon verification by the Employer, seniority credit for unpaid parental leave utilized prior to July 1, 1993 shall be reinstated. The reinstatement shall occur by June 30, 2012, and shall be applied on a prospective basis.

E.    Annual, Personal, Sick, Compensatory and Holiday Leave

1.    An employee shall be required to use all accrued paid sick leave for the period that she is unable to work as certified by a physician upon commencement of parental leave without pay. Such sick leave used will run concurrently with and reduce the six month entitlement to leave without pay with benefits and shall be used in accordance with Article 13, Section D. Employees shall not be required to use annual, personal, compensatory or holiday leave upon the commencement of leave without pay; however, if annual, personal, compensatory or holiday leave is used, it also will run concurrently with and reduce such entitlement. Unused leave shall be carried over until return. An employee shall not earn annual, personal, and sick leave while on parental leave without pay.

2.    It is understood by the parties that Subsection E.1. applies except that employees may choose to retain up to ten days of accrued sick leave. The choice to retain or not retain sick leave cannot be made retroactively, and saved days will be measured based on accrued sick leave available at the commencement of the absence. Saved days may be used by employees at any time during the first 12 weeks of the six month entitlement to leave without pay with benefits as certified by a physician for the period that she is unable to work; such sick leave used will run concurrently with and reduce the six month entitlement to leave without pay with benefits. Days saved and requested for intermittent or reduced-time absences for periods less than two consecutive weeks after the first 12 weeks of the six month entitlement to leave without pay with benefits will be reviewed for approval under the provisions of Article 18; such use will not be counted against the six month entitlement to leave without pay with benefits.

F.    Benefits

State-paid coverage for life insurance and state payments toward coverage for health benefits as provided in Articles 20 and 21 and contributions to the Health and Welfare Fund in accordance with Article 19 will continue for the period of time the employee is on parental leave without pay with benefits under Section A.1. of this Article.

G.    Guidelines

Guidelines established by the Secretary of Administration regarding parental leave and benefits while on parental leave are published through the Directives Management System (Reference Management Directive 530.30).

H.      It is understood by both parties that the provisions of this Article are consistent with the Pennsylvania Human Relations Act, 43 P.S. Sections 951, et seq., and the Family and Medical Leave Act of 1993, 29 U.S.C. Sections 2601, et seq.

I.      Effective with the beginning of the 2017 leave calendar year, Sections A through I of this Article shall expire and be replaced by the provisions of Article 32, Sections I through P.

## ARTICLE 35
## TERM OF AGREEMENT

This Agreement shall be effective July 1, 2016, except as otherwise specified and shall continue in full force and effect up to and including June 30, 2019. Either party may terminate the Agreement at its expiration date or thereafter by a letter dispatched in such a manner as to permit the parties to comply with the collective bargaining schedule established under the Public Employe Relations Act.

COMMONWEALTH OF PENNSYLVANIA

UNITED FOOD AND COMMERCIAL
WORKERS UNION

_____
Sharon P. Minnich
Secretary of Administration

_____
Wendell W. Young, IV
President, UFCW 1776
Chairman, PA State Store Organizing
Committee

_____
Tim Holden, Chairman
PA Liquor Control Board

_____
Anthony M. Helfer, President
UFCW Local 23

_____
Michael Negra, Board Member
PA Liquor Control Board

_____
Michael Newsome, Board Member
PA Liquor Control Board

# ADDENDUM A
## LOCAL UNION COUNTY JURISDICTION

### LOCAL 1776

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | ADAMS | 16. | DELAWARE | 31. | MONTOUR |
| 2. | BEDFORD | 17. | FRANKLIN | 32. | NORTHAMPTON |
| 3. | BERKS | 18. | FULTON | 33. | NORTHUMBERLAND |
| 4. | BLAIR | 19. | HUNTINGDON | 34. | PERRY |
| 5. | BRADFORD | 20. | JEFFERSON | 35. | PHILADELPHIA |
| 6. | BUCKS | 21. | JUNIATA | 36. | PIKE |
| 7. | CAMBRIA | 22. | LACKAWANNA | 37. | SCHUYLKILL |
| 8. | CARBON | 23. | LANCASTER | 38. | SNYDER |
| 9. | CHESTER | 24. | LEBANON | 39. | SULLIVAN |
| 10. | CENTRE | 25. | LEHIGH | 40. | SUSQUEHANNA |
| 11. | CLEARFIELD | 26. | LUZERNE | 41. | TIOGA |
| 12. | CLINTON | 27. | LYCOMING | 42. | UNION |
| 13. | COLUMBIA | 28. | MIFFLIN | 43. | WAYNE |
| 14. | CUMBERLAND | 29. | MONROE | 44. | WYOMING |
| 15. | DAUPHIN | 30. | MONTGOMERY | 45. | YORK |

### LOCAL 23

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | ALLEGHENY | 9. | ERIE | 17. | POTTER |
| 2. | ARMSTRONG | 10. | FAYETTE | 18. | SOMERSET |
| 3. | BEAVER | 11. | FORREST | 19. | VENANGO |
| 4. | BUTLER | 12. | GREEN | 20. | WARREN |
| 5. | CAMERON | 13. | INDIANA | 21. | WASHINGTON |
| 6. | CLARION | 14. | LAWRENCE | 22. | WESTMORELAND |
| 7. | CRAWFORD | 15. | MCKEAN | | |
| 8. | ELK | 16. | MERCER | | |

**ADDENDUM B**
PERSONNEL RULES, CHAPTER 8
MILITARY LEAVE

**MILITARY LEAVE WITH PAY**

**8.71.  Military Reserve.**

(a)    Under Section 1 of the act of July 12, 1935 (P.L. 677, No. 255) (65 P.S. 114), a permanent employee of the Commonwealth who is a member of Reserve Components of the Armed Forces of the United States is entitled to military leave with compensation for all types of training duty ordered or authorized by the Armed Forces of the United States.  Such training duty may either be active or inactive duty training and shall include but is not limited to the following:

(1)    Annual active duty for training.

