**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN R. KABLER, JR.,** | : | **Civil No. 1:19-CV-395** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **UNITED FOOD AND COMMERICAL** | : | |
| **WORKERS UNIION, LOCAL 1776,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of the Case

This lawsuit, which comes before us for consideration of cross motions for summary judgment, in some ways seems to be a case in search of a current controversy. The element of legal controversy which normally accompanies a lawsuit is reduced significantly in this case due to a simple fact: The legal issue which lies at the heart of this litigation was conclusively resolved by the United States Supreme Court some seven months *before* the plaintiff filed this case.

On June 27, 2018, the United States Supreme Court decided <u>Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31</u>, 138 S. Ct. 2448, 2459-60, 201 L. Ed. 2d 924 (2018), holding that a state law under which "public employees are forced to subsidize a union, even if they choose not to join and strongly object to the positions the union takes in collective bargaining and related activities, . . . violates

1

the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." Id. In reaching this result, the Court expressly overruled its prior decision in Abood v. Detroit Bd. of Ed., 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977), which had for many years sustained the constitutionality of such state statutes.[1] Thus, Janus constituted a sea change in the law as it related to the question of the constitutionality of laws permitting compulsory public employee union fee deductions.

At the time of the Supreme Court's decision in Janus, the plaintiff, John Kabler, was employed as a liquor store clerk with the Pennsylvania Liquor Control Board (PLCB). Kabler began his employment as a liquor store clerk with PLCB on or about April 10, 2017 and became a member of the United Food and Commercial

---

[1] As one court recently explained:

> In Abood, the Court confronted a Michigan statute that allowed unions representing local-government employees to utilize "agency-shop" clauses in collective-bargaining agreements. Id. at 211, 97 S. Ct. 1782. These clauses required every employee represented by a union, even those who declined to become union members for political or religious reasons, to pay union dues. Id. at 212, 97 S. Ct. 1782. . . . . The Court held that the charges were constitutional to the extent they were used to finance the union's collective-bargaining, contract-administration, and grievance activities. Id. at 225, 97 S. Ct. 1782.

Diamond v. Pennsylvania State Educ. Ass'n, No. 3:18-CV-128, 2019 WL 2929875, at *1–2 (W.D. Pa. July 8, 2019).

Workers' Union, Local 1776 Keystone State (UFCW 1776) in May of 2017. (Doc. 1, ¶¶ 27, 31; Exhibit B). As a PLCB employee, Kabler was a state worker who was subject to the provisions of the Pennsylvania Public Employee Relations Act ("PERA"), 43 Pa. C.S. §§ 1101.101-2301.

At the time of the Supreme Court's decision in Janus, consistent with prior case law, Pennsylvania had, by statute, provided for some automatic deductions from public employee pay checks to subsidize union activities. Specifically, PERA provided that:

> It shall be lawful for public employes [sic] to organize, form, join or assist in employe [sic] organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes [sic] shall also have the right to refrain from any or all such activities, *except as may be required pursuant to a maintenance of membership provision of a collective bargaining agreement.*

43 Pa. C.S. § 1101.401 (emphasis added). Pennsylvania law further provided that, the term " '[m]aintenance of membership' means that all employes [sic] who have joined an employe [sic] organization . . . *must remain members for the duration of a collective bargaining agreement* . . . with the proviso that any such employe [sic] . . . may resign from such employe [sic] organization during a period of fifteen days prior to the expiration of any such agreement." 43 Pa. C.S. § 1101.301(18)). This provision of state law, in turn, subjected state employees to dues, deductions, and maintenance provisions since, by statute, such deductions were deemed "proper

subjects of bargaining with the proviso that as to the latter, the payment of dues and assessments while members, may be the only requisite employment condition." 43 Pa. C.S. § 1101.705.

In fact, the Commonwealth of Pennsylvania had entered into a collective bargaining agreement (CBA) with United Food and Commercial Workers Union, Local 23, which later became the UFCW 1776. The terms of the CBA were consistent with state law, and with regard to the "Maintenance of Membership and Dues Checkoff" provisions, provided that:

> Each employee who is or becomes a member of the Union shall maintain such membership for the duration of this Agreement provided that such employee may resign from the employee organization within the 15 days prior to the expiration of this Agreement upon written notice by certified mail, (return receipt requested) to the Employer and the Union.

(Doc. 1, ¶ 23; Exhibit A).

The collective bargaining agreement also included provisions regarding dues deductions which stated that:

> The Employer agrees to deduct dues and initiation fees, as defined in Article III, Section 301, Paragraph 11 of Act 195. Said deductions shall be made from the wages upon proper written authorization from the employee. The Union shall certify to the Employer the amount of Union dues to be deducted biweekly, and dues at this rate shall be deducted for each biweekly pay period for which the member is paid. Dues shall also be deducted from back pay awards and from pay received to supplement workers' compensation to the extent monies are available after appropriate deductions are made.

(Doc. 1, ¶ 23; Exhibit A). In addition, this provision of the CBA stated that "[t]he Employer further agrees to deduct from the wages of employees having executed the authorization in Section B of this Article an annual assessment, if any, upon certification of the assessment by the Union to the Employer." (Id.)

These dues deduction provisions applied to union members and there was a corresponding obligation of non-members to pay fair share fees. (Id. ¶ 20). Taken together, these provisions of state law and the collective bargaining agreement created an obligation for Kabler to make dues payments, something which Kabler asserts he was opposed to doing.

At the time that Kabler commenced his employment with the PLCB and joined the Local in the Spring of 2017, he executed a union membership application and a dues authorization form. The membership application provided in part that:

> I hereby make application for membership in UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION and affirm that the above statements are true, and I agree that all monies paid by me shall be forfeited and my membership declared void if they are not true. I authorize the UNITED FOOD AND COMMERIAL WORKERS INTERNATIONAL UNION to represent me for the purposes of collective bargaining and handling of grievances, either directly or through such local union as it may duly designate. I have read the information on the reverse side of this form.

(Doc. 36, ¶ 31).

On the back of this application, Kabler was informed that:

> In accordance with the decisions of the United States Supreme Court, you have the right to refrain from being a member of the Union.

