IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN R. KABLER, JR.,** | : | Civil No. 1:19-cv-395 |
| **Plaintiff,** | : | |
| v. | : | |
| **UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 1776 KEYSTONE STATE, et al.,** | : | |
| **Defendants.** | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Before the court is Magistrate Judge Carlson's Report & Recommendation ("R&R") regarding the Motion for Summary Judgment filed by Defendants Pennsylvania Liquor Control Board, Thomas W. Wolf, Timothy Holden, Michael Newsome, and Anna Marie Kiehl, in their official capacities ("Commonwealth Defendants"). (Doc. 64.) For the reasons outlined below, the court will adopt the R&R in part and decline to adopt it in part.

### **I.    BACKGROUND**

The R&R recommends the court grant the Commonwealth Defendants' motion in two ways. First, Judge Carlson recommends Plaintiff's requests for injunctive relief against the Commonwealth Defendants be dismissed as moot because he has already been given the injunctive relief he sought—removal from United Food and Commercial Workers Local 1776 ("the Union"). Second, Judge

Carlson recommends Plaintiff's request for damages against the Commonwealth Defendants be dismissed on the basis of sovereign immunity. Plaintiff has raised multiple objections to the R&R in which he primarily argues that the R&R misconstrues his causes of actions and the remedies he seeks. As such, before addressing the individual objections, the court will carefully examine Plaintiff's causes of action.

Plaintiff is a liquor store clerk who claims that, upon being hired by the Commonwealth, he was forced to join the Union as a pre-requisite to employment, has been "continually" considered a union member, has union dues deducted from his wages, and has those wages transferred to the Union to this day—all despite the fact that he did not genuinely support the Union. (*See* Doc. 1, ¶¶ 34-39.) He alleges that he is losing money and being forced to associate with and financially support a union he does not wish to be a part of or support. (*See id.*) To operationalize this complaint, Plaintiff has pleaded four causes of action against the Commonwealth Defendants and the Union Defendants.

Under Count 1, Plaintiff argues that his being compelled to join and fund the Union is unconstitutional under the First Amendment to the United States Constitution because it requires him to support certain positions he does not wish to support. As a remedy, he requests: (1) "the return of funds unconstitutionally seized from Mr. Kabler ***from the date of his hiring***"; (2) the payment of "monetary

damages"; and (3) an abstract injunction of some kind. (*See id.*, ¶¶ 41-47 (emphasis added).) In connection with his request for an injunction, Plaintiff asserts that he "is in imminent danger." Count 1 does not specify a particular group of Defendants it is levied against, nor does Plaintiff state which Defendants should be compelled to pay the remedies and/or be enjoined. Instead, Count 1 simply refers collectively to "Defendants." In sum, Count 1 appears to constitute a request for damages and injunctive relief in the form of a court order instructing all Defendants to cease compelling him to join the Union as a requirement for maintaining his employment.

Count 2 contains, in substance, the same complaint regarding the invasion of Mr. Kabler's constitutional rights, but it adds that the sources of this offense—authorizing Defendants to compel Plaintiff to join a union—are: (1) Sections 1101.101-1101.2301 of Pennsylvania's Public Employe [sic] Relations Act ("PERA");[1] and (2) Article 4 of the Collective Bargaining Agreement ("CBA") between the Commonwealth Defendants and Union Defendants. (*See id.*, ¶¶ 1-4, 48-57.) As part of Count 2, Plaintiff reiterates his complaint that he has suffered monetary damages, his request for return of the dues he has paid, and his "imminent danger" of having his rights deprived and suffering additional monetary damages. While Plaintiff again seeks abstract injunctive relief, the court interprets Plaintiff's

---

[1] The Pennsylvania statutes rely upon an old, yet technically correct, spelling of "employee" with one "e"—"employe".

3

request here to be an order from the court voiding the relevant PERA and CBA provisions as unconstitutional. Count 3 is largely the same substantive complaint as Counts 1 and 2, but with slight modifications. First, Count 3 explicitly references the non-Commonwealth defendants—Wendell W. Young, Michele L. Kessler, and Peg—as well as "the Commonwealth" and "their officials." Based on the caption of the complaint, this appears to include all of the defendants. (*Id.*, ¶¶ 58-62.) Second, Count 3 relies on a different underlying legal theory, namely that Defendants deprived Plaintiff of his due process rights to be provided notice and an opportunity to avoid joining and paying dues to the Union. He again pleads that he has suffered monetary damage and is entitled to injunctive relief of some kind.[2]

