IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. KABLER, JR.,** | Civil No. 1:19-cv-395 |
| **Plaintiff,** | |
| v. | |
| **UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 1776 KEYSTONE STATE, et al.,** | |
| **Defendants.** | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Before the court are cross-motions for summary judgment. The first is the motion for summary judgment filed by Defendants United Food and Commercial Workers Union, Local 1776 Keystone State ("the Union"), Wendell W. Young, IV ("Young"), Michele L. Kessler ("Kessler"), Peg Rhodes ("Rhodes"), and Pennsylvania Wine and Spirits Counsel ("PWSC") (collectively, the "Union Defendants"). (Doc. 35.) The second is the motion for summary judgment on Count 2 filed by Plaintiff John R. Kabler Jr. ("Plaintiff"). (Doc. 39.) Magistrate Judge Carlson has issued a report and recommendation ("R&R") on the motions (Doc. 70), recommending the Union Defendants' motion be granted in part and denied in part while also recommending Plaintiff's motion be denied. For the reasons outlined below, the court will adopt the R&R in part and deviate from it in part.

1

## I. BACKGROUND

Plaintiff is a liquor store clerk who claims that, upon being hired by the Commonwealth, he was forced to join the Union as a pre-requisite to employment, has been "continually" considered a union member, has union dues deducted from his wages, and has those wages transferred to the Union to this day—all despite the fact that he did not genuinely support the Union. (*See* Doc. 1, ¶¶ 34-39.) He alleges that he is losing money and being forced to associate with and financially support a union he does not wish to be a part of or support. (*See id.*) He also claims that the Union Defendants misrepresented to him, both by letter and in person, that he was required to join the Union to maintain his employment as a liquor store clerk. Plaintiff has pleaded four causes of action.

Under Count 1, Plaintiff argues that his being compelled to join and fund the Union is unconstitutional under the First Amendment to the United States Constitution because it requires him to support certain positions he does not wish to support. As a remedy, he requests: (1) "the return of funds unconstitutionally seized from Mr. Kabler ***from the date of his hiring***"; (2) the payment of "monetary damages"; and (3) an abstract injunction of some kind. (*See id.*, ¶¶ 41-47 (emphasis added).) In connection with his request for an injunction, Plaintiff asserts that he "is in imminent danger." Count 1 does not specify a particular group of Defendants it is levied against, nor does Plaintiff state which Defendants should be compelled to

pay the remedies and/or be enjoined. Instead, Count 1 simply refers collectively to "Defendants." In sum, Count 1 appears to constitute a request for damages and injunctive relief in the form of a court order instructing all Defendants to cease compelling him to join the Union as a requirement for maintaining his employment.

Count 2 contains, in substance, the same complaint regarding the invasion of Mr. Kabler's constitutional rights, but it adds that the sources of this offense—authorizing Defendants to compel Plaintiff to join a union—are: (1) Sections 1101.101-1101.2301 of Pennsylvania's Public Employe [sic] Relations Act ("PERA");[1] and (2) Article 4 of the Collective Bargaining Agreement ("CBA") between the Commonwealth Defendants and Union Defendants. (*See id.*, ¶¶ 1-4, 48-57.) Plaintiff also claims that the collective bargaining agreement ("CBA") governing his relationship with his employer required him to abide by unconstitutional membership maintenance requirements. As part of Count 2, Plaintiff reiterates his complaint that he has suffered monetary damages, his request for return of the dues he has paid, and his "imminent danger" of having his rights deprived and suffering additional monetary damages. While Plaintiff again seeks abstract injunctive relief, the court interprets Plaintiff's request here to be an order from the court voiding the relevant PERA and CBA provisions as unconstitutional.

---

[1] The Pennsylvania statutes rely upon an old, yet technically correct, spelling of "employee" with one "e"—"employe".

Count 3 is largely the same substantive complaint as Counts 1 and 2, but with slight modifications. First, Count 3 explicitly references the non-Commonwealth defendants—Wendell W. Young, Michele L. Kessler, and Peg—as well as "the Commonwealth" and "their officials." Based on the caption of the complaint, this appears to include all of the defendants. (*Id.*, ¶¶ 58-62.) Second, Count 3 relies on a different underlying legal theory, namely that Defendants deprived Plaintiff of his due process rights to be provided notice and an opportunity to avoid joining and paying dues to the Union. He again pleads that he has suffered monetary damage and is entitled to injunctive relief of some kind.