(2)    Attendance at service schools.

(3)    Basic training.

(4)    Short tours of active duty for special projects.

(5)    Attendance at military conferences and participation in ~~any~~ command post exercise or maneuver which is separate from annual active duty for training or inactive duty training.

(b)    For military training duty as provided under Subsection (a), the maximum military leave with compensation shall be 15 working days per calendar year.

(c)    The rate of compensation for a military leave day is the employee's regular compensation for the employee's regular classification, subject to conditions established by the Secretary of Administration through the Directives Management System relating to temporary assignments in higher classifications.

(d)    For purposes of entitlement and use of military leave, the calendar year shall begin with the first full pay period in January and continue through the end of the pay period in which December 31 falls.

**8.72.  Pennsylvania National Guard.**

(a)    Under 51 Pa. C.S. 4102 (relating to leaves of absence for certain government employees) a permanent employee of the Commonwealth who is a member of the Pennsylvania National Guard is entitled to military leave with compensation for all types of training duty (active and inactive) or other military duty ordered or authorized by the Armed Forces of the United States. Such duty shall include, but is not limited to, the following:

72

(1)    Annual active duty for training

(2)    Attendance at service schools.

(3)    Basic training.

(4)    Short tours of active duty for special projects.

(5)    Attendance at military conferences and participation in a command post exercise or maneuver which is separate from annual active duty for training or inactive duty training.

(6)    Other military duty.

(b)    For military training duty or other military duty as provided in Subsection (a), the maximum military leave with compensation is 15 working days per calendar year.

(c)    Military leave with compensation shall also be granted to a member of the Pennsylvania National Guard on a working day during which, as a member of the Pennsylvania National Guard, the member is engaged in the active service of the Commonwealth as ordered by the Governor.

(d)    The rate of compensation for a military leave day is the employee's regular compensation for the employee's regular classification, subject to conditions established by the Secretary of Administration through the Directives Management System relating to temporary assignment in higher classifications.

(e)    For purposes of entitlement and use of military leave, the calendar year shall begin with the first full pay period in January and continue through the end of the pay period in which December 31 falls.

## MILITARY LEAVE WITHOUT PAY

### 8.131.  General.

(a)    Employees of the Commonwealth who leave their jobs for the performance of duty, voluntarily or involuntarily, in any branch of the Armed Forces of the United States, any of its Reserve components, any of its National Guard components, or the commissioned corps of the Public Health Service for the purpose of training or service must be granted military leave without pay.  The provisions of §§8.131 through 8.137 are consistent with Chapter 43, Part III, of Title 38 United States Code and Military Code, 51 Pa.C.S. §7301 et seq.

(b)    Employees who are on military leave without pay shall have their duties performed either by remaining employees and their positions kept vacant or by temporary substitutes.

**8.132.  Granting, Duration, and Expiration.**

(a)     Military leave without pay must be granted for the following military service:

(1)     For all active duty (including full-time National Guard duty).

(2)     For initial active duty for training.

(3)     For other active or inactive military training duty.  Employees who volunteer for additional duty not required as part of routine training shall provide four weeks' notice if possible to their immediate supervisor prior to the commencement of such duty.

(b)     Military leave without pay is available for five years plus any involuntary service during wartime or national emergency.  The five years is cumulative throughout employment with the Commonwealth.

(c)     Military leave without pay shall expire:

(1)     For periods of more than 180 days, no more than 90 days after the completion of the service.

(2)     For periods of service of more than 30 days but less than 181 days, no more than 14 days after the completion of the service.

(3)     For periods of service that were less than 31 days, the first full regularly scheduled work period following the period of service or up to eight hours after an opportunity to return from the place of service to the employee's home.

(4)     For periods of hospitalization or convalescence from illness or injury incurred during the period of service, up to two years after the period of service or when recovered, whichever occurs sooner.

(5)     For circumstances beyond an employee's control, the above periods may be extended upon demonstration of such circumstance.

**8.133.  Reemployment**.

Employees have the right to return to employment at the time of or prior to the expiration of military leave upon notifying the agency head of the desire and availability to return to Commonwealth service, provided the following are met:

(1)     The employee is capable of performing the essential functions of the position,

      (2)      For temporary employees, the temporary position has not yet expired.

      (3)      For periods of service delineated in §8.132 (c)(1), (2) and (4), written application for reemployment is provided to the agency head.

## 8.134.  Retirement rights.

Employees who are granted military leaves may, under conditions provided in the Military Code (51 P.S. 7306) and Chapter 43, Part III, of Title 38 United States Code, and in accordance with procedures prescribed by the State Employees' Retirement System and the Public School Employees' Retirement System, choose either to continue or discontinue making regular payments into their retirement accounts.