5

Employees who are not members of the Union, are required to pay, as a condition of employment, an agency fee and, where applicable, initiation fees. Under the Local 1776 policy on agency fee objections, an employee who is not a member of the Union, but who pays agency fees pursuant to the Union security clause, may request a reduction in that fee based on their objection to certain kinds of union expenditures. Public employees in Pennsylvania are covered by the fair share fee system applicable to them and are not covered by this policy. Local 1776 provides an objection period each year during the month of September, followed by a reduction in the objector's fee for the 12 months beginning with November and running through October of the following year.

(Id., ¶ 32).

The dues authorization form signed by Kabler, in turn, advised him that he:

I hereby voluntarily authorize my Employer to deduct from my wages the sum equivalent to my regular union membership dues and further direct said Employer to deduct any Initiation Fees and Assessments which are due and payable by me as a member of Local No. 1776 resulting out of action taken by the membership of the Local Union and/or the By-Laws of Local 1776 and the Constitution of the Food and Commercial Workers International Association and remit same to the Union. *I further direct that this authority is to become effective immediately, and after the present contract expiration date shall remain irrevocable for a period of one (1) year therefrom or to the expiration of said contact, whichever occurs sooner, and shall continue in full force and effect thereafter unless I give written notice to the company and the union by certified mail of my desire to terminate said authority at least thirty (30) days and not more than forty-five (45) days before any periodic renewal date of this authority.* I understand that dues paid to Local 1776 are not deductible as a charitable contribution for Federal Tax purposes.

(Id., ¶ 33) (emphasis added). Local officials construed this dues authorization form language as creating a limited window for revocation of dues deductions, tied to the worker's union membership anniversary. (Id., ¶ 34).

At the time he began his employment with the PLCB and joined the Local, Kabler also received several forms of written notification which expressly informed him that union membership was voluntary. For example, the PAC authorization form that Kabler signed stated that:

> I understand that this authorization is voluntarily made and that the amount suggested as a contribution is a guideline and that I may contribute more or less than this amount by any lawful means, other than this checkoff or may refuse to contribute, and that the making of payments to the UFCW Local 1776 PAC is not a condition of membership in the Union or of employment with the employer and that I have a right to refuse to sign this authorization and not contribute to the UFCW Local 1776 PAC without reprisal. I understand that my contribution will be used for political purposes, including the support of candidates for federal, state, and local office. I expressly reserve the right to revoke at any time this authorization in writing. I also understand that contributions or gifts to the UFCW Local 1776 PAC are not deductible as charitable contributions for federal tax purposes.

(Id., ¶ 35).

Likewise, the "Membership Information" which the Local provided to Kabler when he began his employment and union membership stated that:

> In accordance with a U.S. Supreme Court decision, you have the right to refrain from being a member of the Union. Employees who are not members of the Union are required to pay as a condition of employment an agency fee and, when applicable, initiation fees. Under the Local 1776 policy on agency fee objections, an employee who is not a member of the Union, but who pays agency fees pursuant to the union security clause, may request a reduction in that fee based on objection to certain kinds of Union expenditures. Public employees in Pennsylvania are covered by the fair share fee system applicable to them, and are not covered by this policy. Local 1776 provides an objection period each year during the month of September, followed by

a reduction in the objector's fee for the 12 months beginning with November and running through October of the following year.

(Id., ¶ 41).

Notwithstanding these written notifications regarding the voluntary nature of union membership, Kabler insists that union officials told him that membership in the union was a precondition to employment and if he did not join the Local he would lose his job, a claim union officials dispute.

On June 27, 2018, the Supreme Court's decision in Janus struck down the continued constitutionality of laws like the Pennsylvania statute permitting compulsory public employee union fee deductions. Approximately three weeks later, on July 17, 2018, Kabler wrote to the union and the Commonwealth requesting that UFCW 1776 permit him to revoke his membership and discontinue his payment of membership dues. (Id., ¶ 32). In response to this correspondence, the Commonwealth and union officials informed Kabler that pursuant to his payroll dues deduction agreement, he could revoke his dues deductions in the Spring of 2019 during his union enrollment anniversary. (Doc. 36, ¶¶ 50-53). In fact, in April of 2019, Kabler's union membership was rescinded and his dues deductions ceased.

While this much is clear, what is somewhat less certain is the question of whether Kabler ever received any refund of the moneys that were deducted from his pay for union dues between the time of his July 2018 attempted resignation and the April 2019 union notification that his membership had been rescinded. On this score,

Kabler seems to assert that the Local retained these funds. The Local's rejoinder is somewhat more enigmatic. The Local does not deny Kabler's averment; rather, it alleges that:

> There Is No Evidence Demonstrating That Plaintiff Remained a Union Member After He Requested to Withdraw Membership or Continued to Have Union Dues Deducted Based on the Maintenance of Membership Provisions in the 2016-2019 CBA or the PERA . . . .

(Doc. 55, 11).

On June 26, 2019, the PLCB and the Local ratified a successor collective bargaining agreement, with a term from July 1, 2019 through June 30, 2023, which no longer has any provision regarding maintenance of membership or fair share fees. (Id, ¶ 65).

It is against this factual backdrop that Kabler filed this lawsuit against both the Commonwealth and the union on March 6, 2019. (Doc. 1). In his complaint, Kabler named the Union as an institutional defendant, but also named three Local officers, Local President Wendell Young, Vice President Peg Rhodes, and Secretary-Treasurer Michele Kessler, as individual defendants. (Doc. 1, ¶¶ 11-14).

Count I brings broadly framed First Amendment free speech and freedom of association claims against the union defendants, alleging that the union's practice of requiring public employees to join the Local violated Kabler's constitutional rights. (Id., ¶¶ 41-47). Count II, in turn, seems to bring a series of related, but more narrowly tailored First Amendment claims on behalf of Kabler, specifically alleging that the

conduct of the union defendants violated the plaintiff's First Amendment free speech and associational rights in the wake of the Supreme Court's <u>Janus</u> decision. (<u>Id.</u>, ¶¶ 48-57). Count III of the complaint brings a constitutional due process claim alleging that: "Neither Local 1776, Mr. Young, Ms. Kessler, nor Ms. Rhodes provided meaningful notice to Mr. Kabler of his right to refuse/object to associating with or subsidizing the speech of Local 1776." (<u>Id.</u>, ¶¶ 58-67). Finally, in Count IV of the complaint, Kabler alleges that the union and its officers committed the state tort of fraudulent misrepresentation, in that they allegedly misrepresented to Kabler that he was required to join the union as a condition of employment. (<u>Id.</u>, ¶¶ 68-78).