Reviewing Plaintiff's prayer for relief reveals six requested remedies, none of which are tailored to a particular cause of action. First, Plaintiff requests a declaratory judgment that: (a) "Defendants' practice of requiring membership in the" Union as a pre-requisite to employment is unconstitutional; (b) CBA Article 4 is also unconstitutional; (c) certain PERA provisions are unconstitutional; (d) the First and Fourteenth Amendments "prevent Defendants from restricting Mr. Kabler's right to resign from union membership at any time"; (e) the constitution prevents "Defendants from seizing Mr. Kabler's funds"; and (f) Defendants were

---

[2] Count 4 is a fraudulent misrepresentation claim against "Defendants Local 1776, Mr. Young, Ms. Kessler, and Ms. Rhodes." Because this count is directed at the non-Commonwealth Defendants, the court will not explore it further.

constitutionally obligated to provide Plaintiff with notice and an opportunity to object to Union membership. (*Id.*, pp. 23-24.)

Second, Plaintiff lays out a request for permanent injunctions: (a) barring Defendants from "engaging in any of the activities listed in" the declaratory relief Plaintiff seeks; (b) barring Defendants from "enforcing Article 4 of the CBA or any subsequent, substantially similar provision"; (c) compelling Defendants to remove CBA Article 4; (d) compelling Defendants to honor Mr. Kabler's resignation from the Union; and (e) compelling Defendants to refund Mr. Kabler's union dues "deducted from his wages from at least April 10, 2017, plus interest thereon." (*See id.*, pp. 24-25.)

Third, Plaintiff requests "[a]djudicative" relief, asking the court to find the "Union Defendants guilty of and liable to Mr. Kabler for fraudulent misrepresentation." (*Id.*, p. 25.)

Fourth, Plaintiff requests monetary damages in the form of "nominal, compensatory, and punitive damages . . . sustained as a result of Defendants'" conduct. (*Id.*) Plaintiff does not refer to the Union Defendants or the Commonwealth Defendants here—he merely refers collectively to all of the defendants together.

Fifth, Plaintiff requests a judgment of attorneys' fees and costs under 42 U.S.C. § 1988.

5

Sixth, Plaintiff includes a catch-all provision requesting any other possible relief afforded to him.

## II. DISCUSSION

### a. **Plaintiff's Claim for Damages Against the Commonwealth Defendants is Barred By Sovereign Immunity.**

The R&R recommends finding that Plaintiff's request for damages against the Commonwealth Defendants is prohibited by sovereign immunity. Plaintiff's only response is that he has "consistently" only requested damages from the Union Defendants, not the Commonwealth Defendants. (Doc. 75, p. 4 of 17 n. 2.) Despite statements made in Plaintiff's briefs, a review of Plaintiff's Complaint demonstrates Plaintiff has, at best, ambiguously pleaded his requests for damages such that Magistrate Judge Carlson could have reasonably construed them to be requests against the Commonwealth Defendants. At worst, Plaintiff is attempting to disingenuously distance himself from his own complaint to cast the R&R in an unfavorable light. Either way, the court will adopt the R&R's discussion of sovereign immunity, barring Plaintiff from recovering any damages from the Commonwealth Defendants.

### b. **The Majority of Plaintiff's Requests for Injunctive Relief Are Moot, Except for His Request for the Return of Dues.**

As the R&R lays out, Article Three of the United States Constitution requires that all cases heard by federal courts arise from a genuine case or controversy

6

between the parties. This creates within the federal courts an adversarial system, whereby the courts do not issue *sua sponte* advisory opinions based on their internal opinions of the law—instead, parties with competing interests are motivated to put forward their best takes on the facts and law, providing the court with a rich argumentative basis from which it may issue fruitful opinions and orders.

Derivative from the case and controversy requirement are, *inter alia*, the standing and mootness doctrines. To bring a claim, the plaintiff must have standing, shown by alleging that the plaintiff has suffered a judicially cognizable injury that is fairly traceable to the conduct of the defendant and that can be remedied by court action. This injury must be live; if it is extinguished due to a change in circumstances, the default rule is that the plaintiff's claim has become moot and the court no longer has subject-matter jurisdiction over it.

Here, as laid out above, Plaintiff has requested several forms of injunctive relief, which the R&R has found are moot because: (a) Plaintiff's request to be removed from the Union was respected after filing suit; (b) he has actually been removed from the Union; (c) he has had his pre-resignation dues returned; and (d) he is no longer having any dues removed. Thus, the alleged injuries he was continuing to suffer have been extinguished.