Count 4 is a fraudulent misrepresentation claim against "Defendants Local 1776, Mr. Young, Ms. Kessler, and Ms. Rhodes." Plaintiff specifically alleges that: (a) he was not required to join the Union to be employed by the Commonwealth as a liquor store clerk; (b) agents of the Union nonetheless made a material misrepresentation to Plaintiff that he had to join the Union to keep his job; and (c) due to that misrepresentation, he joined the Union.

Globally, Plaintiff claims that the Union has worked with the Commonwealth in making the fraudulent statements and overall orchestrating their allegedly unconstitutional and fraudulent plan to compel him to join the Union against his will.

Reviewing Plaintiff's prayer for relief reveals six requested remedies, none of which are tailored to a particular cause of action. First, Plaintiff requests a

declaratory judgment that: (a) "Defendants' practice of requiring membership in the" Union as a pre-requisite to employment is unconstitutional; (b) CBA Article 4 is also unconstitutional; (c) certain PERA provisions are unconstitutional; (d) the First and Fourteenth Amendments "prevent Defendants from restricting Mr. Kabler's right to resign from union membership at any time"; (e) the constitution prevents "Defendants from seizing Mr. Kabler's funds"; and (f) Defendants were constitutionally obligated to provide Plaintiff with notice and an opportunity to object to Union membership. (*Id.*, pp. 23-24.)

Second, Plaintiff lays out a request for permanent injunctions: (a) barring Defendants from "engaging in any of the activities listed in" the declaratory relief Plaintiff seeks; (b) barring Defendants from "enforcing Article 4 of the CBA or any subsequent, substantially similar provision"; (c) compelling Defendants to remove CBA Article 4; (d) compelling Defendants to honor Mr. Kabler's resignation from the Union; and (e) compelling Defendants to refund Mr. Kabler's union dues "deducted from his wages from at least April 10, 2017, plus interest thereon." (*See id.*, pp. 24-25.)

Third, Plaintiff requests "[a]djudicative" relief, asking the court to find the "Union Defendants guilty of and liable to Mr. Kabler for fraudulent misrepresentation." (*Id.*, p. 25.) Fourth, Plaintiff requests monetary damages in the form of "nominal, compensatory, and punitive damages . . . sustained as a result of

5

Defendants'" conduct. (*Id.*) Plaintiff does not refer to the Union Defendants or the Commonwealth Defendants here—he merely refers collectively to all of the defendants together.

Fifth, Plaintiff requests a judgment of attorneys' fees and costs under 42 U.S.C. § 1988. Sixth, Plaintiff includes a catch-all provision requesting any other possible relief afforded to him.

The R&R recommends the court grant the Union Defendants' motion on three bases. First, the R&R recommends Plaintiff's requests for injunctive relief, prospective damages, and declaratory judgment be dismissed as moot because the Union Defendants have removed Plaintiff from the Union and ceased taking dues. Second, the R&R recommends Count 1 be dismissed because: (a) it should be construed as raising a constitutional objection to the Union's status as the exclusive representative of all employees of Plaintiff's employer; and (b) binding Supreme Court case law has already rejected such a challenge. Third, the R&R recommends Plaintiff's request for money damages, stemming from his constitutional claims—based on union dues collected before *Janus v. AFSCME*, 138 S. Ct. 2448 (2018) ("the *Janus* decision"*)* was decided—be dismissed because the Union Defendants acted in good faith relying on pre-*Janus* law.

The R&R also recommends the Union Defendants' motion be denied[2] in two ways. First, the R&R recommends denying the Union Defendants' motion regarding whether the Union Defendants acted under color of law, finding there is controlling case law stating public unions can be found to have acted under color of law. Second, the R&R recommends denying the Union Defendants' motion regarding Counts 3 and 4 because fact issues remain concerning the general conversations Plaintiff had with the Union Defendants upon entering his current job, and that these conversations are the factual basis upon which Plaintiff's procedural due process and fraud claims rely.

The R&R recommends Plaintiff's cross-motion for summary judgment on Count 2 be denied because: (a) there are fact issues concerning whether the Union actually continued to collect dues after *Janus* was issued and Plaintiff turned in his resignation; (b) there are fact issues regarding the amount of dues the Union Defendants have repaid; and (c) there is an insufficiently-briefed legal question

---

[2] The R&R distinguishes between denying the motion for summary judgment and deferring ruling on certain points. The court here will simply refer to granting or denying the bases upon which the parties move. Because this is an early motion for summary judgment, the court will leave open the possibility of later motions for summary judgment on: (a) new facts that developed after Plaintiff filed suit; and/or (b) new facts revealed by discovery. Thus, the court's denial of a basis upon which either party moves on summary judgment leaves open the possibility of the party re-moving for summary judgment on the same basis, depending on whether there is a new factual development, a new factual basis, or the court expressly states that it declines to rule on a particular issue at this time.

concerning whether the good-faith defense can extend to the taking of post-*Janus* fees.