## 8.135.  Loss of benefits.

Employees who are separated from the service by a discharge under other than honorable conditions, bad conduct, or dishonorable discharge shall not be entitled to any of the benefits of Sections 8.131-8.136 of this Chapter (relating to military leaves with pay) except such vested rights as they may have acquired thereto by virtue of payments into retirement accounts.

## 8.136.  Annual, Sick, and Personal Leave.

Employees who are granted military leaves for active duty may be paid for annual and personal leave, or may have annual and personal leave frozen.  Sick leave earned and not used at the time of entry into the Armed Forces will be available to employees upon return to work.  Employees shall not earn annual, sick, or personal leave while on military leave without pay.

## 8.137.  Physical Examination.

Employees shall be granted one day of administrative leave with pay to take any physical examination required in connection with entering the Armed Forces.  An extension of such paid leave, not to exceed two additional days, may be approved by the agency if the employee certifies in writing that more than one day is required to complete the examination.

## 8.138.  Guidelines for Benefits Continuation.

Guidelines established by the Secretary of Administration regarding state-paid benefits while on military leave without pay and continuation of state-provided benefits at employees' expense are published through the Directives Management System. (Reference Management Directive 530.26, Benefit Entitlements for Employees on Military Leave.)

<u>ADDENDUM C</u>

COMMONWEALTH OF PENNSYLVANIA
EXECUTIVE OFFICE
OFFICE OF ADMINISTRATION
(717) 787-9514



BUREAU OF LABOR RELATIONS
404 Finance Building
Harrisburg, Pennsylvania 17120
FAX # 783-0430

November 8, 1993

Wendell Young III, President
United Food and Commercial Workers
3031 Walton Road
Norristown, Pa.  19401

Dear Mr. Young:

The parties agree that the provision contained in Article 11, Salaries and Wages which states, "The Employer will be able to appoint above the minimum rate. Employes who are appointed above the minimum will be frozen at that rate until they have the service required to move to the next step" will be implemented as follows:

The Liquor Control Board will request approval from the Office of Administration to establish an above the minimum hiring rate in a county for a specific period of time not to exceed one year.  If the above minimum rate is approved, the Office of Administration will notify the Union.

The Union may grieve alleged abuse of the Employer's decision to implement an above the minimum rate in a county.

No employe who was hired prior to the establishment of an above the minimum hiring rate will receive a pay increase based upon the implementation of an above the minimum hiring rate.  No grievance may be filed on behalf of any employe over the employe's rate of pay based upon hiring above the ~' ' rate in any county.

Sincerely,

Robert J. Bray, Jr., Esq.
Special Labor Relations Counsel

cc:  Secretary Joseph L. Zazyczny
     Gerald A. LeClaire
     Charles T. Sciotto
     Ron Rowe

ADDENDUM D



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
OFFICE OF ADMINISTRATION
P. O. Box 1323
Harrisburg, Pa. 17120

August 25, 1978

Mr. Wendell W. Young
President
Retail Clerks Union
Local 1357
210 E. Courtland Street
Philadelphia, Pennsylvania    19120

Dear Mr. Young:

This is to advise you of the Commonwealth's position in regard to breaks.

It is recognized that the ability to have a break from continuous counter services may not be uniformly applied in all stores. When this poses a significant problem, it is agreed to jointly investigate and attempt resolution of the problems on a store-by-store basis.

Sincerely,

J. W. McMullen
Bureau of Labor Relations

77



**ADDENDUM E**

COMMONWEALTH OF PENNSYLVANIA
EXECUTIVE OFFICES
HARRISBURG

NANCY DERING MARTIN
DEPUTY SECRETARY FOR
HUMAN RESOURCES AND MANAGEMENT

August 1, 2002

Wendell Young, III
President
United Food and Commercial Workers
3031-A Walton Road, Suite 201
Plymouth Meeting, PA 19462

Dear Mr. Young:

The following represents an agreement between the Liquor Control Board and the United Food and Commercial Workers Union regarding the Board's policy on disciplining probationary employees:

It is agreed that, for the sole purpose of progressive discipline, probationary employees will not be treated under the accelerated discipline policy after they have completed six (6) months of service from their date of hire, unless adjusted for non-compensable time off work.

If you concur with this understanding, please sign the enclosed copy and return it to the Bureau of Labor Relations.

Sincerely,

Nancy Dering Martin
Deputy Secretary for Human Resources and Management

Wendell Young, III                    Date  8/05/02
UFCW

copy:   Secretary Fritz Bittenbender
        Donald O. Adams
        Carol S. Scott
        Sheryl Saxe-Dowling
        Larry Toth
        Robert Koch



COMMONWEALTH OF PENNSYLVANIA
EXECUTIVE OFFICES
HARRISBURG

**ADDENDUM F**

NANCY DERING MARTIN
DEPUTY SECRETARY FOR
HUMAN RESOURCES AND MANAGEMENT

March 24, 2004

Mr. Wendell W. Young, III
President
United Food and Commercial Workers
3031 A Walton Road, Suite 201
Plymouth Meeting, PA  19462

Dear Mr. Young:

If the PLCB experiences retention difficulties during the term of this Agreement, the parties will meet and discuss solutions that will insure the equitable treatment of current employees.

If you are in agreement with the above understanding, please sign below.