On the basis of these allegations, Kabler sought injunctive and declaratory relief, along with compensatory damages "including the return of funds unconstitutionally seized from Mr. Kabler as far back as his date of hire," (<u>Id.</u>, ¶ 55), punitive damages, and attorneys' fees. (<u>Id.</u>, Prayer for relief).

On July 19, 2019, the union defendants filed a motion for summary judgment, arguing that all of Kabler's claims failed as a matter of law. (Doc. 35). Kabler, in turn, filed his own cross-motion for summary judgment, (Doc. 39), arguing that he was entitled to a judgment on his behalf on Count II of the complaint, which alleged a narrowly tailored First Amendment claims on behalf of Kabler, asserting that the conduct of the unions defendants violated the plaintiff's First Amendment free speech and associational rights in the wake of the Supreme Court's <u>Janus</u> decision.

For the reasons set forth below, it is recommended as follows: The union defendants' motion for summary judgment (Doc. 35), should be GRANTED in part, DENIED, in part, and DEFERRED in part. Specifically, the motion should be GRANTED with respect to: (1) any broadly based First Amendment claims challenging the union's exclusive representational status; (2) any claims for prospective relief; and (3) any Janus-based claims for damages for the period pre-dating the Supreme Court's decision in Janus. The motion should be DENIED with respect to Counts III and IV of the plaintiff's complaint. The motion should be DEFERRED with regard to any Janus-based damages claims relating to dues deductions post-dating the Janus decision and Kabler's request to resign his union membership. The plaintiff's motion for partial summary judgment on Count II of the complaint (Doc. 39) should be DENIED in part with respect to any Janus-based claims for damages for the period pre-dating the Supreme Court's decision in Janus and DEFERRED with regard to any Janus-based damages claims relating to dues deductions post-dating the Janus decision and Kabler's request to resign his union membership

## II.    Discussion

### A. Summary Judgment—Standard of Review

The parties have submitted cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to

12

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d

965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

Further:

"When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.' " <u>Transguard Ins. Co. of Am., Inc. v. Hinchey</u>, 464 F. Supp. 2d 425, 430 (M.D. Pa. 2006) (quoting <u>Marciniak v. Prudential Fin. Ins. Co. of Am.</u>, 184 Fed. App'x 266, 270 (3d Cir. 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." <u>Id.</u> (citing <u>Iberia Foods Corp. v. Romeo</u>, 150 F.3d 298, 302 (3d Cir. 1998)).

<u>Pellicano v. Office of Pers. Mgmt., Ins. Operations</u>, 8 F. Supp. 3d 618, 625–26 (M.D. Pa. 2014), <u>aff'd sub nom.</u> <u>Pellicano v. Office of Pers. Mgmt.</u>, 714 F. App'x 162 (3d Cir. 2017). It is against this analytical prism that we now assess these cross motions for summary judgment.

## B. <u>Kabler's Requests for Prospective, Injunctive, and Declaratory Relief Against the Union Defendants are Now Moot.</u>

At the outset, in his complaint, Kabler seeks sweeping prospective, injunctive, or declaratory relief. Kabler's injunctive relief claims come before us on an undisputed factual record which reveals that Kabler is no longer a member of the union, no longer has fees deducted from his pay, and is no longer at any risk of such fees deductions since the current collective bargaining agreement does not allow for such deductions and the Supreme Court has struck down this practice on constitutional grounds.

On these facts, the short answer to that request is that the plaintiff has withdrawn from the union, is no longer subject to dues deductions, has received a

dues refund, and, in light of the Supreme Court's decision in <u>Janus</u>, is no longer subject to the threat of future dues deductions since the Court has struck down these type of "agency shop" arrangements in which dissenting workers were nonetheless required to pay union dues. Given that this practice is no longer in effect and cannot be constitutionally reinstituted in light of the Court's decision in <u>Janus</u>, we agree with those courts who have considered prospective, injunctive, and declaratory relief requests like those made here and found those requests to be moot.

The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." <u>Blanciak v. Allegheny Ludlum Corp.</u>, 77 F.3d 690, 698-99 (3d Cir. 1996). There is a constitutional dimension to the mootness doctrine.

> Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies." <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L.Ed.2d 400 (1990). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." <u>Id.</u> (citing <u>Allen v. Wright</u>, 468 U.S. 737, 750–751, 104 S. Ct. 3315, 82 L.Ed.2d 556 (1984); <u>Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471–473, 102 S. Ct. 752, 70 L.Ed.2d 700 (1982)). Article III denies the District Court the power to decide questions that cannot affect the rights of litigants before it, and confines it to resolving live controversies "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon

> a hypothetical state of facts." <u>Aetna Life Insurance Co. v. Haworth</u>, 300 U.S. 227, 241, 57 S. Ct. 461, 81 L.Ed. 617 (1937). The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. <u>Lewis</u>, 494 U.S. at 477–478. "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " <u>Spencer</u>, 523 U.S. at 7 (quoting <u>Lewis</u>, 494 U.S. at 477).

<u>Burkey v. Marberry</u>, 556 F.3d 142, 147 (3d Cir. 2009) (dismissing habeas petition as moot).