Plaintiff does not dispute this in his objections. Instead, Plaintiff dramatically describes his current situation as one where he lives under the threat of having his

obligation to join the Union renewed, in part because a letter he received upon joining his job established such a requirement. The R&R addressed this in part, first by pointing out that the Commonwealth Defendants have stated that the applicable provision of the CBA has been removed from a newly-negotiated CBA between the Union and Commonwealth Defendants, and, second, by stating that *Janus v. AFSCME*, 138 S. Ct. 2448 (2018) laid out clear law governing union requirements that would deter Defendants from implementing or enforcing a similar new CBA provision.

In response, Plaintiff raises multiple arguments that the court will group into two categories. First, Plaintiff argues "Mr. Kabler may be forced into joining the union" again because "nothing prevents [the Commonwealth Defendants] from adopting a similar [CBA] provision in the future." (Doc. 88, p. 5 of 11.) Regarding whether the *Janus* decision deters the defendants from doing so, Plaintiff argues "the controversy in this case was not eliminated—or even addressed—by the *Janus* case." (Doc. 75, p. 8 of 17 (capitalization and emphasis deleted).) Second, Plaintiff argues the Commonwealth Defendants have not returned his dues, so his request for an injunction instructing them to do so is not moot. The court addresses each argument in turn.

> i. Defendants' Removal of Plaintiff From the Union Effectively Moots Much of Plaintiff's Ongoing Injuries Because it Does Not Trigger the Voluntary Cessation Doctrine.

Under the voluntary cessation doctrine, a party cannot strategically moot a lawsuit by temporarily changing its conduct with the intent to resume its injurious behavior upon resolution of the lawsuit. *See Security Nat'l Ins. Co. v. Amchin*, No. 1:15-cv-750, 2016 WL 1392258, at *4-5 (E.D. Pa. Apr. 7, 2016) (citing *Rendell v. Rumsfeld*, 484 F.3d 236, 243 (3d Cir. 2007); *Del. Audubon Soc., Inc. v. Sec'y of U.S. Dep't of Interior*, 612 F. Supp. 2d 442, 448 (D. Del. 2009)). In such a situation, the defendant must show that there is no reasonable likelihood it will resume the conduct at issue in the case. *See id.*

Here, the court agrees with the R&R's assessment that the *Janus* decision strongly suggests Defendants will not attempt to compel Plaintiff to resume his membership or non-member payment of Union dues. Under *Janus*, a public union cannot use agency fees to compel a non-union member to automatically pay dues to the union. 138 S. Ct. at 2459-60. While *Janus* did leave open the door to unions continuing to charge tailored fees for certain specific services to non-members—such as dispute resolution between employees and the employer (*id.* at 2468-69 & n.6)—*Janus* clearly would prohibit an employer from forcing non-union members

to join a union as a precondition to their accepting public employment.[3] In so ruling, *Janus* changed the law by overturning the previously controlling case of *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977). Because—in between Plaintiff being compelled to join the Union and his being permitted to leave—"*Janus* changed the law of the land," the court finds "Defendants were not acting 'voluntarily' for purposes of the voluntary-cessation exception to mootness—they were compelled to change their conduct based on a decision of our nation's highest court." *Diamond v. Pa. State Educ. Ass'n*, 399 F. Supp. 3d 361, 390 (W.D. Pa. 2019); *accord Amchin*, 2016 WL 1392258 at *4-5 (citing *Am. Bar Assoc. v. F.T.C.*, 636 F.3d 641 (D.C. Cir. 2011)) (holding a change in the law rendered the defendant's conduct not "voluntary" within the meaning of the voluntary cessation doctrine). Indeed, Plaintiff cannot credibly argue he believes *Janus* is completely irrelevant, given his own complaint unequivocally states *Janus* is directly applicable:

> The above-cited portions of PERA and the CBA's Article 4, on their faces and/or as applied by Defendants, authorize Defendants to violate Mr. Kabler's constitutional rights by withholding union dues or fees from him without his affirmative consent, in violation of the United States Constitution as explained in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018).

---

[3] In theory, an employer could argue that they are not forcing an employee to join a union—they are simply making it a precondition to working for a particular public employer. The employee is still free to work elsewhere. But *Janus* appears to presume that a public employer's requirement that the employee join a union is constitutionally similar to the government generally providing a restriction on an ordinary citizen's First Amendment rights. As such, under *Janus*, this court would likely be required to reject such an argument.

(Doc. 1, ¶ 54.)