Both parties have filed and fully briefed their objections to the R&R. The motions are thus ripe for review.

## II. DISCUSSION

### a. Five Global Issues Implicate How the Court Will Address Each Count.

In these cross-motions for summary judgment, the parties have submitted six briefs through which they have raised several objections to the R&R. Many of the bases upon which the parties move for summary judgment either implicate multiple claims or rely upon shared procedural misconceptions. As such, the court begins its analysis by addressing five global issues before addressing each count in turn.

#### i. The Court Will Only Grant This Pre-Discovery Motion for Summary Judgment On a Pure Question of Law or A Conclusively-Established Fact.

The Union Defendants have misconstrued the purpose of an early motion for summary judgment. A pre-discovery motion for summary judgment is only appropriate for pure questions of law or incontrovertible questions of fact that must be shown through documentary evidence, not for having claims dismissed when the plaintiff lacks evidence before discovery has taken place. *Cf. Williams v. Shinseki*, 161 F. Supp. 3d 77, 81 (D.D.C. 2011) ("Williams' claim may or may not ultimately turn out to have sufficient merit to survive summary judgment. Nevertheless, pre-

discovery motions for summary judgment are generally disfavored, and particularly so where the motion turns on whether the plaintiff can establish [some of its needed facts]."). Here, Union Defendants rely on their inappropriate conception of early summary judgment motions in three key ways.

First, the Union Defendants' argue both that, as a matter of law, public unions cannot be held accountable for acting under color of law, and that, as a matter of fact, Plaintiff has insufficient evidence showing any state action took place. The court's review of the law shows that these two questions are intertwined because the question of whether a particular public union acted under color of law is a factual question turning on the specific amount and type of interaction between the union and the state. The Union Defendants' own case law either supports this or does not negate it. For example, one of the Union Defendants' core cases—*Belgau v. Inslee*, 359 F. Supp. 3d 1000 (W.D. Wash. 2019)—turned largely on the fact that the "parties *agree* that the State Defendants did not play any role in drafting or in the formation of the agreements here." *Id.* at 1012 (emphasis added).[3] Conversely, if there was evidence that the state had played a role in drafting, forming, or enforcing the collective bargaining agreement at issue in the case, then the union may in fact

---

[3] While some portions of the persuasive authority the Union Defendants cite go further to suggest a legal deficiency in Plaintiff's claims, the authority is not binding on this court and the court does not find its reasoning persuasive. Thus, the court believes that Plaintiff is entitled to discovery investigating the relationship between the Union and Commonwealth Defendants. The Union Defendants are free to re-raise these claims on a post-discovery summary judgment motion.

have acted under color of law. In contrast to the *Belgau* plaintiff, Plaintiff here requests discovery to investigate the relationship between the Union and the Commonwealth Defendants, specifically concerning the distribution of authority between them regarding the CBA's drafting and enforcement.

Further, the case the Union Defendants primarily rely upon—*White v. Comm'c'n Workers of Am., AFL-CIO, Local 1300*, 370 F.3d 346 (3d Cir. 2004)—did not discuss whether further discovery should have been permitted. Moreover, the plaintiff in *Oliver* did not oppose summary judgment with any request for discovery or declaration supporting as much. *See Oliver v. Serv. Employees Int'l Union Local 668*, Case No. 1:19-cv-891, Doc. No. 31 (E.D. Pa. July 29, 2019). In contrast, Plaintiff here has properly submitted a declaration requesting further discovery, satisfying Federal Rule of Civil Procedure 56(d). Thus, at this time, the court declines to take a position as to whether the Union Defendants indeed acted under color of state law, as further factual inquiry is needed. The Union Defendants cannot simply complain of Plaintiff's lack of evidence and rely upon their own submitted statements without giving Plaintiff the opportunity to acquire evidence and question the people making those statements.