Sincerely,

Nancy Dering Martin
Deputy Secretary for Human Resources and Management

Wendell W. Young, III          Date
UFCW

copy:    Secretary Robert Barnett
         Donald O. Adams
         Sheryl Saxo-Dowling
         Robert Molin
         Lori Bornman



COMMONWEALTH OF PENNSYLVANIA
**EXECUTIVE OFFICES**
**HARRISBURG**

**ADDENDUM G**

NANCY DERING MARTIN
DEPUTY SECRETARY FOR
HUMAN RESOURCES AND MANAGEMENT

March 24, 2004

Mr. Wendell W. Young, III
President
United Food and Commercial Workers
3031 A Walton Road, Suite 201
Plymouth Meeting, PA 19462

Dear Mr. Young:

The parties agree that the language in Article 12, Section B. 3. a. and b. and Article 9, Section F, second paragraph, shall not be construed to prevent the assignment of Intermittent Liquor Store Clerks to different stores within the supervisory district or county whichever is smaller for operational reasons, which are not arbitrary or capricious.

If you are in agreement with the above understanding, please sign below.

Sincerely,

Nancy Dering Martin
Deputy Secretary for Human Resources and Management

Wendell W. Young, III          Date
UFCW

copy:  Secretary Robert Barnett
       Donald O. Adams
       Sheryl Saxe-Dowling
       Robert Molin
       Lori Bornman

80

**COMMONWEALTH OF PENNSYLVANIA**
**EXECUTIVE OFFICES**
**HARRISBURG**

**ADDENDUM H**

NANCY DERINO MARTIN
DEPUTY SECRETARY FOR
HUMAN RESOURCES AND MANAGEMENT

March 24, 2004

Mr. Wendell W. Young, III
President
United Food and Commercial Workers
3031 A Walton Road, Suite 201
Plymouth Meeting, PA 19462

Dear Mr. Young:

This letter reflects the agreement between the Commonwealth of Pennsylvania and the UFCW, PA State Store Organizing Committee, AFL-CIO concerning Article 30, Preservation of Bargaining Unit Work. Section B. of the collective bargaining agreement between the parties.

Act 212 allows the Pennsylvania Liquor Control Board (PLCB) to expand the flow of business through its Stores by offering to the public, goods that are accessory to the use of wine. To accomplish this objective the PLCB will likely be required to give some vendors of these goods access to its Stores to do one or more of the following: set up displays; stock and re-stock the displays; "lay in" inventory; place a sample bottle of wine made or distributed by the vendor upon the display of its wine accessories; etc.

Sales of wine accessories would be made by and through PLCB employees. The PLCB will attempt to minimize the in-Store activity of employee representatives or agents of these vendors. This agreement recognizes, however, that some vendors will not permit display of their merchandise unless the display is set up and maintained by vendor employees or agents.

The intent of this agreement is to enhance the viability and competitiveness of State Store operations to the benefit of both Parties and the Public.

In the event legislation is passed to allow the sale of spirits accessories, the parties will meet and discuss the applicability of this letter to the sale of those accessories.

If you are in agreement with the above understanding, please sign below.

Sincerely,

Nancy Deryng Martin
Deputy Secretary for Human Resources and Management

Wendell W. Young III
UFCW

5/17/08
Date

copy:   Secretary Robert Bomar
        Donald G. Adams
        Sheryl Saxe-Dowling
        Robert Molin
        Lori Bornman



COMMONWEALTH OF PENNSYLVANIA
EXECUTIVE OFFICES
HARRISBURG|

**ADDENDUM I**

NANCY DERING MARTIN
DEPUTY SECRETARY FOR
HUMAN RESOURCES AND MANAGEMENT

March 24, 2004

Mr. Wendell W. Young, III
President
United Food and Commercial Workers
3031 A Walton Road, Suite 201
Plymouth Meeting, PA  19462

Dear Mr. Young:|

District Manager secretaries are not to be assigned the work of the UFCW-represented bargaining unit.  UFCW-represented employees are not to be assigned the duties of the District Manager secretaries except for occasional duties such as answering the phone.  The parties recognize that the work of the District Managers secretaries is properly classified, and as such. is not appropriate to the UFCW bargaining unit.

If you are in agreement with the above understanding, please sign below.

Sincerely,

Nancy Dering Martin
Deputy Secretary for Human Resources and Management

Wendell W. Young, III                    Date
UFCW

copy:  Secretary Robert Barnott
       Donald O. Adams
       Sheryl Saxe-Dowling
       Robert Molin
       Lori Bornman

83



COMMONWEALTH OF PENNSYLVANIA
EXECUTIVE OFFICES
HARRISBURG

**ADDENDUM J**

NANCY DERING MARTIN
DEPUTY SECRETARY FOR
HUMAN RESOURCES AND MANAGEMENT

March 24, 2004

Mr. Wendell W. Young, III
President
United Food and Commercial Workers
3031 A Walton Road, Suite 201
Plymouth Meeting, PA  19462

Dear Mr. Young:

It is agreed that full time employees may request vacation on an hourly basis.  Such requests will be approved at the sole discretion of the Employer, subject to management's responsibility to maintain efficient operations

If you are in agreement with the above understanding, please sign below.