In considering the application of the mootness doctrine to this case, we most assuredly do not write upon a blank slate. Quite the contrary, in the wake of <u>Janus</u>' sea change in this law regarding the constitutionality of "agency shop" statutes, numerous courts have been confronted with the precise scenario presented here: A <u>Janus</u>-based lawsuit by an employee who was formerly subjected to compulsory dues deductions, seeking injunctive relief against officials who had abandoned this "agency shop" practice in light of the Supreme Court's ruling. Almost without exception, on these facts, courts have concluded that plaintiffs' requests for prospective relief are now moot given the cessation of this practice that was compelled by the Supreme Court's decision in <u>Janus</u>.[2]

---

[2] <u>See, e.g.</u>, <u>Oliver v. Serv. Employees Int'l Union Local 668</u>, No. CV 19-891, 2019 WL 5964778, at *7 (E.D. Pa. Nov. 12, 2019); <u>LaSpina v. SEIU Pennsylvania State Council</u>, No. CV 3:18-2018, 2019 WL 4750423, at *9 (M.D. Pa. Sept. 30, 2019); <u>Mayer v. Wallingford-Swarthmore Sch. Dist.</u>, No. CV 18-4146, 2019 WL

For his part, Kabler attempts to resist this rising tide of case law by arguing the voluntary cessation doctrine, which holds that voluntary abandonment of an unlawful practice does not automatically render a dispute moot. The difficulty with this assertion in the instant case is twofold: First, virtually every court which has

---

4674397, at *3 (E.D. Pa. Sept. 24, 2019); Diamond v. Pennsylvania State Educ. Ass'n, 399 F. Supp. 3d 361, 383 (W.D. Pa. July 8, 2019) (citing Hartnett v. Pa. State Educ. Ass'n, 390 F. Supp. 3d 592 (M.D. Pa. May 17, 2019) (finding comparable claims for declaratory and injunctive relief moot post-Janus because the "[p]laintiffs face no realistic possibility that they will be subject to the unlawful collection of 'fair share' fees")); Cook v. Brown, 364 F. Supp. 3d 1184, 1189 (D. Or. 2019) (finding a request for injunctive relief post-Janus moot because the union had already stopped collecting fair-share fees and thus there was "no live controversy . . . necessitating injunctive relief"); Lamberty v. Conn. State Police Union, No. 3:15-cv-378, 2018 WL 5115559, at *9 (D. Conn. Oct. 19, 2018) (explaining that Janus mooted a challenge to the constitutionality of agency fees because "there is nothing for [the court] to order [the d]efendants to do now"); Yohn v. Cal. Teachers Ass'n, Case No. SACV 17-202-JLS-DFM, 2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) (granting the union's motion to dismiss on mootness grounds after the union complied with Janus); Danielson v. Inslee, 345 F. Supp. 3d 1336, 1339-40 (W.D. Wash. 2018) (finding that Janus mooted a controversy when the State of Washington stopped collecting agency fees post-Janus); Smith v. Bieker, Case No. 18-cv-05472-VC, 2019 WL 2476679, at *1 (N.D. Cal. June 13, 2019) (finding similar claims moot because the State did not plan to enforce the unconstitutional statute in light of Janus). See also Mayer v. Wallingford-Swarthmore Sch. Dist., No. CV 18-4146, 2019 WL 4674397, at *3 (E.D. Pa. Sept. 24, 2019); Molina v. Pennsylvania Soc. Serv. Union, 392 F. Supp. 3d 469, 471 (M.D. Pa. 2019); Hamidi v. Serv. Employees Int'l Union Local 1000, 386 F. Supp. 3d 1289, 1295 (E.D. Cal. 2019); Akers v. Maryland State Educ. Ass'n, 376 F. Supp. 3d 563, 572 (D. Md. 2019); Lee v. Ohio Educ. Ass'n, 366 F. Supp. 3d 980 (N.D. Ohio 2019).

considered this argument following the Supreme Court's decision in <u>Janus</u> has rejected it.[3] Second, this argument fails to take into account the unique factual context of this case. This is not a situation in which the voluntary cessation doctrine applies because a litigant has made a brief and temporary tactical legal retreat on an uncertain legal landscape. Quite the contrary, the United States Supreme Court has now clearly and definitively changed that legal landscape and the actions of the defendants simply reflect compliance with the Court's unmistakable mandate. As one court has aptly observed when discounting a similar voluntary cessation argument:

> <u>Janus</u> . . . represents a significant legal shift because it explicitly overruled <u>Abood</u> and held that the collection of fair-share fees was unconstitutional. "The law of the land thus has changed and there no longer is a legal dispute as to whether public sector unions can collect agency fees." Complying with a Supreme Court decision [therefore] cannot be considered "voluntary cessation."

<u>Diamond v. Pennsylvania State Educ. Ass'n</u>, 399 F. Supp. 3d 361, 387 (W.D. Pa. 2019) (citations omitted).

We agree. Finding that this paradigm shift in the law, coupled with the parties' compliance with their newly defined legal obligations and the amendment of the collective bargaining agreement eliminates the need for prospective relief, and further concluding that complying with a Supreme Court decision cannot be

---

[3] <u>See</u> cases cited in footnote 3 <u>supra</u>.

characterized as voluntary cessation, we submit that these requests for prospective relief from the defendants are now moot and should be dismissed.

### C. **Kabler Cannot Maintain a Freestanding First Amendment Associational Claim in this Case Attacking the Union's Exclusive Bargaining Representative Status.**

Count I of Kabler's complaint can also be construed as bringing a separate First Amendment freedom of association and freedom of speech claim that is not specifically tied to the Supreme Court's decision in <u>Janus</u>, asserting that the designation of the local union as the exclusive bargaining representative unconstitutionally abridged his free speech and association rights by in some way compelling them to associate with the union on collective bargaining matters.