An additional fact weighing heavily against the applicability of the voluntary cessation doctrine is that Defendants have not merely permitted Plaintiff to leave the Union—they have also negotiated and crafted a new CBA, one which does not appear to authorize anyone to compel another to join or pay dues to the Union. This further suggests that Defendants have not merely taken an isolated action to avoid this lawsuit but have instead hamstrung themselves from taking a substantial portion of the complained-of conduct. While Plaintiff argues that Defendants could theoretically resume their past behavior, "the mere possibility that [Defendants] might rescind amendments to [their] actions or [the CBA] does not enliven a moot controversy." *Cf. Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1117 (10th Cir. 2010).

In an effort to support his argument that the new CBA does not alleviate his concerns, Plaintiff attaches a Bloomberg News article arguably suggesting as much. There are three problems with this document. First, Plaintiff has submitted no affidavit or declaration authenticating it, rendering it inadmissible at summary judgment. *See Palomba v. Barish*, 626 F. Supp. 722, 725 n.11 (E.D. Pa. 1985) ("Because the letter has not been shown to be authentic, I cannot consider it on a summary judgment motion."); *Bessett v. Hegg*, 890 F. Supp. 2d 1076, 1089 (D. Minn. 2012) (collecting federal appellate cases holding uncertified documents are

"inadmissible in a summary judgment proceeding") (internal quotations omitted). Second, the article is largely a journalist relaying the positions of the parties in this lawsuit, not an independent investigation into the actual facts underlying the parties' dispute. To find such evidence creates a fact issue would risk encouraging parties to bootstrap evidence by reporting their allegations to the media, then citing portions of the media regurgitating their claims. Third, even if the court did consider this article as probative evidence, it, at best, suggests the new CBA still contains a restriction on *when* parties would be permitted to leave the Union. The article does not state that the new CBA retains the right to compel employees to join the Union in the first place, and therefore, any future employee voluntarily joining the Union will face a substantially different problem from the one faced by Plaintiff today. As such, this article does not materially alter the court's voluntary cessation analysis.

Further, Plaintiff's citation to *DeJohn v. Temple University*, 537 F.3d 301 (3d Cir. 2008) is unavailing. The *DeJohn* court turned in part on "the posture of th[e] case," whereby the defendant did not cease the conduct at issue until "more than a year after the commencement of litigation and then only near the end of discovery, less than three weeks before the dispositive motion deadline in the case." *Id.* at 308. Here, the parties appear to agree that Plaintiff's resignation from the Union was validated shortly after he filed suit, not after a substantial amount of litigation had taken place. Moreover, the *DeJohn* court found it particularly troubling that the

12

defendant there continued to defend the sexual harassment policy at issue in the case, while Defendants here have negotiated a new CBA largely abandoning the provisions of which Plaintiff complains. These facts—in addition to the court's voluntary cessation analysis above—demonstrate the validity of the R&R's conclusion that most of Plaintiff's injuries underlying his request for prospective injunctive relief is moot. Because this issue concerns the court's subject-matter jurisdiction, the court will also dismiss Plaintiff's requests for injunctive relief against the Union Defendants.

> ii. Defendants' Failure to Repay Plaintiff's Dues Renders Part of Plaintiff's Injury Live.

Plaintiff's second argument, however, is not moot because there remains a dispute over whether he is owed the return of past dues. Here, the Commonwealth Defendants argue "Plaintiff . . . has been refunded all dues ***from the date of his resignation***." (Doc. 37, p. 2 (emphasis supplied).) There are two reasons why this position does not moot Plaintiff's request for the return of his paid dues. First, even if true, Plaintiff argues he only joined the Union in part because he was unconstitutionally compelled to do so. If this is the case, then he may be entitled to the return of his pre-resignation dues as well. Second, Commonwealth Defendants do not cite any facts in support of this statement, nor does such an argument appear in Defendants' statement of facts. Thus, because the Commonwealth Defendants have not carried their burden of proof in proving mootness concerning Plaintiff's

request for injunctive relief compelling the repayment of his Union dues, that part of his request for injunctive relief is not moot.[4]

## III. CONCLUSION

For the reasons explained above, the court will adopt the R&R in part, dismissing all of Plaintiff's requests for damages against the Commonwealth Defendants. The court will also dismiss all of Plaintiff's requests for injunctive relief against all Defendants, except for Plaintiff's request for the return of his pre-resignation dues. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
UNITED STATES DISTRICT JUDGE

Dated: March 26, 2020

---

[4] The court is not, however, holding that Plaintiff's request for the return of his dues is in fact a valid request for injunctive relief or a valid claim against the Commonwealth Defendants. The court is simply finding that a liberal construction of Plaintiff's complaint could lead one to believe such a request was being made against the Commonwealth Defendants and that those Defendants have not carried their burden of proving such a claim is moot based on *this* record. If any part of his dues have in fact been paid, the court will address that question based on a separate record and motion.