Second, much of Plaintiff's claims rely on communications between himself and the Union Defendants. The Union Defendants thus argue Plaintiff has insufficient evidence demonstrating these communications. For example, the Union

Defendants argue that Plaintiff lacks the evidence needed to show: (1) that the Union Defendants actually misrepresented his need to join the Union as a precondition for maintaining his employment, a necessary fact for all of his claims; (2) that the available options for contesting Union membership were insufficient, a necessary fact for his due process claim; (3) that the Union Defendants would not have exercised their discretion to permit him to exit the maintenance of membership provision, a necessary fact for his complaint concerning the maintenance of membership requirement; (4) that he did not submit a claim to withdraw from paying dues, a necessary fact for all of his claims; and (5) that the individually-named Union Defendants acted out of their official capacity.

Here, the court agrees Plaintiff lacks some of this evidence, and that some of the evidence submitted by the Union Defendants supports their defenses. Nonetheless, Plaintiff has properly pleaded these claims, requested discovery on them, and submitted his own evidence creating at least some factual issues regarding his communications with the Union Defendants. Regarding the individual defendants, Plaintiff has, at the very least, pleaded viable claims against the individual Union Defendants at this time. As such, he is entitled to discovery on those properly pleaded claims.

### ii. Plaintiff's Claims Not Tied to His Complaint Are Invalid at This Time, But the Court Will Permit Him to Replead.

The purpose of the complaint is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (internal quotations omitted). In his briefing, Plaintiff characterizes the damages pleaded for his constitutional claims, Counts 1 to 3, as the difference in dues he would have paid as a nonmember versus the amount he paid as a person compelled to be a full member. In the complaint, however, Plaintiff claims that he is entitled to the entirety of the dues he was compelled to pay, not merely the difference between the amount he was charged and a legally permissible amount. In his briefing, Plaintiff argues the Union's arrangement should be characterized as a "closed shop" arrangement—implying the Union's membership mechanism would be impermissible even under pre-*Janus* law—but the phrase "closed shop" does not appear in Plaintiff's complaint. Instead, Plaintiff's complaint suggests that the *Janus* decision controls and rendered the conduct at issue here illegal, not that the conduct was invalid under pre-*Janus* law. As a result, Plaintiff cannot use his new explanations of Counts 1 to 3 as a method for evading dismissal at this time. The court will nonetheless give Plaintiff leave to replead if he wishes to change his pleadings. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases . . . leave to amend must be granted *sua sponte* before dismissing these complaints.").

12

### iii. The Court Will Not, At This Time, Consider Whether the Union Defendants Are Entitled to the Good-Faith Defense.

Here, the R&R recommends the court find that the Union Defendants relied, in good faith, upon pre-*Janus* law in taking Plaintiff's dues before *Janus* was decided, and that this operates as an affirmative defense nullifying any claims for pre-*Janus* damages. The R&R also states that there is no settled case law on whether the Union Defendants' post-*Janus* taking of dues also entitles them to a good-faith defense. As a result, the R&R recommends the court instruct the parties to engage in further briefing on the matter. Because the complete issue of good faith has been insufficiently briefed, and because Plaintiff may replead a new theory that implicates the Union Defendants' good-faith defense, the court will deny summary judgment on the good-faith defense without prejudice.

### iv. The Court Will Dismiss the Majority of Plaintiff's Requests for Injunctive Relief, Part of His Requests for Damages, and All of His Requests for Declaratory Judgment.

The court previously ordered that Plaintiff's requests for injunctive relief against all Defendants be deemed moot except for Plaintiff's request for the return of unpaid dues. (Doc. 93.) The Union Defendants also argue Plaintiff's request for declaratory judgment and prospective damages are moot. The court agrees. Thus, for the same reasons set forth in its prior memorandum (Doc. 92) the court finds that Plaintiff's requests for declaratory judgment are moot. Because mootness implicates

the court's subject-matter jurisdiction, the court will also dismiss the requests for declaratory judgment against the Commonwealth Defendants.

Regarding damages, while Plaintiff pleaded that, as a member of the Union, his dues were still being deducted from his paycheck, he now concedes that his membership has since been nullified and his dues no longer taken by Defendants. As such, Plaintiff's request for damages post-dating his removal from the Union are moot.[4]

Having addressed the global arguments impacting multiple counts, the court will now turn to analyzing the bases upon which it could grant summary judgment on each individual count.