Sincerely,

Nancy Dering Martin
Deputy Secretary for Human Resources and Management

Wendell W. Young, III                    Date
UFCW

copy:    Secretary Robert Barnett
         Donald O. Adams
         Sheryl Saxe-Dowling
         Robert Molin
         Lori Boraman

COMMONWEALTH OF PENNSYLVANIA
EFFECTIVE JULY 1, 2016
PAY SCALE TYPE LS

| PAY SCALE GROUP | | PAY SCALE LEVEL A | PAY SCALE LEVEL B | PAY SCALE LEVEL C | PAY SCALE LEVEL D | PAY SCALE LEVEL E | PAY SCALE LEVEL F | PAY SCALE LEVEL G | PAY SCALE LEVEL H | PAY SCALE LEVEL I | PAY SCALE LEVEL J | PAY SCALE LEVEL K | PAY SCALE LEVEL L | PAY SCALE LEVEL M | PAY SCALE LEVEL N | PAY SCALE LEVEL O | PAY SCALE LEVEL P | PAY SCLAE LEVEL Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LS02 Liquor Store Clerk 1 Liquor Stock Clerk Intermittent Liquor Store Clerk | Hourly | 11.80 | 12.07 | 12.60 | 12.88 | 13.38 | 13.68 | 14.50 | 14.83 | 15.63 | 15.98 | 16.44 | 16.81 | 17.31 | 17.70 | 18.24 | 18.65 | 19.87 |
| | Biweekly | 885.00 | 905.25 | 945.00 | 966.00 | 1,003.50 | 1,026.00 | 1,087.50 | 1,112.25 | 1,172.25 | 1,198.50 | 1,233.00 | 1,260.75 | 1,298.25 | 1,327.50 | 1,368.00 | 1,398.75 | 1,490.25 |
| | Annual* | 23,081 | 23,609 | 24,646 | 25,193 | 26,171 | 28,758 | 28,362 | 29,007 | 30,572 | 31,257 | 32,157 | 32,880 | 33,858 | 34,621 | 35,677 | 36,479 | 38,666 |
| LS07 Liquor Store Clerk 2 | Hourly | 13.38 | 13.68 | 14.50 | 14.83 | 15.63 | 15.98 | 16.49 | 16.66 | 17.37 | 17.76 | 18.31 | 18.72 | 19.27 | 19.70 | 20.30 | 20.76 | 22.13 |
| | Biweekly | 1,003.50 | 1,028.00 | 1,087.50 | 1,112.25 | 1,172.25 | 1,198.50 | 1,236.75~ | 1,264.50 | 1,302.75 | 1,332.00 | 1,373.25 | 1,404.00 | 1,445.25 | 1,477.50 | 1,522.50 | -1,557.00 | 1,659.75 |
| | Annual* | 26,171 | 26,758 | 28,362 | 29,007 | 30,572 | 31,257 | 32,254 | 32,978 | 33,978 | 34,739 | 35,814 | 36,616 | 37,692 | 38,533 | 39,707 | 40,607 | 43,286 |
| LS04 Retail Wine Specialist | Hourly | 19.56 | 20.00 | 20.44 | 20.90 | 21.34 | 21.82 | 22.30 | 22.80 | 23.29 | 23.81 | 24.33 | 24.88 | 25.40 | 25.97 | 26.55 | 27.15 | 27.74 |
| | Biweekly | 1,467.00 | 1,500.00 | 1,533.00 | 1,567.50 | 1,600.50 | 1,636.50 | 1,672.50 | 1,710.00 | 1,746.75 | 1,785.75 | 1,824.75 | 1,866.00 | 1,905.00 | 1,947.75 | 1,991.25 | 2,036.25 | 2,080.50 |
| | Annual* | 38,259 | 39,120 | 39,981 | 40,880 | 41,741 | 42,680 | 43,619 | 44,597 | 45,555 | 46,572 | 47,589 | 48,665 | 49,682 | 50,797 | 51,932 | 53,105 | 54,259 |
| LS01 Intermittent Liquor Store Sales Cashier | Hourly | | | | | | | 16.58 | | | | | | | | | | |
| | Biweekly | | | | | | | 1,243.50 | | | | | | | | | | |
| | Annual* | | | | | | | 32,430 | | | | | | | | | | |

*: The approximately annual rate is derived by multiplying the biweekly by 26.08 and rounding to the nearest dollar.