The difficulty with this particular claim is that in <u>Minnesota State Bd. for Cmty. Colleges v. Knight</u>, 465 U.S. 271, 291, 104 S. Ct. 1058, 1069, 79 L. Ed. 2d 299 (1984), the United States Supreme Court rejected First Amendment and Equal Protection challenges to similar exclusive representation laws in the public employment context, holding that such laws do not violate First Amendment associational principles and finding that: "The state has a legitimate interest in ensuring that its public employers hear one, and only one, voice presenting the majority view of its professional employees on employment-related policy questions, whatever other advice they may receive on those questions." <u>Id.</u>

Given what we construe as the Supreme Court's longstanding teaching in Knight, Kabler's First Amendment associational claims challenging the union's role as the exclusive labor representative of these public employees would fail unless the Court's recent decision in Janus has somehow abrogated its holding in Knight. Viewed in isolation, this is a difficult argument to sustain. The Supreme Court's decision in Janus clearly shows that the Court understood its ability to expressly overrule prior precedent since that is precisely what the Court did when it set aside its prior decision in Abood. It seems unlikely that the Court, having expressly overruled its prior decision in Abood, would have been reticent to expressly address its holding in Knight, if that had been the Court's intent. Moreover, while the Court's decision in Janus recognized First Amendment tensions that may arise due to the activities of public employee unions, in the final analysis the Court did not to make any sweeping declaration striking down these exclusive bargaining agent arrangements. Quite the contrary, the Court eschewed any such broad declarations, stating instead that: "States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions." Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31, 138 S. Ct. 2448, 2485, n. 27, 201 L. Ed. 2d 924 (2018). Since exclusive bargaining representative status is a settled feature of state labor-relations systems, the Court's assertion that "States

can keep their labor-relations systems exactly as they are", simply cannot be read as a constitutional rebuke of this practice.

And, in fact, those courts which have considered this issue generally agree that the Court's decision in Janus does not abrogate or undermine its prior holding in Knight. Mentele v. Inslee, 916 F.3d 783, 790 (9th Cir.), cert. denied sub nom. Miller v. Inslee, 140 S. Ct. 114 (2019). As one court has recently observed:

> Read properly, Janus reaffirms rather than undermines Knight. Although Janus contains a brief passage stating that exclusive representation is "a significant impingement on associational freedoms that would not be tolerated in other contexts," earlier in that same sentence the Court held "[i]t is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees." Janus, 138 S. Ct. at 2478. Furthermore, Janus emphasizes elsewhere that "States can keep their labor-relation systems exactly as they are" and makes no reference to Knight in the opinion. Id. at 2485 n.27. In that regard, if Knight were overruled, public employers would lack a readily identifiable, authorized representative with whom to negotiate, and the practical challenges for public employers in managing their workforce would be daunting.
>
> The Third Circuit has not yet addressed the issue, but the Eighth and Ninth Circuits have held that the Supreme Court sanctioned the practice of exclusive representation in public sector collective bargaining in Knight and agree that Janus cannot be read to have overruled it. Bierman v. Dayton, 900 F.3d 570, 574 (8th Cir. 2018) (noting that "the constitutionality of exclusive representation standing alone was not at issue" in Janus); Mentele v. Inslee, 916 F.3d 783, 789 (9th Cir. 2019) ("Janus's reference to infringement caused by exclusive union representation . . . is not an indication that the Court intended to revise the analytical underpinnings of Knight or otherwise reset the longstanding rules governing the permissibility of mandatory exclusive representation.").

Oliver v. Serv. Employees Int'l Union Local 668, No. CV 19-891, 2019 WL 5963226, at *5 (E.D. Pa. Nov. 12, 2019). This conclusion is echoed in an emerging body of case law, which consistently declines invitations to set aside public employee unions' exclusive representation status based upon an expansive reading of Janus.[4] We find the rationale of these cases compelling and persuasive. Accordingly, given the current state of the law, any claims by Kabler which entail a broadly framed First Amendment attack upon exclusive public union representation of workers fails, and this claim should be dismissed.

**D. As Currently Pleaded, Kabler's Janus-Based First Amendment Damage Claim Fails in Part, and Should Be Deferred in Part for Further Briefing.**

Both the union and Kabler have moved for summary judgment on Count II of this complaint. (Docs. 35 and 39). Thus, both of the antagonists in this litigation

---

[4] See, e.g., Sweet v. California Ass'n of Psychiatric Technicians, No. 2:19-CV-00349-JAM-AC, 2019 WL 4054105, at *3 (E.D. Cal. Aug. 28, 2019); Grossman v. Hawaii Gov't Employees Ass'n/AFSCME Local 152, 382 F. Supp. 3d 1088 (D. Haw. 2019); Thompson v. Marietta Educ. Ass'n, 371 F. Supp. 3d 431 (S.D. Ohio 2019); Reisman v. Associated Faculties of Univ. of Maine, 356 F. Supp. 3d 173, 178 (D. Me. 2018), aff'd, 939 F.3d 409 (1st Cir. 2019); Uradnik v. Inter Faculty Org., No. CV 18-1895 (PAM/LIB), 2018 WL 4654751, at *2 (D. Minn. Sept. 27, 2018).

insist that they are entitled to a judgment in their favor as a matter of law on all aspects of this particular claim.

We adopt a more nuanced view. As we construe Count II of Kabler's complaint, the plaintiff also seeks damages from the defendants as a result of alleged Constitutional infractions involving his First Amendment rights under the Supreme Court's Janus decision. In particular, Kabler demands compensatory damages "including the return of funds unconstitutionally seized from Mr. Kabler as far back as his date of hire." (Doc. 1, ¶ 55). Since Kabler was hired in April of 2017, this prayer for relief, in effect, relies upon the Court's Janus decision to seek reimbursement of union dues paid for some 15 months *prior* to that decision. Kabler also seeks damages for union dues that were allegedly deducted from his pay from the date upon which he attempted to withdraw from the union after the Supreme Court's decision in Janus, July of 2018, until April of 2019, when all parties agree that these dues deductions came to an end. In our view, on the unique facts of this case, Kabler's claim for damages in the form of union dues paid prior to the Janus decision plainly fails.

There are two profound problems with this particular damage claim. First, it ignores the legal and factual backdrop of this case. Prior to June of 2018, the practice engaged in by the county and the union of seeking dues deductions from these employees was commonplace, expressly authorized by statute, and constitutionally

endorsed by the United States Supreme Court. <u>Abood v. Detroit Bd. of Ed.</u>, 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977). Thus, prior to the fundamental sea change in the law resulting from the ruling in <u>Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31</u>, 138 S. Ct. 2448, 2459-60, 201 L. Ed. 2d 924 (2018), the defendants had no reason the question the lawfulness of their conduct.