### b. **The Court Will Dismiss, In Part, Count 1 With Prejudice; Permit Counts 2 and 3 to Proceed; and Dismiss Count 4 With Prejudice.**

Plaintiff argues that the R&R's recommendation that Count 1 be dismissed relies upon a mischaracterization of Count 1. The court finds the R&R's construction of Count 1 is reasonable. Count 1 could be read to imply Plaintiff is

---

[4] The court will not consider the arguments raised in the Union Defendants' original briefings as the Union Defendants simply incorporated those arguments by reference. Under Local Rule 7.8(a), "[n]o brief may incorporate by reference all or any portion of any other brief." Here, the Union Defendants state that they also object to the R&R "for all the [same] reasons described in Union Defendants' briefs in Support of their Motion for Summary Judgment." (Doc. 77, p. 4 of 16.) To the extent the Union Defendants are referring to arguments they have not explicitly included in their objections to the R&R, the court will not consider them because it would constitute an impermissible incorporation by reference to their original MSJ briefing.

14

complaining of the Union's status as an exclusive representative—a claim which Plaintiff agrees is legally barred. The court will thus dismiss, with prejudice, any claim constitutionally challenging the Union's ability to serve as exclusive representative of a group of employees. The court agrees with Plaintiff, however, that Count 1 can also be reasonably construed as a complaint regarding his being compelled to join the Union. The court will permit Count 1 to go forward based on that theory.

Regarding Counts 2 and 3, neither party has put forward a colorable reason for why summary judgment should be rendered in their favor. Other than the objections addressed above, the Union Defendants have no remaining specific objection to the R&R's recommendation that Count 2 and 3 proceed.[5] Moreover, other than a litany of nitpicks, Plaintiff has not put forward a colorable argument for why the R&R was wrong in declining to grant Plaintiff summary judgment on Count 2. Thus, subject to the global rulings above, the court will permit Counts 2 and 3 to proceed.

---

[5] The Union Defendants have argued, in a footnote, that, as a matter of law, they did not owe Plaintiff a duty to supply him with procedural due process mechanisms for contesting his joining the Union. This appears to be a new argument not put forward before the Magistrate Judge. Thus, the court will not consider this argument at this time. *See Codner v. Warden-Pike Cty.*, No. 15-cv-5176, 2016 WL 5721199, at *4 (E.D. Pa. Oct. 3, 2016) (collecting cases holding "claims raised for the first time in objections . . . are not properly before the court, and thus are not to be addressed") (internal quotations omitted).

Regarding Count 4, the court agrees with the Union Defendants that Plaintiff's fraud claim is barred by Pennsylvania's unfair labor practices claim, which operates as Plaintiff's exclusive remedy for the complained-of conduct. 43 P.S. § 1101.1301 establishes that the Pennsylvania Labor Relations board has exclusive jurisdiction over unfair labor practices listed in 43 P.S. § 1101.1201. *Comm. College of Phila. v. PLRB*, 205 A.3d 436, 440 (Pa. Cmwlth. 2019) ("The Board has exclusive jurisdiction over charges of unfair labor practices."). The listed unfair practices include, *inter alia*, "[e]mploye organizations, their agents, or representatives of public employes" "[r]estraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act." Article IV of the act includes 43 P.S. § 1101.401, which states, *inter alia*, "[i]t shall be lawful for public employes to organize, form, join, or assist in employe organizations . . . and such employes shall also have the right to ***refrain from any or all such activities***." (emphasis supplied); *see also Hollinger v. Dep't of Public Welfare*, 365 A.2d 1245, 1249 (Pa. 1976) (holding PERA provides an employee with the "right to refrain from joining or assisting in employe organizations of which the employes do not wish to be members"); 43 P.S. § 1101.301 (3) (defining an "[e]mploye organization" as, in essence, a union).

Here, the gravamen of Plaintiff's Count 4 common law fraud claim is that the Union Defendants deprived him of the right to refrain from joining the Union by

16

tricking him into believing he needed to join the Union to keep his job. Thus, his claim at least arguably falls within Section 1101.1301, granting the Pennsylvania Labor Relations Board exclusive jurisdiction over Plaintiff's claim. *See Hollinger*, 365 A.2d at 1249 ("[I]f a party directly seeks redress of conduct which arguably constitutes one of the unfair labor practices listed in . . . Section 1201 . . . jurisdiction . . . is in the PLRB, and nowhere else."); *see, e.g., Koch v. Bellefonte Area Sch. Dist.*, 388 A.2d 1114, 1115 (Pa. Cmwlth. 1978) (applying the "arguably" standard).

### III. CONCLUSION

For the reasons outlined above, the court will grant the Union Defendants' motion in part, deny it in part, and deny Plaintiff's motion for summary judgment. An appropriate order shall follow.

> */s/ Sylvia H. Rambo*
> SYLVIA H. RAMBO
> UNITED STATES DISTRICT JUDGE

Dated: March 31, 2020