85

APPENDIX K

COMMONWEALTH OF PENNSYLVANIA
EFFECTIVE OCTOBER 1, 2016
PAY SCALE TYPE LS

| PAY SCALE GROUP | | PAY SCALE LEVEL A | PAY SCALE LEVEL B | PAY SCALE LEVEL C | PAY SCALE LEVEL D | PAY SCALE LEVEL E | PAY SCALE LEVEL F | PAY SCALE LEVEL G | PAY SCALE LEVEL H | PAY SCALE LEVEL I | PAY SCALE LEVEL J | PAY SCALE LEVEL K | PAY SCALE LEVEL L | PAY SCALE LEVEL M | PAY SCALE LEVEL N | PAY SCALE LEVEL O | PAY SCALE LEVEL P | PAY SCLAE LEVEL Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LS02 Liquor Store Clerk 1 / Liquor Stock Clerk / Intermittent Liquor Store Clerk | Hourly | 12.12 | 12.40 | 12.95 | 13.23 | 13.75 | 14.06 | 14.90 | 15.24 | 16.06 | 16.42 | 16.89 | 17.27 | 17.79 | 18.19 | 18.74 | 19.16 | 20.42 |
| | Biweekly | 909.00 | 930.00 | 971.25 | 992.25 | 1,031.25 | 1,054.50 | 1,117.50 | 1,143.00 | 1,204.50 | 1,231.50 | 1,266.75 | 1,295.25 | 1,334.25 | 1,364.25 | 1,405.50 | 1,437.00 | 1,531.50 |
| | Annual* | 23,707 | 24,254 | 25,330 | 25,878 | 26,895 | 27,501 | 29,144 | 29,809 | 31,413 | 32,118 | 33,037 | 33,780 | 34,797 | 35,580 | 36,655 | 37,477 | 39,942 |
| LS07 Liquor Store Clerk 2 | Hourly | 13.75 | 14.06 | 14.90 | 15.24 | 16.06 | 16.42 | 16.94 | 17.32 | 17.85 | 18.25 | 18.81 | 19.23 | 19.80 | 20.24 | 20.86 | 21.33 | 22.74 |
| | Biweekly | 1,031.25 | 1,054.50 | 1,117.50 | 1,143.00 | 1,204.50 | 1,231.50 | 1,270.50 | 1,299.00 | 1,338.75 | 1,368.75 | 1,410.75 | 1,442.25 | 1,485.00 | 1,518.00 | 1,564.50 | 1,599.75 | 1,705.50 |
| | Annual* | 26,895 | 27,501 | 29,144 | 29,809 | 31,413 | 32,118 | 33,135 | 33,878 | 34,915 | 35,697 | 36,792 | 37,614 | 38,729 | 39,589 | 40,802 | 41,721 | 44,479 |
| LS04 Retail Wine Specialist | Hourly | 20.10 | 20.55 | 21.00 | 21.47 | 21.93 | 22.42 | 22.91 | 23.43 | 23.93 | 24.46 | 25.00 | 25.56 | 26.10 | 26.68 | 27.28 | 27.90 | 28.50 |
| | Biweekly | 1,507.50 | 1,541.25 | 1,575.00 | 1,610.25 | 1,644.75 | 1,681.50 | 1,718.25 | 1,757.25 | 1,794.75 | 1,834.50 | 1,875.00 | 1,917.00 | 1,957.50 | 2,001.00 | 2,046.00 | 2,092.50 | 2,137.50 |
| | Annual* | 39,316 | 40,196 | 41,076 | 41,995 | 42,895 | 43,854 | 44,812 | 45,829 | 46,807 | 47,844 | 48,900 | 49,995 | 51,052 | 52,186 | 53,360 | 54,572 | 55,746 |
| LS01 Intermittent Liquor Store Sales Cashier | Hourly | | | | | | | 17.04 | | | | | | | | | | |
| | Biweekly | | | | | | | 1,278.00 | | | | | | | | | | |
| | Annual* | | | | | | | 33,330 | | | | | | | | | | |

*: The approximately annual rate is derived by multiplying the biweekly by 26.08 and rounding to the nearest dollar.

98

APPENDIX L

COMMONWEALTH OF PENNSYLVANIA
EFFECTIVE JULY 1, 2017
PAY SCALE TYPE LS

| PAY SCALE GROUP | | PAY SCALE LEVEL A | PAY SCALE LEVEL B | PAY SCALE LEVEL C | PAY SCALE LEVEL D | PAY SCALE LEVEL E | PAY SCALE LEVEL F | PAY SCALE LEVEL G | PAY SCALE LEVEL H | PAY SCALE LEVEL I | PAY SCALE LEVEL J | PAY SCALE LEVEL K | PAY SCALE LEVEL L | PAY SCALE LEVEL M | PAY SCALE LEVEL N | PAY SCALE LEVEL O | PAY SCALE LEVEL P | PAY SCLAE LEVEL Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LS02 Liquor Store Clerk 1 | Hourly | 12.36 | 12.65 | 13.21 | 13.49 | 14.03 | 14.34 | 15.20 | 15.54 | 16.38 | 16.75 | 17.23 | 17.62 | 18.15 | 18.55 | 19.11 | 19.54 | 20.83 |
| Liquor Stock Clerk | Biweekly | 927.00 | 948.75 | 990.75 | 1,011.75 | 1,052.25 | 1,075.50 | 1,140.00 | 1,165.50 | 1,228.50 | 1,256.25 | 1,292.25 | 1,321.50 | 1,361.25 | 1,391.25 | 1,433.25 | 1,465.50 | 1,562.25 |
| Intermittent Liquor Store Clerk | Annual* | 24,176 | 24,743 | 25,839 | 26,386 | 27,443 | 28,049 | 29,731 | 30,396 | 32,039 | 32,763 | 33,702 | 34,465 | 35,501 | 36,284 | 37,379 | 38,220 | 40,743 |
| | | | | | | | | | | | | | | | | | | |
| LS07 Liquor Store Clerk 2 | Hourly | 14.03 | 14.34 | 15.20 | 15.54 | 16.38 | 16.75 | 17.28 | 17.67 | 18.21 | 18.62 | 19.19 | 19.61 | 20.20 | 20.64 | 21.28 | 21.76 | 23.19 |
| | Biweekly | 1,052.25 | 1,075.50 | 1,140.00 | 1,165.50 | 1,228.50 | 1,256.25 | 1,296.00 | 1,325.25 | 1,365.75 | 1,396.50 | 1,439.25 | 1,470.75 | 1,515.00 | 1,548.00 | 1,596.00 | 1,632.00 | 1,739.25 |
| | Annual* | 27,443 | 28,049 | 29,731 | 30,396 | 32,039 | 32,763 | 33,800 | 34,563 | 35,619 | 36,421 | 37,536 | 38,357 | 39,511 | 40,372 | 41,624 | 42,563 | 45,360 |
| | | | | | | | | | | | | | | | | | | |
| LS04 Retail Wine Specialist | Hourly | 20.50 | 20.96 | 21.42 | 21.90 | 22.37 | 22.87 | 23.37 | 23.90 | 24.41 | 24.95 | 25.50 | 26.07 | 26.62 | 27.21 | 27.83 | 28.46 | 29.07 |
| | Biweekly | 1,537.50 | 1,572.00 | 1,606.50 | 1,642.50 | 1,677.75 | 1,715.25 | 1,752.75 | 1,792.50 | 1,830.75 | 1,871.25 | 1,912.50 | 1,955.25 | 1,996.50 | 2,040.75 | 2,087.25 | 2,134.50 | 2,180.25 |
| | Annual* | 40,098 | 40,998 | 41,898 | 42,836 | 43,756 | 44,734 | 45,712 | 46,748 | 47,748 | 48,802 | 49,878 | 50,993 | 52,069 | 53,223 | 54,435 | 55,668 | 56,861 |
| | | | | | | | | | | | | | | | | | | |
| LS01 Intermittent Liquor Store Sales | Hourly | | | | | | | 17.38 | | | | | | | | | | |
| Cashier | Biweekly | | | | | | | 1,303.50 | | | | | | | | | | |
| | Annual* | | | | | | | 33,995 | | | | | | | | | | |