This particular damage claim also fails to acknowledge an immutable legal fact, the existence of a good faith defense when parties act in reliance upon what was then-existing law. On this score, we note that: "every federal appellate court to have decided the question has held that, while a private party acting under color of state law does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983." <u>Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council 31; AFL-CIO</u>, 942 F.3d 352, 362 (7th Cir. 2019) (citing <u>Clement v. City of Glendale</u>, 518 F.3d 1090, 1096–97 (9th Cir. 2008)); <u>Pinsky v. Duncan</u>, 79 F.3d 306, 311–12 (2d Cir. 1996); <u>Vector Research, Inc. v. Howard & Howard Attorneys P.C.</u>, 76 F.3d 692, 698–99 (6th Cir. 1996); <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1275–78 (3d Cir. 1994); <u>Wyatt v. Cole</u>, 994 F.2d 1113, 1118–21 (5th Cir. 1993) ("<u>Wyatt II</u>"). As the United States Court of Appeals for the Third Circuit has observed when considering this issue in the context of § 1983 civil rights litigation: "we believe in accord with the [other]

court of appeals . . . that a good faith defense is available[.]" <u>Jordan v. Fox,</u>
<u>Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1277 (3d Cir. 1994).

In the instant case, these legal tenets combine to defeat Kabler's claim for
damages grounded directly upon the <u>Janus</u> decision which seeks damages for dues
paid *prior* to the ruling in <u>Janus</u>. These dues deductions were undertaken by the
defendants in good faith, in reliance on a state statute which expressly authorized
this practice, and in accordance with the then existing Supreme Court precedent
which constitutionally endorsed such union dues deductions. On these facts, we
conclude that it is evident that a defense of good faith reliance upon then existing
law applies here and bars § 1983 damages claims relating to dues paid prior to the
Supreme Court's decision in <u>Janus</u>.

We are not alone in reaching this conclusion. Quite the contrary, on remand
from the Supreme Court, the court of appeals in <u>Janus v. Am. Fed'n of State, Cty. &</u>
<u>Mun. Employees, Council 31; AFL-CIO</u>, 942 F.3d 352, 364 (7th Cir. 2019) found
that the union was entitled to a good faith defense to liability for damages based
upon its reliance on what was previously settled law. In reaching this result, the court
of appeals observed that there is an emerging legal consensus on this question,
stating that "every district court that has considered the precise question before us—
whether there is a good-faith defense to liability for payments collected before <u>Janus</u>
<u>II</u>—has answered it in the affirmative." <u>Id.</u> (citing <u>Hamidi v. SEIU Local 1000</u>, 2019

26

WL 5536324 (E.D. Cal. Oct. 25, 2019); LaSpina v. SEIU Pennsylvania State Council, 2019 WL 4750423 (M.D. Pa. Sept. 30, 2019); Casanova v. International Ass'n of Machinists, Local 701, No. 1:19-cv-00428, Dkt. #22 (N.D. Ill. Sept. 11, 2019); Allen v. Santa Clara Cty. Correctional Peace Officers Ass'n, 400 F. Supp. 3d 998, 2019 WL 4302744 (E.D. Cal. Sept. 11, 2019); Ogle v. Ohio Civil Serv. Emp. Ass'n, 397 F. Supp. 3d 1076 (S.D. Ohio 2019), appeal pending, No. 19-3701 (6th Cir.); Diamond v. Pennsylvania State Educ. Ass'n, 399 F. Supp. 3d 361, 2019 WL 2929875 (W.D. Pa. July 8, 2019), appeal pending, No. 19-2812 (3d Cir.); Hernandez v. AFSCME California, 386 F. Supp. 3d 1300 (E.D. Cal. 2019); Doughty v. State Employee's Ass'n, No. 1:19-cv-00053-PB (D.N.H. May 30, 2019), appeal pending, No. 19-1636 (1st Cir.); Babb v. California Teachers Ass'n, 378 F. Supp. 3d 857 (C.D. Cal. 2019); Wholean v. CSEA SEIU Local 2001, 2019 WL 1873021 (D. Conn. Apr. 26, 2019), appeal pending, No. 19-1563 (2d Cir.); Akers v. Maryland Educ. Ass'n, 376 F. Supp. 3d 563 (D. Md. 2019), appeal pending, No. 19-1524 (4th Cir.); Bermudez v. SEIU Local 521, 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019); Lee v. Ohio Educ. Ass'n, 366 F. Supp. 3d 980 (N.D. Ohio 2019), appeal pending, No. 19-3250 (6th Cir.); Hough v. SEIU Local 521, 2019 WL 1274528 (N.D. Cal. Mar. 20, 2019), amended, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019), appeal pending, No. 19-15792 (9th Cir.); Crockett v. NEA-Alaska, 367 F. Supp. 3d 996 (D. Alaska 2019), appeal pending, No. 19-35299 (9th Cir.); Carey v. Inslee, 364 F. Supp. 3d 1220

(W.D. Wash. 2019), appeal pending, No. 19-35290 (9th Cir.); Cook v. Brown, 364 F. Supp. 3d 1184 (D. Or. 2019), appeal pending, No. 19-35191 (9th Cir.); Danielson v. AFSCME, Council 28, 340 F. Supp. 3d 1083 (W.D. Wash. 2018), appeal pending, No. 18-36087 (9th Cir.)); see also Mooney v. Illinois Educ. Ass'n, 942 F.3d 368, 369 (7th Cir. 2019).

This same reasoning has been applied to cases where a local union withheld, but later refunded, dues deductions which took place after the Supreme Court's decision in Janus. Reasoning that the local union's conduct refunding these moneys collected after the Janus decision reflected a good faith effort to comply with a shifting legal landscape, courts have conferred good faith immunity upon labor organizations in this setting as well. LaSpina v. SEIU Pennsylvania State Council, supra; Babb v. California Teachers Ass'n, supra.

These principles apply here and compel the dismissal of any damages claims relating to dues collected from Kabler prior to June 2018, the date of the Supreme Court's decision in Janus. Given the uncontested evidence revealing that prior to the Janus ruling the defendants conducted these dues deductions in accordance with then-existing law, it is submitted that this court should follow the growing legal consensus finding that the good faith defense applies in this setting and precludes claims for damages on these unique facts. Accordingly, Kabler's damages claims

which seek to recover as damages dues paid prior to the Supreme Court's decision in <u>Janus</u> should be dismissed.