*: The approximately annual rate is derived by multiplying the biweekly by 26.08 and rounding to the nearest dollar.

COMMONWEALTH OF PENNSYLVANIA
EFFECTIVE JULY 1, 2018
PAY SCALE TYPE LS

| PAY SCALE GROUP | | PAY SCALE LEVEL A | PAY SCALE LEVEL B | PAY SCALE LEVEL C | PAY SCALE LEVEL D | PAY SCALE LEVEL E | PAY SCALE LEVEL F | PAY SCALE LEVEL G | PAY SCALE LEVEL H | PAY SCALE LEVEL I | PAY SCALE LEVEL J | PAY SCALE LEVEL K | PAY SCALE LEVEL L | PAY SCALE LEVEL M | PAY SCALE LEVEL N | PAY SCALE LEVEL O | PAY SCALE LEVEL P | PAY SCLAE LEVEL Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LS02 Liquor Store Clerk 1 Liquor Stock Clerk Intermittent Liquor Store Clerk | Hourly | 12.67 | 12.97 | 13.54 | 13.83 | 14.38 | 14.70 | 15.58 | 15.93 | 16.79 | 17.17 | 17.66 | 18.06 | 18.60 | 19.01 | 19.59 | 20.03 | 21.35 |
| | Biweekly | 950.25 | 972.75 | 1,015.50 | 1,037.25 | 1,078.50 | 1,102.50 | 1,168.50 | 1,194.75 | 1,259.25 | 1,287.75 | 1,324.50 | 1,354.50 | 1,395.00 | 1,425.75 | 1,469.25 | 1,502.25 | 1,601.25 |
| | Annual* | 24,783 | 25,369 | 26,484 | 27,051 | 28,127 | 28,753 | 30,474 | 31,159 | 32,841 | 33,585 | 34,543 | 35,325 | 36,382 | 37,184 | 38,316 | 39,179 | 41,761 |
| LS07 Liquor Store Clerk 2 | Hourly | 14.38 | 14.70 | 15.58 | 15.93 | 16.79 | 17.17 | 17.71 | 18.11 | 18.67 | 19.09 | 19.67 | 20.10 | 20.71 | 21.16 | 21.81 | 22.30 | 23.77 |
| | Biweekly | 1,078.50 | 1,102.50 | 1,168.50 | 1,194.75 | 1,259.25 | 1,287.75 | 1,328.25 | 1,358.25 | 1,400.25 | 1,431.75 | 1,475.25 | 1,507.50 | 1,553.25 | 1,587.00 | 1,635.75 | 1,672.50 | 1,782.75 |
| | Annual* | 28,127 | 28,753 | 30,474 | 31,159 | 32,841 | 33,585 | 34,641 | 35,423 | 36,519 | 37,340 | 38,475 | 39,316 | 40,509 | 41,389 | 42,660 | 43,619 | 46,494 |
| LS04 Retail Wine Specialist | Hourly | 21.01 | 21.48 | 21.96 | 22.45 | 22.93 | 23.44 | 23.95 | 24.50 | 25.02 | 25.57 | 26.14 | 26.72 | 27.29 | 27.89 | 28.53 | 29.17 | 29.80 |
| | Biweekly | 1,575.75 | 1,611.00 | 1,647.00 | 1,683.75 | 1,719.75 | 1,758.00 | 1,796.25 | 1,837.50 | 1,876.50 | 1,917.75 | 1,960.50 | 2,004.00 | 2,046.75 | 2,091.75 | 2,139.75 | 2,187.75 | 2,235.00 |
| | Annual* | 41,096 | 42,015 | 42,954 | 43,912 | 44,851 | 45,849 | 46,846 | 47,922 | 48,939 | 50,015 | 51,130 | 52,264 | 53,379 | 54,553 | 55,805 | 57,057 | 58,289 |
| LS01 Intermittent Liquor Store Sales Cashier | Hourly | | | | | | | 17.81 | | | | | | | | | | |
| | Biweekly | | | | | | | 1,335.75 | | | | | | | | | | |
| | Annual* | | | | | | | 34,836 | | | | | | | | | | |

*: The approximately annual rate is derived by multiplying the biweekly by 26.06 and rounding to the nearest dollar.