Kabler also claims entitlement to compensatory damages for union dues that were allegedly deducted from his pay from the date upon which he attempted to withdraw from the union after the Supreme Court's decision in <u>Janus</u>, July of 2018, until April of 2019, when all parties agree that these dues deductions came to an end. In our view, this issue presents a somewhat closer question.

Several legal and factual considerations combine to caution against the entry of summary judgment on this issue for either party in this case at this time. First, there is a certain factual ambiguity regarding whether, and to what degree, the Local may have collected and retained Kabler's dues after the Supreme Court's decision in <u>Janus</u>. For his part, Kabler seems to assert that he was subjected to dues deductions from July of 2018, when he first attempted to resign from the Local, until April of 2019. The union's rejoinder to this allegation has a certain textured ambiguity to it. The Local does not deny Kabler's averment, but rather simply suggests that:

> There Is No Evidence Demonstrating That Plaintiff Remained a Union Member After He Requested to Withdraw Membership or Continued to Have Union Dues Deducted Based on the Maintenance of Membership Provisions in the 2016-2019 CBA or the PERA . . . .

(Doc. 55, 11).

Aside from this factual uncertainty, there is also an underlying legal murkiness which calls for further scrutiny of this particular claim. To the extent that

the union continued to take dues deductions from Kabler's pay after he sought to resign in July of 2018, it appears that the Local justified retention of these dues based upon the dues authorization form signed by Kabler which the union construed contractually as creating a limited window for revocation of dues deductions, tied to the worker's union membership anniversary.

This argument is potentially problematic when considering the Local's good faith defense for several reasons. "The good-faith defense refers to a protection from liability under 42 U.S.C. § 1983 by private citizens who have relied in good faith on then-existing laws that were presumptively valid." Akers v. Maryland State Educ. Ass'n, 376 F. Supp. 3d 563, 571 (D. Md. 2019). Therefore, in assessing a good faith defense: "The key question . . . is whether the defendant's reliance on *an existing law* was in good faith." Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council 31; AFL-CIO, 942 F.3d 352, 359 (7th Cir. 2019) (emphasis added). Thus, the focus of the good faith defense is both on the subjective motivation of the defendant and whether the defendant's actions comporting with then-existing law.

Here, as we have noted, Janus reflected a basic paradigm shift in the law. While the fundamental nature of this legal change makes it clear that the union could avail itself of the good faith defense prior to June 2018, it is less clear that the union could clearly assert that the existing law permitted retention of union dues from persons who lodged objections to these dues payments *after* June of 2018. Indeed,

many of those cases which have conferred the good faith defense upon labor organizations in this setting have done so while expressly noting that once the law clearly changed in the wake of the Janus decision, the Local promptly ceased dues deductions from persons who protested and refunded dues to these objectors. See, e.g., Diamond v. Pennsylvania State Educ. Ass'n, 399 F. Supp. 3d 361, 384 (W.D. Pa. 2019); LaSpina v. SEIU Pennsylvania State Council, supra; Babb v. California Teachers Ass'n, supra.

While the vast majority of cases appear to involve situations where the union ceased its dues collections and provided refunds to those who objected to continued deductions, we note that at least one court has held that workers were still bound by the contractual terms of their dues deduction agreements even after the Janus decision, and have declined to entertain post-Janus dues refund claims. See Cooley v. California Statewide Law Enf't Ass'n, 385 F. Supp. 3d 1077, 1080 (E.D. Cal. 2019). In reaching this result, the court in Cooley found that the Supreme Court's decision in Janus did not confer a right upon union members to resign immediately. Eschewing an approach which read Janus as creating substantive rights for Union members, the Cooley court found that union members could still be bound by contractual resignation timetables in their dues agreements, notwithstanding the intervening change in the law resulting from the Court's Janus decision. Id. More recently, upon remand from the United States Supreme Court, the court of appeals

in <u>Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council 31; AFL-CIO</u>, 942 F.3d 352, 358 (7th Cir. 2019), adopted a similar construction of the Supreme Court's decision in <u>Janus</u> stating that: "The Court's analysis focused on the union rather than the nonmembers: the question was whether requiring a *union* to continue to represent those who do not pay even a fair-share fee would be sufficiently inequitable to establish a compelling interest, not whether requiring *nonmembers* to contribute to the unions would be inequitable."[5]

In the instant case, given the factual questions concerning the status of Kabler's dues payments, this shifting legal terrain, and the fact that a claim that the union was relying upon then-existing law becomes increasingly problematic when that law clearly changed after June 2018, we recommend that the court defer ruling upon this particular aspect of the plaintiff's complaint, and instead direct supplemental briefing on this issue.

### E. Summary Judgment Should Be Denied at This Time on Counts III and IV of the Plaintiff's Complaint.

Finally, in Count III of his complaint, Kabler brings a constitutional due process claim against the union and the individual union officers alleging that: "Neither Local 1776, Mr. Young, Ms. Kessler, nor Ms. Rhodes provided meaningful notice to Mr. Kabler of his right to refuse/object to associating with or subsidizing

---

[5] Notably, none of the parties have addressed <u>Cooley</u> or the very recent appellate court decision in <u>Janus</u> in their briefs.

the speech of Local 1776." (Doc. 1, ¶¶ 58-67). In Count IV of the complaint, Kabler

then alleges that the union and its officers committed the state tort of fraudulent

misrepresentation, in that they allegedly misrepresented to Kabler that he was

required to join the union as a condition of employment. (Id. ¶¶ 68-78).[6] These two

counts share a common factual predicate; namely, the assertion that union officers

affirmatively misled Kabler regarding whether he was required to join the union in

order to obtain state employment, but pursue alternate theories of liability. As

pleaded by Kabler, if the defendants acted under color of law, their allegedly

misleading conduct constituted a denial of notice of Kabler's legal rights which

violated due process. Otherwise, the actions of these officials allegedly amounted to

the state common law tort of fraudulent misrepresentation.