88

APPENDIX N

# EXHIBIT B



EXHIBIT B

**FOUNDED IN 1937**



JOHN KABLER

WENDELL W. YOUNG, IV
President

MICHELE L. KESSLER
Secretary-Treasurer

BARBARA JOHNSON
Recorder

Dear John,

We are taking this opportunity to welcome you to the United Food and Commercial Workers, Local 1776. You are working for an Employer/Company that has a Collective Bargaining Agreement (Union Contract) with Local 1776. It is a condition of employment with this company that you become a member in good standing with Local 1776. Previously we sent you a copy of the present contract that was negotiated, voted upon and approved by your fellow co-workers that are members of Local 1776. Your union contract sets forth conditions of employment, hours of work, wages, fringe benefits, health and welfare and pension benefits where applicable and when eligible, as well as the grievance procedure. PLEASE READ IT CAREFULLY. Also, please find attached your membership card.

According to our records you were hired on 04/10/2017, therefore, you will be affiliated into our union on 05/2017. The dues rate for your present classification is your hourly wage rate weekly, plus an additional $6.67 if you are full time; if you are part time an additional $3.32 will be added to your weekly hourly wage rate. Dues are payable one month in advance, therefore your employer has been instructed to make these deductions through payroll effective in the month in which you were hired which will be applied to the month you are affiliated. The initiation fee for your present classification is $200.00. This fee will be deducted through payroll over several pay periods.

In order to protect your rights as defined in the Collective Bargaining Agreement, it is your responsibility to remain in good standing with Local 1776. If you fail to maintain this obligation, your Employer is required to remove your name from the work schedule and you will not be permitted to work.

If you have any questions, problems or grievances, contact the union shop steward at your work location or your business representative PEG RHODES, at the SOUTH CENTRAL DIV office. Questions regarding dues can be answered by our Membership Services Department. Again, welcome to United Food and Commercial Workers, Local 1776.

Fraternally yours,

Wendell W. Young, IV
President

Michele L. Kessler
Secretary-Treasurer

Login to WWW.UFCW1776.ORG for up to date Union information.

Username:
Password:

**MEMBERSHIP CARD**

This is to certify that
**JOHN KABLER**
is a member of the

**UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION**
*Local 1776 of Pennsylvania*

SUBJECT TO PAYMENT OF CURRENT MONTH'S DUES AND OTHER
OBLIGATIONS UNDER THE CONSTITUTION OF THE INTERNATIONAL
UNION AND BYLAWS OF THE LOCAL UNION.

Wendell W. Young, IV
President




# EXHIBIT C

# EXHIBIT C



John R. Kabler, Jr.

UFCW Local 1776 KS
3031 Walton Road
Plymouth Meeting, PA 19462

CERTIFIED MAIL # 7017-1450-0001-2603-0995

July 17, 2018

    As per the United States Supreme Court ruling in Janus v AFSCME, please accept this letter as my FORMAL resignation from membership in UFCW Local 1776 effective June 27, 2018, the date this forced membership was deemed unconstitutional and illegal.

    I formally request written confirmation of the acceptance or denial of my request.

Respectfully,

*John R Kabler Jr*

John R. Kabler, Jr.

Cc:

    Commonwealth of Pennsylvania
    Executive Office,
    Bureau of Commonwealth Payroll Operations
    PO Box 8006
    Harrisburg, PA  17105-8006

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

UFCW Local 1776 KS
3031 Walton Rd
Plymouth Meeting PA 19462

9590 9402 2070 6132 1666 46

2. Article Number (Transfer from service label)
117 1450 0001 2603 0995

PS Form 3811 July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery  7/19/18

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

EXHIBIT D

# EXHIBIT D

**From:** Bornman, Lori
**Sent:** Wednesday, July 25, 2018 2:38:56 PM
**To:** Kabler, John
**Subject:** Request to Resign Union Membership

Mr. Kabler:

We are in receipt of your request.  The Janus Decision affected those employees that were paying fair share but had not become members of the Union.  In reviewing your record, you elected to become a member in May, 2017.  Therefore, the UFCW contract only allows for employees to withdrawal membership during the 15 day period prior to the expiration of the Agreement (June 16-30, **2019**).  You can refer to Article 4 of the contract for the specific language.   Therefore, we are unable to process your request unless we are informed that UFCW is making an exception to this language.  Thanks.

Lori

**Lori L. Bornman**| Chief, Labor Relations Division
Pennsylvania Liquor Control Board | Bureau of Human Resources
408 Northwest Office Building | Harrisburg, PA 17124-0001
Phone: 717.783.8852 | Fax: 717.705.6218
Email: lbornman@pa.gov
**www.lcb.state.pa.us**