    With Kabler's claims cast in this fashion, the union attacks Count III, the

§ 1983 federal civil rights claim, by arguing that the activities of the union and its

officers do not rise to the level of action taken under color of law, a threshold

requirement for federal civil rights liability. We disagree. On this score, the union's

argument fails to fully take into account the factual context of this case, which entails

the deduction of union dues by the state, on behalf of a state public employees union,

---

[6] We note that Counts III and IV are the only counts which make specific factual
allegations against the individual union defendants. (Doc. 1, ¶¶ 61, 69, 70).
Therefore, we construe these counts as the only counts which relate to the
individual union officers.

pursuant to state law. In this factual context, the recent court of appeals decision in

Janus is particularly instructive. In Janus, the appellate court was faced with an

argument which was very similar to that advanced by the union defendants in this

case, an assertion that § 1983 did not reach the activities of this labor organization

and its officers who should be considered private parties beyond the reach of this

federal civil rights statute.

In terms that are equally applicable here, the court of appeals rejected this

argument, finding instead that:

> To be liable under section 1983 a defendant must be a "person" as
> Congress used that term. While "person" is a broad word, the Supreme
> Court has held that states do not fall within its compass. See Will v.
> Michigan Dep't of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105
> L.Ed.2d 45 (1989). But it is hard to find other exclusions. The union, as
> an unincorporated organization, is a suable "person," and we are
> satisfied that it is sufficiently like other entities that have been sued
> under section 1983 to permit this action. Compare Monell v. Dep't of
> Soc. Servs. of City of New York, 436 U.S. 658, 690, 98 S. Ct. 2018, 56
> L.Ed.2d 611 (1978) (municipalities and other local government units
> are "persons" for purposes of section 1983); Walsh v. Louisiana High
> School Athletic Ass'n, 616 F.2d 152, 156 (5th Cir. 1980) (voluntary
> association of schools); Frohwerk v. Corr. Med. Servs., 2009 WL
> 2840961 (N.D. Ind. Sept. 1, 2009) (prison contractors). Cf. Citizens
> United v. Fed. Election Comm'n, 558 U.S. 310, 130 S. Ct. 876, 175
> L.Ed.2d 753 (2010). . . . .
>
> The next question is whether [the union] acted under color of state law.
> Unions generally are private organizations. See, e.g., Hallinan v.
> Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 815 (7th
> Cir. 2009). Nonetheless, private actors sometimes fall within the
> statute. See Lugar, 457 U.S. at 935, 102 S. Ct. 2744. Indeed, the "color
> of law" requirement for section 1983 is more expansive than, and
> wholly encompasses, the "state action" requirement under the

Fourteenth Amendment. Id. For our purposes, the analysis is the same—if [the union's] receipt . . . of the fair-share fees is attributable to the state, then the "color of law" requirement is satisfied. A "procedural scheme created by . . . statute obviously is the product of state action" and "properly may be addressed in a section 1983 action." Id. at 941, 102 S. Ct. 2744. "[W]hen private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 108 S. Ct. 1340, 99 L.Ed.2d 565 (1988); see also Apostol v. Landau, 957 F.2d 339, 343 (7th Cir. 1992). Here, AFSCME was a joint participant with the state in the agency-fee arrangement. [The government] deducted fair-share fees from the employees' paychecks and transferred that money to the union, which then spent it on authorized labor-management activities pursuant to the collective bargaining agreement. This is sufficient for the union's conduct to amount to state action. We therefore conclude that [the union] is a proper defendant under section 1983.

Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council 31; AFL-CIO, 942 F.3d 352, 360–61 (7th Cir. 2019). We find the rationale of Janus persuasive, and entirely in accord with case law in this circuit which has aptly been described as embracing "a clearly established pattern, if not precedent, in favor of hearing § 1983 claims against public-sector unions." Williams v. Pennsylvania State Educ. Ass'n, No. 1:16-CV-02529-JEJ, 2017 WL 1476192, at *4 (M.D. Pa. Apr. 25, 2017). Therefore, we should decline to dismiss this § 1983 claim on state action grounds.

As for the second element of these claims, Kabler's allegations that he was denied notice of his rights when union officials affirmatively misled him regarding whether he was required to join the union in order to obtain state employment, the parties' positions are marked by a stark factual dispute. For their part, the union

defendants have amassed documentary evidence which supports their position that Kabler received notice of his right to decline union membership on a number of occasions. The union defendants also point out that hundreds of Kabler's co-workers declined to join the union during his tenure with the PLCB as further proof that it provided adequate notice of the voluntary nature of union membership. Kabler counters this body of evidence by citing to statements which he alleges union officials made to him conditioning his state employment upon his union membership, as well as a letter that Kabler received from defendants Young and Kessler which stated, in part, that: "[I]t is your responsibility to remain in good standing with Local 1776. If you fail to maintain this obligation, your Employer is required to remove your name from the work schedule and you will not be permitted to work." (Doc. 1, Exhibit B). Given this factual dispute, and the fact that Kabler asserts that he has not been provided discovery on these matters, summary judgment would be inappropriate on these claims at the present time.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, with respect to the parties' cross motions for summary judgment, IT IS RECOMMENDED as follows:

1. The union defendants' motion for summary judgment (Doc. 35), should be GRANTED in part, DENIED, in part, and DEFERRED in part. Specifically, the motion should be GRANTED with respect to: (1) any

broadly based First Amendment claims challenging the union's exclusive representational status; (2) any claims for prospective relief; and (3) any <u>Janus</u>-based claims for damages for the period pre-dating the Supreme Court's decision in <u>Janus</u>. The motion should be DENIED with respect to Counts III and IV of the plaintiff's complaint. The motion should be DEFERRED with regard to any <u>Janus</u>-based damages claims relating to dues deductions post-dating the <u>Janus</u> decision and Kabler's request to resign his union membership and the parties should be directed to make supplemental submissions on this claim.

2. The plaintiff's motion for partial summary judgment on Count II of the complaint (Doc. 39), should be DENIED in part, with respect to any <u>Janus</u>-based claims for damages for the period pre-dating the Supreme Court's decision in <u>Janus</u> and DEFERRED with regard to any <u>Janus</u>-based damages claims relating to dues deductions post-dating the <u>Janus</u> decision and Kabler's request to resign his union membership and the parties should be directed to make supplemental submissions on this claim.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and

all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of December 2019.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge